## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| HARRIET BELL, | ) | |
| Individually and on | ) | |
| behalf of all similarly | ) | |
| situated persons, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:06-CV-1993-CC |
| vs. | ) | |
| | ) | |
| CALLAWAY PARTNERS, LLC | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### DEFENDANT'S OPPOSITION TO
### PLAINTIFF'S MOTION FOR JUDICIAL NOTICE

Defendant Callaway Partners, LLC ("Callaway"), by and through its

undersigned counsel, files and serves its Opposition to Plaintiff's Motion for

Judicial Notice, and says as follows:

## I.      INTRODUCTION

Plaintiff, individually and on behalf of all similarly situated persons, filed

this case on August 24, 2006 alleging that Callaway violated the Fair Labor

Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").  Six (6) months after filing the

Complaint and after conducting written discovery, Plaintiff has now filed a Motion

for Judicial Notice ("Plaintiff's Motion").  In Plaintiff's Motion, she asks the Court

to authorize the sending of notice to all current and former Consultants of

Callaway from February 1, 2004 through February 1, 2007, which would include more than 800 people.

Plaintiff's Motion should be denied.  As an initial matter, Plaintiff oddly never asks the Court to conditionally certify a class under 29 U.S.C. § 216(b).  In the Eleventh Circuit, a district court must conditionally certify a class before any notice is sent.  Thus, Plaintiff's Motion is premature.  Even if Plaintiff had asked for conditional certification, she has failed to establish that the Court should conditionally certify a nationwide class of over 800 Consultants.

Plaintiff "bear[s] the burden of demonstrating a 'reasonable basis' for [her] claim of class-wide discrimination." Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996).  She "may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" Id. at 1097 (emphasis added).  Plaintiff has failed to present "substantial" and "detailed allegations" showing any violation of the FLSA, class-wide or otherwise.

First, Plaintiff's claim is based on the studiously-vague allegation that Consultants were not exempt because Callaway deducted from their "pay."  But

their "pay" consisted of a predetermined weekly salary[1] and a bonus.  Callaway is entitled to deduct from Consultants' predetermined weekly salaries on some occasions, and deduct from bonuses on any occasion.[2]  Thus, Plaintiff's allegation with respect to "pay" is meaningless because it glosses over the critical distinction between salary and bonus – and the fact that Callaway is entitled to deduct from both.  Consequently, Plaintiff has failed to offer "substantial allegations" that Callaway's deductions were of the type prohibited by the FLSA, i.e. evidence of improper deductions from Consultants' predetermined weekly salaries.

Second, Plaintiff offers no "substantial allegations" that she is similarly situated with putative class members with respect to pay.  She offers no detailed allegations that Callaway had a unified policy, plan or scheme of violating the FLSA.  On the contrary, pay records produced in discovery establish that Callaway paid the affiants their predetermined weekly salaries for weeks when they only worked partial days, like a Friday (which frequently happened), and for many

---

[1] "An employee will be considered to be paid on a 'salary basis' . . . if the employee regularly receives each pay period on a weekly . . . basis, a predetermined amount constituting all or part of the employee's compensation . . . ." 29 C.F.R. § 541.602(a) (emphasis added).

[2] See 29 C.F.R. § 541.602 (identifying appropriate deductions to the predetermined weekly salary); November 3, 2006 Opinion Letter from DOL (FLSA2006-24NA) ("The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees.") (Appendix 8).

workweek holidays they did not work.  Thus, the best Plaintiff has alleged are sporadic occurrences of FLSA violations.  Plaintiff and putative class members would attempt to prove these sporadic occurrences by using their individual payroll registers and time sheets, which means class treatment would hinder, not facilitate, a decision on these issues.

Third, Plaintiff offers no "substantial allegations" that she is similarly situated with putative class members with respect to job duties.  The resumes of the affiants demonstrate glaring dissimilarities in their job duties.  Any discovery and trial of claims regarding whether Consultants' job duties were "exempt" would necessarily involve highly-individualized proof over an extended period of time.  Again, class treatment would hinder, not facilitate, a decision on these issues.

At bottom, Section 216(b) reflects a policy of judicial economy in which the district court has the discretion to decide case-by-case whether the "judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." Hoffmann-La Roche v. Sperling, 493 U.S. 165, 170 (1989).  If the efficiency and conservation of judicial resources are to be realized, however, common issues must control.  As discussed above, the class Plaintiff proposes includes far too many disparate and individual factual disputes.

For these reasons, the Court should deny Plaintiff's Motion and dismiss all of the opt-in plaintiffs without prejudice. Williams v. Accredited Home Lenders,

2006 U.S. Dist. LEXIS 50653 *16 (N.D. Ga. 2006) (denying motion for conditional certification and dismissing all opt-ins without prejudice).

## II.    STATEMENT OF FACTS

### A. Callaway Performed Forensic Accounting Services on its HealthSouth Project.

Callaway is an accounting professional services firm that specializes in project management and staff augmentation for clients ranging from start-ups to Fortune 1000 firms.[3]   The Company focuses on financial restatements, financial systems conversions, due diligence for mergers and acquisitions, forensic accounting, independent investigations, internal audit work, vendor compliance and Sarbanes-Oxley compliance.

Starting in September 2003, Callaway was engaged to staff a project for HealthSouth Corporation ("HealthSouth") in Birmingham, Alabama.  HealthSouth, a publicly traded company, had been accused of "cooking the books" for several years.   There were faked invoices, overblown expenses, and assets that never existed.  Because the people at HealthSouth who carried out the multi-billion dollar fraud were good at concealing the real numbers, it took an army of accountants,

---

[3] The facts in Section A are supported by CarolAnn Denton's affidavit (¶¶ 3-5), which is attached at Appendix 1.

including those from Callaway, years to reconstruct the company's books and restate its financials.

Piecing together HealthSouth's financial records was a lot like working on a murder mystery, without the body.  In order to restate HealthSouth's books, Callaway's employees performed many tasks, among them going through numerous items on the balance sheet and income statement, working from the bottom up.  They investigated the history behind each number – keeping in mind that everything this time around had to be bulletproof.  That meant every item had to have a stack of supporting documents to back it up, be it a cancelled check, invoice, contract or other document.  In the end, the HealthSouth project was one of the largest accounting reconstructions in the history of U.S. business.

