**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HARRIET BELL,<br>Individually and on<br>behalf of all similarly<br>situated persons,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CALLAWAY PARTNERS, LLC,<br>and HURON CONSULTING<br>GROUP, INC.<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO.<br>1:06-CV-1993-CC<br><br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT ON PLAINTIFFS' BONUS PLAN CLAIMS**

## I.    INTRODUCTION

Plaintiffs contend that they were improperly denied overtime payments under the Fair Labor Standards Act ("FLSA"), while Defendants contend that Plaintiffs were exempt from the FLSA's overtime requirements.  The issue before the Court in this Motion is a narrow one: was Defendant Callaway Partners, Inc.'s ("Callaway") bonus plan inconsistent with the Department of Labor's salary-basis test such that Plaintiffs were not exempt from the FLSA's overtime requirements? The Department of Labor's regulations and opinion letters, as well as case law,

unquestionably show that Callaway's bonus plan was entirely consistent with the salary-basis test, and, therefore, Plaintiffs were exempt.

Although the FLSA generally requires an employer to pay its employees at a rate of one and one-half times their regular rate of pay for any time worked in excess of forty hours in a given workweek, the United States Secretary of Labor has issued regulations providing that employees who perform certain job duties[1] and who are paid on a salary basis are "exempt" from this requirement.  The Secretary of Labor has also issued regulations providing that an employer who makes improper deductions from an exempt employee's salary may "lose" the exemption, and may therefore be liable for overtime.

Plaintiff and opt-in plaintiffs (collectively, "Plaintiffs") were classified as exempt employees by Callaway.  Their pay consisted of two components:  a predetermined weekly salary and a straight-time hourly amount as a bonus.  With respect to the bonus, Callaway had a written policy and practice of using the number of hours Plaintiffs billed to determine whether they were eligible to receive a bonus.  If Plaintiffs did not bill a certain number of hours, they would not be eligible for a bonus at all or the amount of the bonus would be reduced.

---

[1] The exemptions apply to executive, administrative or professional employees. Plaintiffs do not dispute that they performed exempt job duties.  (Docket No. 115.)

At issue in this Motion is Plaintiffs' claim that Callaway did not pay them on a salary basis, and therefore "lost" the exemption as to the Plaintiffs, because the company impermissibly deducted from their bonuses.[2]  However, in contrast to Plaintiffs' salaries, the manner in which bonuses are calculated, and any deductions from them, are irrelevant to whether Plaintiffs were exempt.  Nothing in the FLSA or the Secretary of Labor's regulations prohibit deductions from bonuses. Moreover, the United States Department of Labor ("DOL") and the courts have made it clear that employers are entitled to deduct from exempt employees' bonuses without violating the FLSA or the DOL's regulations.  Therefore, Callaway's deductions from Plaintiffs' bonuses were permissible, and Callaway did not lose the exemption.

Indeed, two years ago during oral arguments on Plaintiff's Motion for Conditional Certification, Judge Cooper questioned whether Plaintiff had any legal basis for claiming that Callaway's bonus plan was unlawful.  He stated, "Although the violation of the Fair Labor Standards Act alleged by Plaintiffs is questionable as a matter of law, the merits of the claim can and will be revisited at a later stage of this litigation."  (Hr'g Tr., May 23, 2007, at 83.)  After more than two years of

---

[2]  Plaintiffs also allege they were not exempt from the FLSA's overtime requirements because Callaway improperly deducted from their weekly salaries. That issue is addressed in a separate motion for summary judgment.

litigation, that time has come.   As will be established below, Defendants are entitled to summary judgment on Plaintiffs' claim that Callaway's bonus plan was unlawful.