**B. Plaintiff and the Affiants Were Employed as Consultants on the HealthSouth Project.**

Plaintiff and affiants Derk Allison, James Cook, John Lee and Sandra Morman were employed by Callaway as Consultants on the HealthSouth project. (Exhibits B (Bell Affidavit), C (Allison Affidavit), D (Cook Affidavit), E (Lee Affidavit) and F (Morman Affidavit) to Plaintiff's Motion).  They never worked on any other projects for Callaway.[4]  Id.  While they now try to downplay the

---

[4] During the relevant time period, approximately 553 Consultants were employed on the HealthSouth project. (Affidavit of Deborah Erickson ¶ 22).  Ms. Erickson's affidavit is attached at Appendix 2.

sophistication of their work, (Bell Aff. ¶¶ 6-7; Allison Aff. ¶ 4; Cook Aff. ¶ 6; Lee

Aff. ¶ 3; Morman Aff. ¶ 3), their own resumes (not prepared for purposes of

litigation), describe the sophisticated accounting duties they performed:

| Name | How They Described Their Job Duties on Their Resumes |
|---|---|
| Derk Allison | "Perform forensic accounting services related to prior year financial statements for HealthSouth, Inc.<br>• Investigate Accounts Receivable accounts to substantiate the existence of an asset and to prove the accuracy of the balance.<br>• A total of five fiscal years have been reviewed in preparation of year-end audits performed by independent auditors.<br>• Steps involved in the investigation of each A/R account include:<br>  - Running PeopleSoft queries for G/L Activity, Account Balances, and JL Detail<br>  - Developing a roll-forward analysis in Excel that consolidates G/L activity information by reporting period<br>  - Matching debits with subsequent credits to determine if the debits were collected or otherwise cleared in subsequent periods<br>  - Determining additional work required to prove period balances or to prove fraudulent or inaccurate amounts<br>  - Calculating adjustments required to correct period balances for unsubstantiated or incorrect amounts" |
| James Cook | "Played a key roll (sic) in the restatement of HealthSouth's Financial Statement covering five fiscal years.<br>• Created and authored automated approaches to manual efforts. (Operations Group)<br>• Performed Q&A testing for the 'Facility Master' used to house all date for all locations.<br>• Responsible for implementation of Electronic Billing for off-sit[e] storage vendor.<br>• Developed Spreadsheets for tracking Percentage of Completion for all costs for closed facilities.<br>• Served as Liaison between IT and Accounting/Operation.<br>• Forensic auditing of A/R, Cash, Cash Transfers, A/P and Leases.<br>• Responsible for A/P Accrual research and documents.<br>• Extensive fraud research performed in Cash Recon, A/P, A/R, Fixed Assets & Cash Deposits and Testing." |
| John E. Lee | • "Financial Consulting for the Accounting Fraud Audit of HealthSouth |

|  | Corporation (May 2004 to April 2006) |
|--|--|
|  | • Development and review of the Financial Restatement for HealthSouth Corporation, this activity involves the complete restatement of all financial records and transactions for HealthSouth Corporation for the years 1999-2003, 2004, and 2005.  [] |
|  | • My assignments included: final review of all restated financial records, cash restatement for all facilities, accounting of all Cash transactions for 2004, review and restatement of all records and billings relative to accounts receivable for over 2000 facilities of HealthSouth, due diligence reviews with respect to litigation costs and expected settlements in varying legal disputes, forensic accounting, and account analysis in the following areas: sales taxes, leases, accounts receivable, and accounts payable.  Audit testing in various areas of concern.  SOX testing in a variety of areas. |
|  | * * * |
|  | • Generic description of work performed includes: technical accounting research, evaluation and application of GAAP, assessment of internal control procedures, data management and analysis, account reconciliations and transaction reviews, and analysis of complex transactions and determination of proper accounting treatment. Generally, this work has been of an audit nature, with subsequent accounting corrections to financial records, as well as working with the client to remediate poor practices in order to preclude future fraudulent actions." |
| Sandra Morman | • "Performed forensic research to restate financials for $5 Billion healthcare provider. |
|  | • Completed corporate and partnership tax returns for the 500 or so entities held by corporation. |
|  | • Analyzed partnership accounting records for restatement. |
|  | • Reviewed and approved account analysis of other analysts in restatement rework. |
|  | • Coordinated with Big 4 firm audit personnel to substantiate restatement activity. |
|  | • Price Waterhouse Cooper liaison for the 99-03, 2004 & 2005 audits. |
|  | • Participated with Big 4 firm in preparation, training, and deployment of Sarbanes Oxley 404 compliance testing plan for 189 healthcare facilities nationwide. |
|  | • Investigate account analysis to substantiate the existence of an asset and accuracy of the balance. |
|  | • Investigation of each A/R account which included: running PeopleSoft queries for G/L Activity, Account Balances, and JL Detail, developing a roll-forward analysis in Excel that consolidates G/L activity information by reporting period, matching debits with subsequent credits to determine if the debits were collected or otherwise cleared in subsequent periods, determining additional work required to prove |

| | period balances or to prove fraudulent or inaccurate amounts, and calculating adjustments required to correct period balances for unsubstantiated or incorrect amounts.<br>• Completed preliminary corporate tax return documentation and research for Tax Compliance division pertaining to partnership and managed corporations most multi-state entities." |
|---|---|

The resumes are attached to Ms. Erickson's affidavit at Exhibit F.[5]

## C. Consultants on the HealthSouth Project Were Paid a Predetermined Weekly Salary.

On the HealthSouth project, Consultants' "pay" consisted of two components. First, Consultants received a predetermined weekly salary. The engagement letters signed by Plaintiff, Messrs. Allison, Cook and Lee and Ms. Morman, which are attached at Appendix 3, state: "Your weekly salary will be $1600 per week . . ." and "Your salary will be paid each Friday for the previous week." Page 4 of the PowerPoint presentation that Callaway used on the HealthSouth project also states that "[e]very employee assigned on the HealthSouth engagement is paid a **weekly salary.**" (emphasis in original).[6]

Page 5 of the PowerPoint presentation describes the predetermined weekly salary in greater detail. It states: "For each week you are employed by Callaway,

---

[5] They were also highly paid. In 2005, Plaintiff earned $113,930, Mr. Allison earned $105,045, Mr. Cook earned $110,210, Mr. Lee earned $111,540, and Ms. Morman earned $108,602. (Erickson Aff. ¶ 23).

[6] The PowerPoint presentation, which was first shown to Consultants on the HealthSouth project in September 2004, is attached to Mr. Allison's affidavit, which is Exhibit C to Plaintiff's Motion.

working on the HealthSouth engagement, you are entitled to your full weekly salary, subject to a few exceptions, listed below:

- Days not worked for personal reasons, unpaid vacation, or illness (can be offset by PTO days earned)

- Unpaid disciplinary suspension imposed for infractions of workplace conduct rules

- In initial or terminal weeks of employment:  Salary may be prorated for time actually worked in the first and last week of employment

- Weeks where the project is shut down completely and work is not performed onsite, salary will not be paid (example may be Christmas week or Thanksgiving)."

As discussed below, even though Plaintiff has thousands of pages of pay records, neither she nor the affiants allege a specific occasion on which Callaway improperly deducted from their predetermined weekly salaries.

**D.  Consultants on the HealthSouth Project Were Eligible for a Bonus.**

The second component of a Consultant's pay was a bonus, which was additional compensation on top of a Consultant's predetermined weekly salary. The engagement letters reference the bonus as "hours worked in excess of forty for a given week paid at $40/hour."  Page 6 of the PowerPoint presentation that Callaway used on the HealthSouth project describes the bonus as follows:  "For each week you are employed by Callaway, receiving a weekly salary while working on the HealthSouth engagement, you will earn a bonus for billable hours

10

worked in excess of 40 hours;" "Any deficit created in a given week (where billable hours are less than 40) will be carried forward and applied against future week's bonus calculation.  This calculation has <u>no effect</u> on an employee's weekly salary." (emphasis in original) (Allison Aff. ¶ 8 (Exhibit C to Plaintiff's Motion)).

As discussed below in Section III(D), extra compensation in the form of a bonus or "straight time" does not affect the exemption. 29 C.F.R. § 541.604(a). The manner is which bonus pay is calculated, and any deductions from it, are irrelevant to whether Consultants are exempt.