## II.    SUMMARY OF FACTS[3]

### A.    Procedural History

Plaintiff individually and on behalf of all similarly situated persons, filed this case on August 24, 2006, alleging that Callaway violated the FLSA by not paying overtime.  Thereafter, Plaintiff filed a Motion for Conditional Certification and, over Callaway's objection, the Court conditionally certified a class of "all current and former Callaway employees who held the position of consultant and worked on the HealthSouth project at any time during the period from February 1, 2004, through February 1, 2007."  (Order, June 16, 2007, Docket No. 117 at 3.)[4]

### B.    Callaway Performed Forensic Accounting Services on its HealthSouth Project.

Callaway was an accounting professional services firm that specialized in project management and staff augmentation for clients ranging from start-ups to Fortune 1000 companies.  (SOF ¶ 1.)  In 2007, Callaway was sold to Defendant

---

[3] Defendants also incorporate by reference their separate Statement of Undisputed Material Facts ("SOF"), filed contemporaneously herewith.

[4] Notice was sent out to potential class members, and the class now consists of 120 people.  The class members are listed in Defendants' Statement of Facts.

Huron Consulting Group, Inc. ("Huron"), and Huron was added to this case as a successor-in-interest.[5]  (SOF ¶ 2 & Am. Compl., Docket No. 300, ¶ 9.)  Plaintiffs are highly-educated accountants and Certified Public Accountants who, during their employment with Callaway, often made in excess of $100,000 per year.[6] (SOF ¶ 7, 15.)

Starting in September 2003, Callaway was engaged to staff a project for HealthSouth Corporation ("HealthSouth") in Birmingham, Alabama.  (SOF ¶ 3.) HealthSouth had been accused of been accused of perpetrating a multi-billion dollar accounting fraud by grossly misstating its finances.  (*Id.* ¶ 4.)  There were faked invoices, overblown expenses, and assets that never existed.  Because the people at HealthSouth who carried out the multi-billion dollar fraud were good at concealing the real numbers, it took an army of accountants, including Plaintiffs and others from Callaway, years to reconstruct the company's books and restate its financials.  In the end, the HealthSouth project was one of the largest accounting reconstructions in the history of U.S. business.

---

[5] Huron used its existing compensation plans, and not Callaway's bonus plan, after the acquisition in July 2007.  (Docket No. 216, Ex. A ¶ 10.)

[6] *See, e.g.*, Doc. No. 96, Appendix 2, ¶ 23.

**C.     The First Component of Plaintiffs' Pay: A Predetermined Weekly Salary.**

On the HealthSouth project, Plaintiffs' pay consisted of two independent components.  (SOF ¶ 11.)  First, Consultants received a predetermined weekly salary in excess of $455.  (*Id.* ¶ 12.)  The engagement letters provided to the Plaintiffs stated they would be paid a weekly salary.  (*Id.* ¶ 14.)  For example, the engagement letter signed by Plaintiff stated:  "Your weekly salary will be $1600 per week . . ." and "Your salary will be paid each Friday for the previous week." (SOF ¶ 16.)

Callaway also provided a PowerPoint presentation to Plaintiffs and others on the HealthSouth Project.  Page 4 of the PowerPoint states that "[e]very employee assigned on the HealthSouth engagement is paid a guaranteed **weekly salary.**" (emphasis in original).  (SOF ¶ 18.)

Page 5 of the PowerPoint presentation describes the predetermined weekly salary in greater detail.  Tracking the DOL's regulations that implement the FLSA (29 C.F.R. § 541.602), the PowerPoint states:  "For each week you are employed by Callaway, working on the HealthSouth engagement, you are entitled to your full weekly salary, subject to a few exceptions, listed below:

- "Days" not worked for personal reasons, unpaid vacation, or illness (can be offset by PTO days earned)

6

- Unpaid disciplinary suspensions imposed for infractions of workplace conduct rules

- In initial or terminal weeks of employment:  Salary may be prorated for time actually worked in the first and last week of employment

- Weeks where the project is shut down completely and no work is performed, salary will not be paid (example may be Christmas week or Thanksgiving)."