**E. The U.S. Department of Labor Has Already Investigated Callaway's Pay Practices at the HealthSouth Project.**

In March 2005, the Wage and Hour Division of the United States Department of Labor ("DOL") initiated an investigation of pay practices at Callaway.[7]  The investigation covered the time period from November 28, 2003 through November 27, 2005.  The investigation focused on the HealthSouth project and two employees at Callaway's corporate headquarters in Atlanta, Georgia.

The DOL never questioned the manner in which Callaway calculated bonus payments or "docked" bonuses.  The DOL did identify isolated instances in which the DOL believed that Callaway did not pay some Consultants for specific holiday absences in 2004.  Callaway agreed with the DOL to tender back wages for these

---

[7] The facts in Section E are supported by Ms. Erickson's affidavit (¶¶ 24-28).

isolated holidays to the affected Consultants.  (Callaway had correctly paid Plaintiff, Messrs. Allison, Cook and Lee and Ms. Morman for many workweek holidays occasioned by the Company in 2004, 2005 and 2006.)

Though there were hundreds of Consultants on the HealthSouth project, the DOL identified only fourteen (14) Consultants on the project, and two employees at Callaway's corporate headquarters, who may have been performing non-exempt job duties for certain limited periods of time, though they were classified as exempt.  Callaway agreed with the DOL to tender back wages to these individuals for these limited periods of time.

The DOL and Callaway agreed the Secretary of Labor would supervise payments of back wages pursuant to 29 U.S.C. § 216(c). (Appendix 4). The DOL and Callaway agreed that any back wage checks would be forwarded to the agreed-upon relevant employees by Callaway; the checks would be accompanied by a DOL Form WH-58 and cover letter from Callaway; and, the reverse side of the check would contain imprinted release language. Id.  (See Form WH-58 provided to Mr. Lee, attached as Appendix 5.)

On or about June 30, 2006, two months before this case was filed, Callaway mailed to 184 current and former Consultants a cover letter, a Form 58, and a check.  Each check contained release language. (See Check sent by Callaway to Mr. Lee, attached at Appendix 6.)  Of the 184 checks, 166 were sent to current or

former Consultants for inadvertently deducted holiday pay in 2004.[8]  The DOL did not identify, and Callaway did not provide payments for, any deductions after 2004.

During the next several months, more than 150 Consultants signed Form 58s and/or cashed their checks, thereby waiving and releasing any claims under the FLSA for the covered period.  Indeed, nineteen (19) of the opt-in plaintiffs in this case, including affiant Mr. Lee, signed a Form 58 and/or check, thereby waiving and releasing any claims under the FLSA for the covered period.

**F. Plaintiff Has Already Provided Written Notice of the Lawsuit to All Current and Former Callaway Consultants.**

In early September 2006, Plaintiff sent all current and former Consultants a lengthy email notifying them of the lawsuit.  The email included a copy of the lawsuit and an opt-in form.  The email states: "This message will be directed to all current & former Callaway Partners consultants over the next couple of days."  A copy of the email is attached at Appendix 7.

**G. The Parties Have Bifurcated the Case and Engaged in Discovery.**

On November 3, 2006, the parties filed a Joint Preliminary Report and Discovery Plan.  The parties proposed bifurcating the case into two distinct groups.

---

[8] The gross amount paid to Plaintiff was $430.  The gross amount paid to Mr. Allison was $900.  The gross amount paid to Mr. Cook was $160.  None of them cashed their checks.  Ms. Morman did not receive a check.  The gross amount paid to Mr. Lee was $640.  He cashed his check. (Erickson Aff. ¶ 28).

For Plaintiff and the opt-ins who had not signed Form 58s and/or cash checks received as part of the DOL settlement ("Group 1"), the parties proposed conducting merits-based discovery.  For the nineteen (19) opt-ins who had signed Form 58s and/or cashed checks ("Group 2"), the parties proposed conducting discovery only on issues related to their releases.  Callaway will be filing a motion for summary judgment as to those opt-ins.

The Court adopted the parties' proposal and entered a Scheduling Order. Over the past four (4) months, the parties have engaged in written discovery.[9]  The parties have served, and responded to, document requests.  Plaintiff and Group 1 opt-in plaintiffs have produced hundreds of pages of pay records.  Callaway has produced thousands of pages of pay records for Plaintiff and the Group 1 opt-in plaintiffs, including time sheets and their payroll registers from 2004 through mid-2006, which is after their employment ended.

The parties have also served, and responded to, interrogatories.  Among other things, Callaway served Plaintiff and the opt-in plaintiffs with interrogatories that requested they identify every week they worked at least a portion of a regularly-scheduled workday but were not paid their predetermined salary.  In

_____

[9] Callaway served more than 20 sets of interrogatories and document requests, to which Plaintiff and Group 1 opt-ins responded and subsequently supplemented.  Plaintiff and Group 1 opt-ins served interrogatories and document requests, to which Callaway responded.

response, Plaintiff and opt-ins were unable to identify <u>any</u> specific instances when that occurred.

## III.   <u>STATEMENT OF THE LAW</u>

Plaintiff's Memorandum does not provide the Court with the applicable law governing this case.  In this section, Callaway will do so.

## A. <u>Consultants Are Exempt Because They Are Paid a "Predetermined" Weekly Salary and They Fall Within the Executive, Professional, and/or Administrative Exemptions.</u>

The FLSA requires that employees be paid overtime when they work more than forty hours in a week. 29 U.S.C. § 207(a)(1).  However, certain types of employees can be "exempt" from the overtime requirement.  For example, "an exemption from the overtime pay requirements exists for employees in a 'bona fide executive, administrative, or professional capacity' . . . as defined by regulations of the Secretary." <u>Hogan v. Allstate Ins. Co.</u>, 361 F.3d 621, 625 (11th Cir. 2004).

The Secretary of Labor has issued regulations providing that employees are exempt if (1) they are paid a "predetermined" weekly salary of at least $455 and (2) perform the types of job duties set forth in the regulations for the exemptions. <u>See</u> 29 C.F.R. § 541.602 (salary basis) and §§ 541.100 through 541.300 (executive, administrative and professional exemptions).[10]   These two requirements are

_____

[10/] In Plaintiff's Motion, she does not challenge Consultants' job duties as being non-exempt.  However, her counsel has made it clear to Callaway's counsel that they believe the Consultants were doing non-exempt job duties (which their

commonly referred to as the "salary basis" test and the "duties" test. <u>Hogan</u>, 361 F.3d at 625.

At this stage in the case, the Court does not decide whether Consultants were properly classified as exempt on the HealthSouth project.   For background purposes, however, the Court should know that Callaway contends the Consultants were exempt because they were paid a predetermined weekly salary[11] and because they performed the types of job duties set forth in the executive, administrative and/or professional exemptions.[12]

## B. Callaway is Entitled to Deduct from a Consultant's Predetermined Weekly Salary in Certain Circumstances.

Under the FLSA, Consultants "will be considered to be paid on a 'salary basis'" if they "regularly receive[] . . . a predetermined amount constituting all or part of" their compensation." 29 C.F.R. § 541.602(a).   Only an "employer who

affidavits confirm).   Thus, job duties will be a contested issue.   As the resumes show, reviewing each Consultant's job duties at trial for all 41 opt-ins, or many others who could opt-in after receiving judicial notice, would be unmanageable and confusing to the jury.   There would be no advantage to a collective action.

[11] Plaintiff and affiants were paid predetermined weekly salaries of $1,600 or more, which far exceed the DOL's $455 minimum requirement.