(SOF ¶ 19.)  Plaintiffs were paid a pro-rata share of their weekly salaries during the weeks in which Callaway deducted from their salaries for these reasons.  (*See id.* ¶ 22.)

**D.  Plaintiffs Were Paid Their Weekly Salaries.**

Plaintiffs collectively worked 7,871 weeks on the HealthSouth project. (SOF ¶ 45.)  Plaintiffs were paid their weekly salary or the correct pro-rata amount of their salary for each week they were employed on the project.  (*Id.* ¶ 28.) Plaintiffs were paid predetermined weekly salaries of $1,600 or more, which far exceed the DOL's minimum requirement of $455.  (*Id.* ¶¶ 12, 15.)

During discovery, Defendants produced Plaintiffs' time sheets and payroll registers for the weeks Plaintiffs worked.  Defendants also served Plaintiffs with interrogatories asking them to identify any weeks in which they did not receive their weekly salary or the correct pro-rata amount for the week:

- "Please identify by date every week you contend you worked for Callaway at least a portion of each regularly-scheduled work day in that week but were not paid your weekly salary (which for purposes of this interrogatory does

not include bonus pay).  For each such week, please state the number of hours worked each day during the week and the amount you were paid."

- "Please identify each partial day you worked, but were not paid that day's full pro-rata portion of your weekly salary.  For each such day, please state the number of hours worked and the amount you were paid."

*See* Appendix A (Objections and Responses to Defendant's Second Set of Interrogatories to Designated Opt-In Plaintiffs, Interrogatory Nos. 3 and 6).[7]

Plaintiffs responded to these interrogatories with a chart.  (*See* Appendix B.)[8]  On pages three and four of the chart, under the heading "categories," Plaintiffs identified 28 weeks in which they allege Callaway only paid them for their hours worked (noted on chart as "Pd only actual hours"), instead of their salaries.[9]  That is a mere 0.4% of the total weeks (7,871) they worked.  In the chart,

---

[7] All Plaintiffs were served with, and responded to, the same interrogatories with the same answers.  In an effort to avoid duplicative filings with the Court, Defendants have not attached the responses for all 120 Plaintiffs since they are the same.

[8] The chart is not a strict summary of the time sheets and payroll registers.  *See* Fed. R. Evid. 1006.  Rather, the chart also includes the argument of counsel.  For example, while the timesheets do reflect the number of hours reported for billing purposes and the days on which Plaintiffs worked, the underlying employment records do not set forth "Total Hrs Paid" nor do they reflect that Plaintiffs were paid only for "actual hours" worked.

[9] In the chart, Plaintiffs also identified two additional weeks in which two former Plaintiffs (Herak and Welborn) were only paid for their actual hours worked.  Herak and Welborn have withdrawn from the case.  (Docket Nos. 323, 328.)

Plaintiffs do not claim they were only paid for hours worked, instead of their salaries, the other 99.6% of the time.[10]

Callaway has carefully reviewed all 28 occasions identified by Plaintiffs. In the majority of these 28 instances, Plaintiffs were paid their weekly salary or the correct pro-rata amount of their salary, or the employee at issue was properly paid by the hour because she was an hourly employee during the relevant time period. (SOF ¶¶ 51-52.)

With respect to 13 instances identified by Plaintiffs in the chart (out of 7,871 work weeks), however, Callaway learned for the first time (during this litigation) that it may have inadvertently failed to pay certain Plaintiffs their full salary or pro-rata salary on those few occasions. (*Id.* ¶ 54.) Callaway determined that any attempt to conduct an investigation to reconstruct the specific circumstances of each of these few instances from past years would entail far greater expense than the small amounts in question. (*Id.* ¶ 55.)