[12] For example, DOL regulations provide that "[c]ertified public accountants generally meet the duties requirements for the learned professional exemption.   In addition, many other accountants who are not certified public accountants but perform similar job duties may qualify as exempt learned professionals." 29 C.F.R. § 541.301(e)(5).

makes improper deductions from <u>salary</u>" may lose the exemption. <u>Id.</u> § 541.603(a) (emphasis added).  Thus, Callaway could only lose the exemption if it improperly deducts from Consultants' predetermined weekly salary, not their bonus.

Callaway is entitled to deduct from Consultant's predetermined weekly salary in several circumstances, including the following:

- "Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability." 29 CFR § 541.602(b)(1).

- "Deductions from pay may be made for absences of one or more full days occasioned by sickness or disability . . . if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by such sickness or disability." 29 CFR § 541.602(b)(2).

- "Deductions from pay of exempt employees may be made for penalties imposed in good faith for infractions of safety rules of major significance . . . ." 29 CFR § 541.602(b)(3).

- "An employer is not required to pay the full salary in the initial or terminal week of employment." 29 CFR § 541.602(b)(6).[13]

## C. Callaway is Entitled to Pay Consultants a "Straight-Time Hourly Amount" in the Form of a Bonus and Deduct From It For Any Reason.

Callaway's bonus plan, which is based on hours billed by Consultants, is expressly permitted by DOL regulations.

- "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis

---

[13] Indeed, these permissible deductions are identical to the deductions listed in the 2004 PowerPoint presentation on which Plaintiff so heavily relies.

requirement, if the employment arrangement also includes a weekly guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a).

- "[T]he exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation <u>based on hours worked for work beyond the normal workweek.  Such additional compensation may be paid on any basis</u> (e.g., flat sum, <u>bonus payment</u>, <u>straight-time hourly amount</u>, time and one-half or any other basis) . . . ." <u>Id.</u> § 541.604(a) (emphasis added).[14]

Nothing in the FLSA or DOL regulations prohibits Callaway from "docking" a Consultant's bonus eligibility based on hours billed under 40 in a prior week.  As discussed above, the exemption can only be lost for improper deductions <u>from a Consultant's predetermined weekly salary</u>. 29 C.F.R. § 541.603(a).[15]  In fact, in the context of discussing deductions from bonuses for exempt employees, the DOL

[14] Plaintiff also mistakenly suggests she was a non-exempt employee because Consultants were required to maintain hourly time sheets.  Callaway billed HealthSouth for the time worked by Consultants, so they had to maintain time sheets.  Requiring the use of time sheets or time cards does not affect an individual's status as an exempt employee. <u>McGuire v. City of Portland</u>, 159 F.3d 460, 464 (9th Cir. 1998); <u>Douglas v. Argo-Tech Corp.</u>, 113 F.3d 67, 71 (6th Cir. 1997); <u>Kuchinskas v. Broward County</u>, 840 F. Supp. 1548, 1556 (S.D. Fla. 1993), <u>aff'd</u>, 86 F.3d 1168 (11th Cir. 1996).  Indeed, if Plaintiff's argument were valid, most lawyers would be non-exempt.

[15] <u>See</u> <u>also</u> <u>Hogan</u>, 361 F.3d 621, 625-26 (11th Cir. 2004) (rejecting argument sales agents were not paid on a salary basis because their compensation fluctuated based on the number of policies sold and stating "as long as there is a non-deductible minimum, additional compensation on top of the non-deductible salary is permissible."); <u>Phillips v. Capital Toyota, Inc.</u>, 2006 U.S. Dist. LEXIS 33622 at *13 (E.D. Tenn. 2006) (plaintiff alleged employer improperly deducted from his bonus, but not his weekly salary; FLSA claim dismissed because plaintiff's bonus was "not part of his predetermined amount of compensation.").

has held that "[a]dditional compensation above th[e] salary amount is generally something that may be agreed upon between the employer and the employee. The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees." See November 3, 2006 Opinion Letter from DOL (FLSA2006-24NA) (emphasis added)) (Appendix 8).

## IV.    LEGAL ARGUMENT

### A. The Eleventh Circuit Has Generally Identified the Standards Governing Notice to Potential Collective Action Members.

Though the FLSA authorizes collective actions, it does not require district courts to issue notice of a collective action to potential class members. 29 U.S.C. §216(b).  However, the United States Supreme Court has held that a district court, in its discretion, may authorize the sending of such notice in "appropriate" cases. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70 (1989).  The Supreme Court emphasized that collective actions only make judicial management sense if "common issues of law and fact" predominate. Id. at 170.  In the Eleventh Circuit, a case is "appropriate" for notice only after the district court has conditionally certified a class. See Hipp, 252 F.3d at 1218.

1. __The decision to conditionally certify a class remains soundly in the discretion of the district court.__

The Eleventh Circuit has not adopted one standard for district courts to use in determining whether to conditionally certify a class. Rather, recognizing that each case presents its own unique facts, the Court has emphasized that "the decision to create an opt-in class under §216(b) remains soundly within the discretion of the district court." Hipp, 252 F.3d at 1218. Nonetheless, as discussed below, the Eleventh Circuit has recommended that a district court consider certification under Section 216(b) in two stages.

At the first stage, in response to a motion to conditionally certify made prior to discovery, the court utilizes a "fairly lenient" standard in recognition of the limited evidence then available. Id. at 1218 (quoting Mooney v. Aramco Services Co., 54 F.3d 1207, 1214 (5th Cir. 1995), cert. denied, 534 U.S. 1127 (2002)). "Because the court has minimal evidence" at this stage, conditional certification is "typically" granted. Id.

At the second stage, typically in response to a motion to decertify made after discovery, the court makes a more informed factual determination on the appropriateness of class certification. Id. The two-tiered approach remains a "suggestion," not a "requirement." Id. at 1219. "Nothing in [Eleventh] circuit precedent . . . requires district courts to utilize this approach." Id.

### 2. At the first stage, the "fairly lenient" standard is not minimal or easy because Plaintiff must offer "substantial" and "detailed" allegations supported by affidavits.

Even at the first stage, the Eleventh Circuit has held that Plaintiff "bear[s] the burden of demonstrating a 'reasonable basis' for [her] claim of class-wide discrimination." Id. at 1218; Grayson, 79 F.3d at 1097. Plaintiff "may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" Id. (emphasis added); Hipp, 252 F.3d at 1219.[16]

These standards serve an important purpose. "It would be waste of the Court's and the litigants' time and resources to notify a large and diverse class only later to determine that the matter should not proceed as a collective action . . . ." Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). See also West v. Border Foods, Inc., 2006 WL 1892527, at *7 (D. Minn. July 10,

---

[16] Post-Hipp decisions in the Eleventh Circuit have recognized that the "fairly lenient" standard is not minimal or easy. See Morrow v. UniCare Life & Health, Civil Action No. 1:04-CV-01774 (May 26, 2006 Order p. 9) (N.D. Ga.) ("In Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir. 1983), the Eleventh Circuit, quoting Judge Posner, explained that courts should treat requests for court-approved notice with scrutiny."); Brooks v. A Rainaldi Plumbing, Inc., 2006 U.S. Dist. LEXIS 89417 (M.D. Fla. 2006) ("While it is clear that, at this stage, Plaintiffs' burden is not heavy, it is not invisible."); Reed v. Mobile County School Sys., 246 F. Supp. 2d 1227, 1236 (N.D. Ala. 2003) ("the burden on the plaintiffs is described as 'not heavy,' a relaxed burden but not a 'minimal' one.")