Therefore, as permitted by 29 C.F.R. § 541.603(d), Callaway provided the following Plaintiffs with checks in the following amounts: Angela Beavers ($140); Pamela Nunez ($160); Michael Kalmerton ($1,878.75); Lillian Odette Yeager

---

[10] Using Plaintiffs' chart, Defendants prepared a summary calculation of the weeks in which Plaintiffs allege they were paid only for hours worked. *See* Fed. R. Evid. 1006. The summary is attached at Appendix E.

($40); Toleda White ($270); Louis Smeraglia ($11.25); Michael Moss ($50); Julie McMillan ($180); and Gideon Sipin ($25).  (*Id.* ¶ 57.)

## E.   The Second Component of Plaintiffs' Pay: The Bonus.

The second component of Plaintiffs' pay was a bonus, which was additional compensation on top of Plaintiffs' predetermined weekly salary.   (SOF ¶ 29.) Callaway offered Plaintiffs a bonus because there was a lot of work to complete on the HealthSouth project, and Callaway wanted to provide an incentive for Plaintiffs to work additional hours.  (*Id.* ¶ 31.)

The engagement letters stated that Plaintiffs would be eligible for a bonus. (SOF ¶ 30.)  The PowerPoint presentation, which is also discussed above and was first used in September 2004, explained the bonus in detail.  (*See id.* ¶¶ 18, 33, 39.) It stated:

> For each week you are employed by Callaway, receiving a weekly salary while working on the HealthSouth engagement, you will earn a bonus for billable hours worked in excess of 40 hours. . . .  Any deficit created in a given week (where billable hours are less than 40), will be carried forward and applied against future week's [sic] bonus calculation.   This calculation has <u>no effect</u> on an employee's guaranteed weekly salary.

(*Id.* ¶ 34.)  Beginning in early 2005, Callaway modified the plan and paid a bonus to Plaintiffs when they worked fewer than five regularly-scheduled days but

averaged more than eight hours of work per day during the days worked.[11]  (*Id.* ¶ 33.)

<u>Examples of Bonus Eligibility</u>

The following examples, which were used in the PowerPoint, illustrate how the bonus was calculated:

**Bonus Example #1**

A project professional works a full week, is paid their full weekly salary, and reports 55 billable hours.  This project professional's weekly salary is $1,000 and is in good standing with Callaway.  There is no "bonus hour deficit" from the previous week.

| | |
|---|---|
| Billable Hours | 55 |
| Weekly Billable Hour Bonus Threshold | (40) |
| Bonus Hours Earned | 15 |
| Deficit from previous week | (0) |
| Weekly Bonus Hours | 15 |
| x effective hourly rate | $25.00 |
| Weekly Bonus Amount | $375.00 |

---

[11] Callaway billed HealthSouth for the time worked by Plaintiffs, so Plaintiffs had to maintain time sheets.  Requiring the use of time sheets or time cards does not affect an individual's status as an exempt employee. *McGuire v. City of Portland*, 159 F.3d 460, 464 (9th Cir. 1998); *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997); *Kuchinskas v. Broward County*, 840 F. Supp. 1548, 1556 (S.D. Fla. 1993), *aff'd*, 86 F.3d 1168 (11th Cir. 1996).

### Bonus Example #2

A project professional works a full week, is paid their full weekly salary, and reports 35 billable hours.  This project professional's weekly salary is $1,000 and is in good standing with Callaway.  There is no "bonus hour deficit" from the previous week.

| | |
|---|---|
| Billable Hours | 35 |
| Weekly Billable Hour Bonus Threshold | (40) |
| Bonus Hours Earned | (5) |
| Deficit from previous week | (0) |
| Weekly Bonus Hours | (5) To be carried over to next week |
| x effective hourly rate | $25.00 |
| Weekly Bonus Amount | $0 |

### Bonus Example #2a

The next week, the same project professional works a full week, is paid their full weekly salary, and reports 60 billable hours.  This project professional's weekly salary is $1,000 and is in good standing with Callaway.