2006) ("[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper.")

In fact, district courts have learned firsthand the downside of certifying too early an overly broad class of FLSA plaintiffs, only to have to decertify them later. To cite a few examples:

- The 2,157 opt-in plaintiff class members recruited through court supervised notice in <u>Anderson v. Cagle's, Inc.</u>, No. 1:00-CV-00166-WLS (M.D. Ga.), resulted in 2,145 dismissals.

- The 2,470 opt-in class members recruited through court-supervised notice in <u>Brown v. Dollgencorp</u>, No. 7:02-CV-00673-UWC (N.D. Ala.), resulted in 2,450 dismissals.

- The 261 opt-in plaintiffs from 13 states recruited through court-supervised notice in <u>Smith v. Heartland Auto. Services, Inc., d/b/a Jiffy Lube</u>, No. 0:04-CV-1403-RHK (D. Md.), resulted in 254 dismissals.

Collective action proceedings make judicial management sense if, and only if, the named plaintiff is truly representative of the opt-in plaintiffs she seeks to represent.  In other words, collective action proceedings make sense only if the evidence about the claim of the named plaintiff provides the basis for deciding claims of potentially hundreds of opt-ins.  If that inference is not appropriate in a given case (such as this case), then the court and the parties are left with multiple issues of individualized discovery and proof, leading to confusion at trial, and probably before trial.

### 3.    A review of case law in the Eleventh Circuit establishes that conditional certification is often not granted.

In <u>Hipp</u>, the Eleventh Circuit quoted language from the Fifth Circuit stating that conditional certification is "typically" granted at the first stage. <u>Hipp</u>, 252 F.3d at 1218.  While it is questionable whether that statement is true in the Fifth Circuit, it is not true in the Eleventh Circuit.  An examination of post-<u>Hipp</u> district court decisions in the Eleventh Circuit establishes that conditional certification standards are rigorously implemented and, as a result, conditional certification is often denied.[17]  Therefore, contrary to Plaintiff's suggestion, conditional certification is not freely and easily granted by district courts.

---

[17]  <u>See</u> <u>Ledbetter v. Pruitt Corp.</u>, 2007 U.S. Dist. LEXIS 10243 (M.D. Ga. 2007); <u>Becker v. Southern Soils, Turf Management, Inc.</u>, 2006 U.S. Dist. LEXIS 85111 (M.D. Fla. 2006); <u>Brooks v. A Rainaldi Plumbing, Inc.</u>, 2006 U.S. Dist. LEXIS 89417 (M.D. Fla. 2006); <u>Robinson v. Dolgencorp</u>, 2006 U.S. Dist. LEXIS 85471 (M.D. Fla. 2006); <u>Rogers v. CVS</u>, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. 2006); <u>Saxton v. Title Max of Alabama</u>, 431 F. Supp. 2d 1185 (N.D. Ala. 2006); <u>Roper v. Cherokee County School District</u>, Civil Action No. 1:04-CV-0049 (N.D. Ga. September 27, 2005); <u>Tyler v. Payless Shoe Source, Inc.</u>, 2005 U.S. Dist. LEXIS 31682 (M.D. Ala. 2005); <u>Holt v Rite Aid Corp.</u>, 333 F. Supp. 2d 1265 (M.D. Ala. 2004); <u>Reed v. Mobile County School Sys.</u>, 246 F. Supp. 2d 1227 (S.D. Ala. 2003); <u>Horne v. United Services Automobile Assoc.</u>, 279 F. Supp. 2d 1231 (M.D. Ala. 2003); <u>Smith v. Tradesmen International, Inc.</u>, 289 F. Supp. 2d 1369 (S.D. Fla. 2003); <u>Marsh v. Butler County School System</u>, 242 F. Supp. 2d 1086 (M.D. Ala. 2003).

**B. The Court Should Apply a More Stringent Standard Because This Case Has Not Proceeded in the Two-Stage Process.**

Post-<u>Hipp</u> district courts in the Eleventh Circuit have applied a standard closer to that used in the decertification stage when the case has not really proceeded in the two-stage process.[18]  Plaintiff's case has not proceeded in the two-stage process for several reasons.  First, Plaintiff "short circuited" the process by disseminating informal notice of the lawsuit and the opportunity to opt-in to all current and former Consultants of Callaway.  Without the protection of court supervised notice, forty-two (42) current or former Consultants from the HealthSouth project have filed opt-in forms.

Second, <u>Hipp</u> noted that the first stage is more lenient "'[b]ecause the court has minimal evidence.'"  <u>Hipp</u>, 252 F.3d at 1218 (quoting <u>Mooney</u>, 54 F.3d at 1213-14).  That is not true here.  The parties have conducted extensive written discovery, exchanging pay records, including payroll registers from 2004 through mid-2006, as well as employment policies, for the relevant time frame.  Thus, the

---

[18/] <u>See Williams v. Accredited Home Lenders</u>, 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. 2006) (court applied a more stringent standard because plaintiffs "short circuited" the process by disseminating informal notice of the lawsuit and the parties had taken depositions); <u>Davis v. Charoen Pokphand (USA), Inc.</u>, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (rationale for "lenient" standard "disappears once plaintiffs have had an opportunity to conduct discovery"); <u>Holt v. Rite Aid Corp.,</u> 333 F. Supp. 2d 1265, 1273-74 (M.D. Ala. 2004) (applying a stricter standard because the court had been presented with fairly extensive evidence by the parties); <u>Slaughter v. CVS RX Svcs.</u>, 2004 U.S. Dist. LEXIS 30034 (N.D. Ala. 2004) (same) if there had been any.

24

parties and the Court already have the evidence necessary to determine whether, as Plaintiff claims, Callaway has a practice of improperly deducting from Consultants' predetermined weekly salaries.[19]

Accordingly, the Court should apply a more stringent standard to Plaintiff's Motion.  Even if the Court does not do so, however, Plaintiff's Motion should still be denied for the reasons discussed below.

**C.** **Plaintiff's Motion for Judicial Notice Should be Denied Because Conditional Certification is Not Appropriate.**

The Eleventh Circuit has not provided district courts with an exhaustive list of issues they should consider when reviewing the evidence presented by the parties.  Nonetheless, a district court must determine: (1) whether there are other employees who wish to opt-in to the action; and (2) whether those employees are "similarly situated" with regard to pay and job requirements. Dybach v. Fla. Dept. of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).

---

[19]  Plaintiff and opt-ins produced more than 1,700 pages of pay and employment records 9 days before Plaintiff filed her Motion.  Callaway produced more than 2,500 pages of pay employment records, including payroll registers and time sheets, 2 days before Plaintiff filed her Motion.  However, in the Motion, Plaintiff ignored her own documents and those produced by Callaway.  In view of the fact the case has already been pending for 6 months, this conduct suggests Plaintiff is trying to side-step the documents, which would show any improper deductions.

1.    **Bell cannot establish there are other employees who wish to opt-in.**

Over six months ago, in September 2006, Plaintiff disseminated notice of the lawsuit and the opportunity to opt-in to all current and former Consultants of Callaway. (Appendix 7).  Therefore, those individuals have now had six months to decide whether to opt-in to this case.  During this six month period, forty-two (42) have opted-in.  Plaintiff has offered no evidence that any other current or former Consultants intend to opt-in.  Accordingly, judicial notice is not appropriate.