| | |
|---|---|
| Billable Hours | 60 |
| Weekly Billable Hour Bonus Threshold | (40) |
| Bonus Hours Earned | 20 |
| Deficit from previous week | (5) |
| Weekly Bonus Hours | 15 |
| x effective hourly rate | $25.00 |

12

| | |
|---|---|
| Weekly Bonus Amount | $375.00 |

## Bonus Example #3

A project professional takes 2 personal days and works 3 days, is paid 3/5 of their weekly salary, and reports 35 billable hours.  This project professional's normal weekly salary is $1,000, $600 paid for this week after $400 deduction for 2 full day absences for personal reasons.  He/she is in good standing with Callaway.  There is no "bonus hour deficit" from the previous week.

| | |
|---|---|
| Billable Hours | 35 |
| Weekly Billable Hour Bonus Threshold | (24) Prorated (3/5 x 40 = 24) |
| Bonus Hours Earned | 11 |
| Deficit from previous week | (0) |
| Weekly Bonus Hours | 11 |
| x effective hourly rate | $25.00 |
| Weekly Bonus Amount | $275.00 |

### Calculation of Bonus Hourly Amount

DOL regulations provide that employers may pay "additional compensation" to salaried employees "on any basis (e.g., flat sum, bonus payment, *straight-time hourly amount*, time and one-half or any other basis) . . . ."  29 C.F.R. § 541.604(a) (emphasis added).  Callaway's bonuses were paid in a straight-time hourly amount, and Callaway used each Plaintiff's weekly salary to determine the straight-time

13

hourly bonus amount that would be paid.  (*Id.* ¶ 34.)  Specifically, Callaway divided each Plaintiff's salary by forty (which was derived from a five day work week).  (*Id.*)  For example, if a Plaintiff was paid a weekly salary of $1,600, she was paid $40.00 for each bonus hour ($1,600 ÷ 40 hours = $40.00 per hour).

<u>Bonus Deductions Had No Effect on Salary</u>

The bonus plan and any related deductions to the bonus had no effect whatsoever on the payment of the predetermined weekly salary.  (*Id.* ¶ 36.)  If a Plaintiff worked seven and not eight hours on each regularly-scheduled workday, thus totaling 35 hours of work, he or she still earned the full predetermined weekly salary.  (*Id.* ¶ 37.)  The Plaintiff simply would not earn a bonus until he or she made up the bonus-hour deficit of five hours and then worked over 40 hours in a given week.  (*Id.* ¶ 37.)

## F.   Callaway Rarely Deducted from Plaintiffs' Bonuses.

As noted above, Plaintiffs collectively worked 7,871 weeks on the HealthSouth project.  Defendants served Plaintiffs with interrogatories asking them to identify all weeks in which Defendant deducted from their bonuses:

- "Please identify every occasion on which you claim Callaway deducted for hours you missed in a partial work day.  For each such occasion, please state the date, the number of hours worked, the amount you were paid, and whether the deduction was from your bonus or weekly salary."

*See* Appendix A (Objections and Resp. to Defendant's Second Set of Interrogatories to Designated Opt-In Pls., Interrogatory No. 4).

As noted above, Plaintiffs responded to these interrogatories with a chart. *See* Appendix B.  On pages one, two and three of the chart, under the heading "categories," Plaintiffs identified 53 weeks in which they allege Callaway deducted from their bonus hours worked for partial days worked and, therefore, paid them a lower bonus or none at all (noted on chart as "Bonus hrs reduced").  That is a mere 0.7% of the total weeks (7,871) they worked.  In the chart, Plaintiffs do not claim Callaway deducted from their bonuses the other 99.3% of the time.[12]

Callaway has carefully reviewed all 53 occasions identified by Plaintiffs.  In these fifty-three instances there were some deductions from the bonus eligibility, but Plaintiffs were paid their weekly salary or the correct pro-rata amount of their salary for each week identified.  (*See* SOF ¶ 54.)