2.    **Plaintiff has failed to provide "substantial allegations" that she is similarly situated with Consultants who worked on other projects nationwide.**

Plaintiff has asked the Court to conditionally certify a nationwide class. Plaintiff and the affiants worked only on the HealthSouth project.  The written bonus plan that is the centerpiece of Plaintiff's challenge – the PowerPoint presentation – applied by its terms only to Consultants on the HeathSouth project. Callaway does have other projects around the country, but Plaintiff offers no evidence that she is similarly situated with Consultants on those projects.  She is not.  Consultants on those projects perform work for different companies, perform different job duties and responsibilities, and are often classified and paid differently (some exempt, some non-exempt, some have different weekly salaries, and some have different bonus plans). (Erickson Aff. ¶ 21).

For these reasons, Plaintiff's request that the Court conditionally certify a nationwide class of Consultants should be denied. <u>See</u>, <u>e.g.</u>, <u>Ledbetter v. Pruitt Corp.</u>, 2007 U.S. Dist. LEXIS 10243 * 8, 16 (M.D. Ga. 2007) (refusing to certify class that "contains individual employees who have different job responsibilities, who work in different facilities, in different locations, and, most likely, in different working conditions.")  Moreover, for the reasons fully discussed below, Plaintiff's request that the Court conditionally certify a class of Consultants who worked on the HealthSouth project should also be denied.

### 3.   Plaintiff has failed to demonstrate a "reasonable basis" for her claim of class-wide FLSA violations at the HealthSouth Project because Callaway is entitled to "dock" from bonuses.

Plaintiff must allege some action by Callaway which, if true, violates the FLSA.   Plaintiff "first" claims conditional certification is proper because "Callaway had a <u>written policy</u> that required time missed in a previous week to be carried forward and deducted from time worked in a subsequent week." (Plaintiff's Memorandum p. 4 (emphasis added)).  Plaintiff is referring to Callaway's bonus policy, which is described in the PowerPoint presentation.

As discussed above, Callaway's bonus policy cannot affect the exemption. Nothing in the FLSA or DOL regulations prohibits Callaway from "docking" a Consultant's bonus eligibility for billing less than 40 hours in the preceding week.

27

29 C.F.R. § 541.603(a); <u>Hogan</u>, 361 F.3d at 625-26; <u>Phillips</u>, 2006 U.S. Dist.

LEXIS 33622.  The manner is which bonus pay is calculated, and any deductions

from it, are irrelevant to whether Consultants are exempt.  Accordingly, the "first"

reason Plaintiff offers for conditional certification is not a violation of the FLSA as

a matter of law, and therefore provides no "reasonable basis" for conditional

certification.

> **4.**    **<u>Plaintiff has failed to provide "substantial allegations" supported by "detailed affidavits" that Callaway improperly deducted from Consultants' predetermined weekly salaries.</u>**

Plaintiff and the affiants must make "substantial" and "detailed allegations

supported by affidavits" that Callaway violated the FLSA.  <u>Grayson</u>, 79 F.3d at

1097.  In this case, that means Plaintiff must present evidence that Callaway

improperly deducted from Consultants' <u>predetermined weekly salaries.</u>   Yet,

Plaintiff and the affiants have not even generally alleged that Callaway improperly

deducted <u>from their predetermined weekly salaries</u>, much less alleged specific

dates that improper deductions occurred.[20]  Plaintiff and the affiants merely allege

---

[20]/ Mr. Lee and Ms. Morman allege only that their bonus eligibility in subsequent weeks was docked. (Lee Aff. ¶ 5; Morman Aff. ¶ 5).  Again, that is lawful.  Plaintiff alleges she had "pay deducted for any hours or parts of hours in which [she] missed work," and Mr. Cook alleges his "pay was reduced by the amount of time [he] missed" under forty hours. (Bell Aff. ¶ 9).  These conclusory statements are meaningless because, again, they gloss over the distinction between salary and bonus, and because Callaway is entitled to deduct from Consultants' salaries in certain circumstances.  Mr.  Allison alleges Callaway improperly

that Callaway improperly deducted from their "pay." Again, that studiously-evasive allegation is meaningless because it glosses over the critical distinction between salary and bonus.  The FLSA only regulates the circumstances in which Callaway may deduct from predetermined weekly salaries.  The manner is which Callaway pays bonuses, and the "docking" of bonuses, are not restricted by the FLSA.

Plaintiff's failure to offer detailed allegations is particularly inexcusable because Plaintiff and the affiants are accountants.  Plaintiff is a Certified Public Accountant, with a degree in mathematics from the University of North Carolina at Chapel Hill and a Masters Degree in Accounting from the University of Georgia. (Bell Aff. ¶ 2).  The other affiants are similarly well-credentialed. (Allison Aff. ¶ 2; Cook Aff. ¶ 2; Lee Aff. ¶ 2; Morman Aff. ¶ 2).  These are not uneducated, blue-collar workers.  They are highly educated and trained professionals who are good with "numbers."  Thus, if there was any truth to their allegations, surely they

---

deducted from his pay during a week in January 2006 when he worked a partial day on a Thursday because he was ill and worked none the following day, Friday, because he was ill. (Allison Aff. ¶ 7).  However, pay records establish that Mr. Allison in fact was fully paid for that Thursday, but not that Friday because he absented himself from work. (See Erickson Aff. ¶ 11, p. 8, entry for January 22, 2006).  That is lawful.

would have pointed the Court to specific examples of Callaway's allegedly improper deductions.

There is a very good reason why Plaintiff and the affiants do not specifically allege that Callaway improperly deducted <u>from their predetermined weekly salaries</u> – because there is no basis for such an allegation.  Callaway has analyzed the pay records exchanged in discovery and submitted detailed evidence that it did not improperly deduct from their predetermined weekly salaries. (Erickson Aff. ¶¶ 7-17).[21]  To be sure, at the first stage, the Court should not determine whether there has been an actual violation of the FLSA.[22]  But to establish a reasonable basis for Plaintiff's claim of class-wide violations, the Eleventh Circuit has clearly held that she must, through "substantial allegations," "'<u>successfully engage defendants' affidavits to the contrary.</u>'" <u>Grayson</u>, 79 F.3d at 1097.[23]  Plaintiff cannot do so.

---

[21] As discussed above, the DOL identified isolated instances in which Callaway did not pay some Consultants for holiday absences in 2004.  Callaway resolved that issue with the DOL and tendered back wages before this case was filed.

[22] The Court must determine whether Plaintiff's allegations have any basis in fact.  For example, Plaintiff and Mr. Cook claim Callaway deducted meal breaks from their predetermined weekly salaries. (Bell Aff. ¶ 9; Cook Aff. ¶ 8).  Even though they have their own records and the documents Callaway produced, they offer no documents to support this allegation.  Ms. Erickson has reviewed their payroll registers and there is absolutely no evidence of any such deductions. (Erickson Aff. ¶ 20).

[23] The pay records make this case unique because the parties have already exchanged thousands of pages of documents that would show any improper

For these reasons, Plaintiff has failed to provide substantial allegations for her claim of class-wide FLSA violations.