## III.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c):

> [S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In

---

[12] Using Plaintiffs' chart, Defendants prepared a summary calculation of the weeks in which Plaintiffs allege Callaway deducted from their bonuses. *See* Fed. R. Evid. 1006.  The summary is attached at Appendix E.

> making this determination, the Court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quotation marks and citation omitted).

## IV.    ARGUMENT

As fully discussed below, the Secretary of Labor's regulations, the DOL's opinion letters and case law are clear:  the manner in which bonus pay is calculated, and any deductions from it, are irrelevant to whether Plaintiffs were exempt.  Therefore, Callaway did not lose the exemption by deducting from Plaintiffs' bonuses.  The deductions were permissible, Callaway's bonus plan was lawful, and Callaway's Motion for Summary Judgment is due to be granted.

### A.    The Relevant Legal Background.

The FLSA requires that employees be paid overtime when they work more than forty hours in a week.  29 U.S.C. § 207(a)(1).  However, certain types of employees can be "exempt" from the overtime requirement.  For example, "an exemption from the overtime pay requirements exists for employees in a 'bona fide

executive, administrative, or professional capacity' . . . as defined by regulations of the Secretary." *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004).

The Secretary of Labor has issued regulations providing that employees are exempt if (1) they are paid a "predetermined" weekly salary of at least $455 and (2) perform the types of job duties set forth in the regulations for the exemptions. *See* 29 C.F.R. § 541.602 (salary basis) and §§ 541.100 through 541.300 (executive, administrative and professional exemptions). These two requirements are commonly referred to as the "salary basis" test and the "duties" test. *Hogan*, 361 F.3d at 625.

The FLSA says nothing about the salary-basis test; rather, the test was created by the Secretary of Labor. As the Supreme Court has explained, "Because the salary-basis test is a creature of the Secretary [of Labor]'s own regulations, his interpretation of it is, under [Supreme Court] jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citation omitted); *see also Ake v. TVA,* 2002 U.S. Dist. LEXIS 26590 (N.D. Ala. May 23, 2002) (citing *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) ("The FLSA is greatly supplemented by regulations promulgated by the Administrator of the U.S. Dept. of Labor, Wage and Hour Division. These regulations are given 'the force and effect of law.'").

17

The only issue for the Court to decide is whether Plaintiffs were paid on a salary basis although Callaway deducted from their bonuses.

## B.    The Secretary of Labor's Regulations Expressly Permit Employers to Pay Exempt Employees a Straight-Time Hourly Bonus.

The Secretary of Labor's regulations *require* that exempt employees "regularly receive[] . . . a predetermined amount constituting all or part of" their compensation" which exceeds $455 each week.  29 C.F.R. § 541.602(a) (emphasis added).  In contrast, the regulations *permit* – but do not require – employers such as Callaway to provide additional compensation to exempt employees in the form of a straight-time hourly bonus:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, an exempt employee guaranteed at least $ 455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $ 455 each week paid on a salary basis. *Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $ 455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.*"

29 C.F.R. § 541.604(a) (emphasis added).[13]

Consistent with this regulation, Callaway paid Plaintiffs bonuses in straight-time hourly amounts.

## C.    The Secretary of Labor's Regulations Do Not Prohibit Any Deductions from Exempt Employees' Bonuses.

While the Secretary of Labor's regulations plainly recognize two forms of compensation for exempt employees (predetermined weekly salary and additional compensation), the Secretary's regulations state that only an "employer who makes improper deductions from *salary*" may lose the exemption. 29 C.F.R. § 541.603(a) (emphasis added).  Nothing in the FLSA or the Secretary's regulations prohibited Callaway from "docking" a Consultant's bonus eligibility based on hours billed in a current or prior week.