> **5.** **Plaintiff has failed to establish she is similarly situated to other Consultants on the HealthSouth project because she has failed to identify a unified policy, plan, or scheme of FLSA violations.**

Plaintiff notes that "a unified policy, plan or scheme of discrimination <u>may not</u> be required to satisfy the more liberal 'similarly situated' requirement of §216(b)." <u>Grayson</u>, 79 F.3d at 1095-96 (emphasis added).  As an initial matter, this language is dicta because the plaintiffs in <u>Grayson</u> did make a showing of a unified scheme of age discrimination to eliminate older store managers. <u>Id.</u> at 1097-99.  In any event, district courts have recognized there is a big difference between age discrimination cases (like <u>Grayson</u> and <u>Hipp</u>) and FLSA cases.  In contrast to an age discrimination case, since "there is no requirement of a motivating

---

deductions, if Callaway had made them.  That is very different than some other cases in which there normally would be no documentation to show the alleged events. <u>See</u> <u>Kreher v. City of Atlanta</u>, 2006 U.S. Dist. LEXIS 23094 (N.D. Ga. 2006) (factual dispute regarding whether plaintiffs and defendant had an unwritten policy of paying compensatory time in lieu of overtime did not preclude certification); <u>Scott v. Heartland Home Finance, Inc.</u>, 2006 U.S. Dist. LEXIS 28839 (N.D. Ga. 2006) (factual dispute regarding whether plaintiffs really did work more than 45 hours in a week, when there were no independent time sheets kept, did not preclude certification).  Interestingly, two months after Judge Thrash granted conditional certification in <u>Scott</u>, he denied it in <u>Williams v. Accredited Home Lenders, Inc.</u>, 2006 U.S. Dist. LEXIS 50653 (N.D. Ga. 2006).

discriminatory animus in an FLSA case, a pattern in such a case must stem from some other formal or informal policy or practice." <u>Barron v. Henry County Sch. Sys.</u>, 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003).

Recognizing this important distinction, the post-<u>Hipp</u> approach that has emerged is that "a plaintiff must make some rudimentary showing of commonality between the basis of his claims and that of the potential claims of the proposed class, <u>beyond the mere facts of job duties and pay provisions.</u>" <u>See</u> <u>Marsh v. Butler County School Sys.</u>, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003) (emphasis added).[24]   For example, Judge Thomas Thrash recently denied a motion for conditional certification for these exact reasons:

---

[24]   <u>See</u> <u>also</u> <u>Holt v. Rite Aid Corp.</u>, 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004) (same); <u>Ledbetter v. Pruitt Corp.</u>, 2007 U.S. Dist. LEXIS 10243, * 14-15 (M.D. Ga. 2007) ("the mere fact that [FLSA] violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."); <u>Saxton v. Title Max of Ala.</u>, 431 F. Supp. 2d 1185, 1189 (N.D. Ala. 2006) (in "the absence of any evidence . . . that [defendant] routinely breached the FLSA's overtime provisions, such deviations are then, by their very nature, highly case-specific and subject to a variety of variables," which "runs directly counter to the economy of scale envisioned by collective actions"); <u>Robinson v. Dolgencorp, Inc.</u>, 2006 U.S. Dist. LEXIS 85471, * 24-25 (M.D. Fla. 2006) ("Although, the existence of a common policy or plan is not a mandatory requirement in the Eleventh Circuit for conditional certification, nonetheless, the existence of a common policy or plan is relevant to the Court's exercise of its discretion in granting conditional certification because the underlying rationale for granting a collective action is to preserve judicial economy . . . where a collective action would not serve the interests of judicial economy, plaintiffs should not be permitted to request court-supervised notice as a tool for drumming-up business.")

> [T]he Plaintiffs have not shown a common policy that violates the FLSA.  A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy or practice.  It is undisputed that Accredited has paid more than $1.4 million in overtime . . . .  This demonstrates that at least some of the company's loan officers and their managers have been complying with its overtime policy.  Fifty Accredited loan officers have submitted declarations to the Court testifying that they have always been properly paid for the overtime they have worked . . . .  <u>Therefore, the best that can be said of the Plaintiffs' case is that some loan officers were paid overtime and some were not.  If this case goes forward as a collective action, an individualized inquiry into why some were paid overtime is required.  The Plaintiffs have not met their burden of making a rudimentary showing of commonality among claims.</u>

<u>Williams</u>, 2006 U.S. Dist. LEXIS 50653 *14-15 (citation omitted) (emphasis added).

In this case, Plaintiff and the affiants received their pay stubs every week. Plaintiff and opt-ins have produced hundreds of pages of pay records.  Callaway has produced the payroll registers.  Yet, Plaintiff offers absolutely no evidence of a policy, plan or scheme of FLSA violations.  On the contrary, just like in <u>Williams</u>, there is evidence that no such uniform or consistent policy, plan or scheme exists. For example, the pay records establish that Callaway paid Plaintiff, Mr. Allison, Mr. Cook, Mr. Lee and Ms. Morman their predetermined weekly salaries for weeks when they only worked partial days, like a Friday (which frequently happened), and paid them for many workweek holidays in 2004, 2005 and 2006, even though they did not work at all on those days. (Erickson Aff. ¶¶ 18-19).

Therefore, even assuming Plaintiff's allegations are correct, the most that can be said is that Callaway improperly deducted from some Consultants' salaries on some occasions, but not for other Consultants on other occasions. Thus, the best Plaintiff has alleged are sporadic occurrences of FLSA violations. Accordingly, conditional certification should be denied because Plaintiff, without a common plan, policy or scheme, has failed to make a rudimentary showing of commonality between her claim and the claims of others.

**6.    Plaintiff is not similarly situated with any other current or former Consultants on the HealthSouth project with regard to pay.**

Plaintiff must establish by "substantial allegations" that she is "similarly situated" with other putative class members with regard to pay. Dybach, 942 F.2d at 1567-68; Hipp, 252 F.3d at 1219. Consultants on the HealthSouth project were paid a predetermined weekly salary and, if eligible, a bonus. However, that minimal level of similarity is not sufficient to establish similarity with respect to pay between Plaintiff and putative class members. A plaintiff is not similarly situated with putative class members if issues regarding her pay must be proven by her individual pay records and similar individualized employment records. See Williams, 2006 U.S. Dist. LEXIS 50653; Saxton, 431 F. Supp. 2d at 1189.

For example, in Williams, Judge Thrash denied a motion for conditional certification for this exact reason:

> Finally, this is not an appropriate case for a collective action because it is utterly unmanageable. The Plaintiffs propose to prove hundreds of small overtime claims by "computer activity reports, date and time stamped email, and phone records proving that Plaintiffs were working before and after the times recorded on their timesheets." Presumably, this must be done for hundreds of loan officers for every day for the two year period. The cost to the parties of the discovery required to prepare for this is mind-boggling. The waste of scarce judicial resources of conducting such a trial would be unconscionable. The proposed collective action does not permit the efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity.

Williams, 2006 U.S. Dist. LEXIS 50653 *15-16 (citation omitted). See also

Saxton, 431 F. Supp. 2d at 1189.

Similarly, this case is not appropriate for a collective action because it would be unmanageable. Plaintiff claims Callaway improperly deducted from Consultants' "pay." Plaintiff and putative class members would attempt to prove their claims by using their own payroll registers, time sheets and other employment records.[25] This would be done for every current or former Consultant for a two year period, and it would involve thousands of payroll registers and time sheets.[26]

---

[25] Plaintiff concedes this fact because, as discussed above, in September 2006 she sent an email to every current and former Consultant stating that "[e]ventually we will have to document our hours worked by use of time sheets, pay stubs . . . ."