---

[13/] The Eleventh Circuit has held that additional compensation can be paid to an exempt employee "as long as there is a non-deductible minimum" salary.  *Hogan*, 361 F.3d at 625.  Other courts have further held that additional compensation may be paid on a straight-time hourly basis without destroying an employee's exempt status.  *See Boykin v. Boeing Co.*, 128 F.3d 1279 (9th Cir. 1997); *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) (holding that payments of "'straight-time' overtime compensation" to exempt employees does not violate the salary-basis test).

**D.     The Department of Labor's Opinion Letters Establish That Employers Are Permitted to Deduct from Exempt Employees' Bonuses.**

The DOL's Wage and Hour Division issues opinion letters to explain the requirements of the FLSA and the Secretary of Labor's regulations.  The DOL considers these opinion letters to be "rulings," 29 C.F.R. § 790.17(d).  Given their provenance and legal effect, DOL opinion letters are entitled to great weight when they interpret the DOL's own regulations.  *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1232 n.7 (10th Cir. 2008); *see also Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002).   "The *Skidmore* Court held that when considering the deference to 'rulings, interpretations and opinions of the Administrator,' the 'weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'"   *Arriaga*, 305 F.3d at 1238 (quoting *Skidmore v. Swift*, 323 U.S. 134, 140, 89 L. Ed. 124, 65 S. Ct. 161 (1944)).

The DOL has issued two opinion letters holding that employers may deduct from exempt employees' bonuses.  In a November 3, 2006, Opinion Letter from the DOL (FLSA2006-24NA) (Appendix C), the employer paid exempt managers a salary and a bonus.  The employer deducted from the managers' bonus for bad

checks or other cash shortages.  The DOL held there is no prohibition against deducting from exempt employees' bonuses:

> Section 541.600(a) requires only that exempt employees be paid a guaranteed salary of at least $455 per week.  Additional compensation above this salary amount is generally something that may be agreed upon between the employer and the employee.  *The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees.*  Therefore, it is our opinion that bad check and other cash shortage deductions from bonus payments paid to salaried exempt employees are permissible and do not affect the employees' exempt status under section 13(a)(1) of the FLSA so long as the bonus payments are bona fide and are not paid to facilitate otherwise prohibited deductions from the guaranteed salary.

Appendix C, p. 2 (emphasis added).

In a July 6, 2006, Opinion Letter from the DOL (FLSA2006-24) (Appendix D),[14] the employer paid exempt employees a salary plus commissions.  The employer deducted from the employees' commissions when there were cash shortages.  Again, the DOL held there is no prohibition against deducting from exempt employees' bonuses:

> The final rule at 29 C.F.R. § 541.600(a) requires only that exempt employees be paid a guaranteed salary of at least $455 per week, and that any additional compensation above this salary amount is generally something that may be agreed upon between the employer and the employee.  The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to

---

[14] This Opinion Letter was issued by the Acting Administrator of the Wage and Hour Division of the DOL.

any such additional compensation provided to exempt employees. Therefore, it is our opinion that cash shortage deductions may be made from a salaried exempt employee's commission payments without affecting the employee's exempt status under section 13(a)(1) of the FLSA so long as the commission payments are bona fide and are not paid to facilitate otherwise prohibited deductions from the guaranteed salary.

Appendix D, p. 2.

Callaway's bonus plan was consistent with these opinion letters.

## E.   Case Law Establishes that Employers Are Permitted to Deduct from Exempt Employees' Bonuses.

In *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed. Appx. 301 (5th Cir. 2008), the plaintiffs were managers at defendant's convenience stores. The plaintiffs received a predetermined, weekly salary regardless of the number of hours they worked. *Id.* at 303. The plaintiffs were eligible for bonuses, and reductions to or deductions from those bonuses were permissible under the company's bonus plan. The plaintiffs argued that the "reduction-of-bonus" provisions within the bonus plan constituted "an impermissible docking of pay and destroy[ed] the exempt status of store managers." The Fifth Circuit rejected this argument.