[26] Ms. Erickson's affidavit shows how painstakingly difficult that can be for just 5 former Consultants. Reviewing payroll registers and time sheets at trial for all 41 opt-ins, or many others who could opt-in after receiving judicial notice, would be unmanageable and confusing to the jury. There would be no advantage to a collective action.

But that would just be the beginning.  As discussed above, some salary deductions are lawful, while others or not.  Consequently, for the two year period, Plaintiff and others would not only need to identify deductions from their predetermined weekly salaries, but they would then have to establish why those particular deductions are unlawful according to DOL regulations.

For these reasons, individual issues of pay predominate, not common issues. Therefore, Plaintiff has failed to establish with "substantial allegations" that she is similarly situated to putative class members with respect to pay.

### 7.   **Plaintiff is not similarly situated with other current and former Consultants on the HealthSouth project with respect to job duties.**

Plaintiff has the burden of establishing by "substantial allegations" that she is "similarly situated" to putative class members with regard to job duties. Dybach, 942 F.2d at 1567-68; Hipp, 252 F.3d at 1219.  To do so, Plaintiff must show that her job is "similar, not identical," to the jobs performed by the putative class members. Grayson, 79 F.3d at 1096.  With regard to job duties, the evidentiary posture of this case is unique.  Not only does the Court have affidavits from Plaintiff, Mr. Allison, Mr. Cook, Mr. Lee and Ms. Morman regarding their job duties, but the Court has detailed resumes prepared by Mr. Allison, Mr. Cook, Mr. Lee and Ms. Morman that describe their job duties and responsibilities.

The resumes demonstrate glaring dissimilarities in the affiants' job duties. In his resume, Mr. Allison claims he investigated accounts receivables to substantiate the existence of an asset and to prove the accuracy of the balance, which involved conducting various queries and roll-forward analysis.  In contrast, Mr. Cook claims, among other things, he was responsibility for electronic billing, performed Q&A testing for the facility master, conducted extensive fraud research in many different areas, and created and authored automated approaches to manual efforts in the operations group.

In contrast, Mr. Lee claims, among other things, that he was responsible for final review of all restated financial records, due diligence reviews with respect to litigation costs and expected settlements in varying legal disputes, and accounting analysis of sales taxes, leases, accounts receivable and accounts payable.  In contrast, Ms. Morman claims, among other things, that she completed corporate and partnership tax returns for 500 entities, participated with other accounting firms in training and deployment of Sarbanes-Oxley Act compliance for 189 healthcare facilities, and completed preliminary corporate tax return documentation.

For these reasons, it is hard to imagine a group of individuals who are more dissimilar with respect to their job duties.[27]  Their affidavits are not much better. As an initial matter, the affidavits primarily contain conclusory allegations that provide no real insight into their job duties.  "[C]onclusory allegations without specific supporting facts have no probative value." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000).  The affidavits certainly do not contain "substantial" and "detailed allegations." Grayson, 79 F.3d at 1097.  Accordingly, the affidavits do not establish that Plaintiff and other putative class members are similarly situated with respect to job duties.[28]

---

[27] It would be unmanageable for the Court or a jury to attempt to determine whether the job duties of Plaintiff, all 41 opt-ins, and possibly hundreds of more opt-ins, fall within the administrative, professional or executive exemptions.  As further proof that a collective action is not appropriate, DOL regulations establish that the exemption test also differs depending on whether the Consultant made more or less that $100,000 per year. 29 CFR § 541.601.

[28] Plaintiff claims her job consisted of data entry, file organization and assembly, document retrieval and data verification. (Bell Aff. ¶ 6).  In contrast, Mr. Cook alleges that twenty-five percent of his job consisted of tracking deposits and testing money transfers, while another fifteen percent involved tracking fixtures through various HealthSouth facilities. (Cook Aff. ¶ 6).  In contrast, Mr. Lee alleges that twenty-five percent of his work was related to compliance with the federal Sarbanes-Oxley Act of 2002, while other twenty-five percent of his work was cash accounting to ensure that deposits and debits were correctly recorded in HealthSouth's books in appropriate accounts. (Lee Aff. ¶ 3).  In contrast, Ms. Morman alleges that sixty percent of her worked involved the review of other analysis work for accuracy and appropriate detail. (Morman Aff. ¶ 3).

Moreover, Callaway has submitted summaries of Plaintiff's and the affiants' job duties, which further confirm that they are not similarly situated. (Denton Aff. ¶ 6).  For these reasons, individual issues of job duties predominate, not common issues.  Accordingly, Plaintiff has failed to establish by "substantial allegations" that she is similarly situated to putative class members with regard to job duties.

> **8.    <u>Plaintiff is not similarly situated to current and former Consultants who signed DOL Form 58s and/or accepted a check for back wages.</u>**

The Court should consider "defenses which are unique to each plaintiff." <u>See</u> <u>Morrow</u>, Civil Action No. 1:04-CV-01774-ODE (May 26, 2006 Order p. 10) (N.D. Ga. 2006).  Plaintiff never signed a Form 58 or cashed a check.  Therefore, she is not similarly situated to any current or former Consultant who did, thereby waiving FLSA rights.  In fact, Plaintiff basically admitted she is not similarly situated to that group of current and former Consultants by agreeing in the Joint Preliminary Report and Discovery Plan to bifurcate the case with respect to them. Consequently, Plaintiff is not similarly situated with nineteen current opt-ins who signed Form 58s and/or cashed checks.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Judicial Notice should be denied, and all opt-ins should be dismissed without prejudice. <u>Williams</u>, 2006 U.S. Dist. LEXIS 50653 *16 (denying motion for conditional certification and

dismissing all opt-ins without prejudice).  If the Court were to consider granting notice, Callaway objects to the notice provided by Plaintiff.  Any notice would need to be tailored to the terms of the Court's order on conditional certification. Presently, no class has been defined, if any is proved to exist.  The form, format, and timing of notice, if it is determined by the Court to be necessary, should be postponed until the Court has issued an order on the underlying issues.

Respectfully submitted this 3rd day of April, 2007.

s/  C. Todd Van Dyke
C. Todd Van Dyke
Georgia Bar No. 723420
L. Dale Owens
Georgia Bar No. 557482
Mary E. Sharp
Georgia Bar No. 637963

ATTORNEYS FOR DEFENDANT

JACKSON LEWIS LLP
1900 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, Georgia  30303
Telephone:  (404) 525-8200
Facsimile:   (404) 525-1173
vandyket@jacksonlewis.com

## **CERTIFICATION**

**VI.**    I, C. Todd Van Dyke, do hereby certify that this document has been prepared in times Roman font, 14 point, in compliance with LR 5.1C of this Court**.**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| HARRIET BELL, individually and on behalf of all similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:06-CV-1993-CC |
| vs. | ) ) | |
| CALLAWAY PARTNERS, LLC | ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 3, 2007, I electronically filed the foregoing DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDICIAL NOTICE with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

Edward D. Buckley
BUCKLEY & KLEIN, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA 30309-3521

s/ C. Todd Van Dyke
C. Todd Van Dyke
Georgia Bar No. 723420