Relying on the DOL's regulations and an opinion letter, the Fifth Circuit held that deductions from the managers' bonuses are permissible and consistent with the salary-basis test:

> Deductions or reductions from bonus payments do not affect an employee's status as an exempt employee so long as the requisite minimum $ 455 salary is paid. "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." "The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees." Therefore, Allsup's' management bonus policy does not result in impermissible deductions that destroy [the plaintiffs'] exempt status.

*Id.* at 304 (footnotes and citations omitted).

Similarly, in *Phillips v. Capital Toyota, Inc.*, No. 1:05-cv-215, 2006 U.S. Dist. LEXIS 333622 (E.D. Tenn. May 22, 2006), the plaintiff was the parts manager at defendant car dealership. *Id.* at *4. The plaintiff was paid a fixed salary plus bonus compensation. *Id.* at *5. The plaintiff's bonus was based on his department's profits. However, when the dealership began tracking the plaintiff's hours, it reduced his bonus even though the department's profits did not decline. *Id.* Like Plaintiffs in this case, the *Phillips* plaintiff claimed he was not paid on a salary basis because his total compensation could be reduced based on the number of hours he worked.

The court rejected the plaintiff's argument. Citing to the DOL regulations, the court concluded: "As these regulations make clear, the key is not whether an employee's overall compensation is subject to reduction, but rather if the

predetermined amount is subject to reduction." *Id.* at *13. "Plaintiff's bonus and trip to Hawaii were not part of his predetermined amount of compensation. Therefore, they could be reduced based on the amount of hours Plaintiff worked without changing Plaintiff's status as an exempt employee under the FLSA." *Id.*

Callaway's bonus plan was consistent with these cases.

## V.   <u>CONCLUSION</u>

The Secretary of Labor's regulations, the DOL's opinion letters and case law are clear:  the manner in Callaway calculated bonus pay, and any deductions Callaway made to bonus pay, are irrelevant to whether Plaintiffs were exempt. Therefore, Callaway did not lose the exemption by deducting from Plaintiffs' bonuses.  The deductions were permissible, and Callaway's bonus plan was lawful. Accordingly, Plaintiffs were exempt from the FLSA's overtime provisions, and Defendants are entitled to summary judgment in their favor.

Respectfully submitted this 15th day of May, 2009.

<u>s/ C. Todd Van Dyke</u>
C. Todd Van Dyke
Georgia Bar No. 723420
L. Dale Owens
Georgia Bar No. 557482
Suzanne M. Alford
Georgia Bar No. 005437
Attorneys for Defendants

24

JACKSON LEWIS LLP
1155 Peachtree Street, Suite 1000
Atlanta, Georgia  30309-3630
Telephone:  (404) 525-8200
Facsimile:   (404) 535-1173

## **CERTIFICATION**

Pursuant to LR 7.1(D), NDGa., I, C. Todd Van Dyke, do hereby certify that this document has been prepared in Times New Roman 14 point font, approved by this Court in LR 5.1(C), NDGa.

s/  C. Todd Van Dyke
C. Todd Van Dyke
Georgia Bar No. 723420

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HARRIET BELL, | ) | |
| Individually and on | ) | |
| behalf of all similarly | ) | |
| situated persons, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:06-CV-1993-CC |
| vs. | ) | |
| | ) | |
| CALLAWAY PARTNERS, LLC | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2009, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to the following attorneys of record:

> Edward D. Buckley, Esq.
> Daniel Klein, Esq.
> John Beasley, Esq.
> BUCKLEY & KLEIN, LLP
> Atlantic Center Plaza, Suite 1100
> 1180 West Peachtree Street
> Atlanta, GA 30309-3521

s/  C. Todd Van Dyke
C. Todd Van Dyke
Georgia Bar No. 723420
Attorney for Defendants

JACKSON LEWIS LLP
1155 Peachtree Street
Suite 1000
Atlanta, Georgia  30309-3630
Telephone:   (404) 525-8200
Facsimile:   (404) 535-1173