UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HARRIET BELL, Individually and on behalf of all similarly situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:06-CV-1993-CC |
| vs. | ) ) | |
| CALLAWAY PARTNERS, LLC, and HURON CONSULTING GROUP, INC., | ) ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS'MOTION FOR DECERTIFICATION OF CLASS**

### I.     INTRODUCTION

On June 19, 2007, the Court conditionally certified a class of "all current and former Callaway employees who held the position of consultant and worked on the HealthSouth project at any time during the period from February 1, 2004, through February 1, 2007." (Order Granting in Part and Denying in Part Motion for Judicial Notice, Docket No. 117.) Plaintiffs persuaded the Court to conditionally certify a class because Defendant Callaway Partners, LLC's

("Callaway") written bonus system, which applied to all Consultants on the HealthSouth project, was allegedly unlawful.

Decertification is now appropriate because the scope of, and claims in, this case have changed. To be sure, Plaintiff and the Opt-In Plaintiffs (collectively "Plaintiffs") still allege they are entitled to overtime pay under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") because Callaway impermissibly deducted from their bonuses. However, Plaintiffs now also claim they are entitled to overtime pay for a second, independent reason: Callaway allegedly impermissibly deducted from their weekly salaries.

In contrast to Callaway's bonus plan, there is absolutely no evidence Callaway ever had a policy of deducting from Plaintiffs' weekly salaries. To the contrary, Defendants have introduced a *written policy* – the PowerPoint presentation – confirming that Callaway only made permissible deductions from Plaintiffs' weekly salaries. Indeed, out of a total of 7,871 weeks the Plaintiffs worked, they could point to only 28 weeks in which they contend Callaway made impermissible deductions from their salaries.[1]  Put another way, Callaway is

---

[1] Plaintiffs' table includes 30 such instances, but two involve individuals (Herak and Welborn) who have since withdrawn from the case and thus are not included in this analysis.

alleged to have impermissibly deducted from Plaintiffs' weekly salaries only 0.4% of the time.

Because there was no policy of making partial-day deductions, and indeed such alleged occurrences were extraordinarily rare, continued certification through trial of Plaintiffs' claims is improper. Plaintiffs' claim that Callaway impermissibly deducted from their weekly salaries, and Callaway's defenses to them, depend on highly-individualized analyses of each of the 28 instances alleged by Plaintiffs. Each of the 19 Plaintiffs involved in those 28 instances will need to testify about the peculiar circumstances that led to the alleged "partial-day deduction," or about how no such deduction actually occurred, and Callaway will present rebuttal testimony and evidence (time sheets and payroll records).

For these reasons, which are more fully discussed below, the Court should enter an order decertifying the class in its entirety and dismissing the opt-in plaintiffs without prejudice.

## II.   STATEMENTS OF FACTS

Defendants have filed a Motion for Summary Judgment on Plaintiffs' Partial-Day Deduction Claims. (Docket No. 339.) In the interests of judicial economy, Defendants incorporate the Statement of Material Facts ("SOF") in support of that Motion for Summary Judgment as if set forth fully herein. All of

the facts and statistics set forth below are fully supported by affidavit and documentary evidence in the Statement of Facts.

### III.  ARGUMENT

The Eleventh Circuit has "sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). In *Morgan*, the Court outlined the following standards a district court should follow when ruling upon a motion for decertification at the second stage:

> The second stage [decertification] is triggered by an employer's motion for decertification. *Anderson*, 488 F.3d at 953. At this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity. *Id.* This second stage is less lenient, and the plaintiff bears a heavier burden. *Id.* (citing *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).
>
> In *Anderson*, we again refused to draw bright lines in defining similarly, but explained that as more legally significant differences appear amongst the opt-ins, the less likely it is that the group of employees is similarly situated. *Id.* ("Exactly how much less lenient we need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action."). We also refused to "specify how plaintiffs' burden of demonstrating that a collective action is warranted differs at the second stage." *Id.* Rather, we emphasized the fact that the "ultimate decision rests largely within the district court's discretion," and clarified that in order to overcome the defendant's evidence, a plaintiff must rely on more than just "allegations and affidavits." *Id.* Because the second stage usually occurs just before the

> end of discovery, or at its close, the district court likely has a more extensive and detailed factual record.
>
> In *Anderson*, we also quoted approvingly of *Thiessen*, where the Tenth Circuit identified a number of factors that courts should consider at the second stage, such as: "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations[.]" *Anderson*, 488 F.3d at 953 (quoting with approval *Thiessen*, 267 F.3d at 1103); *see also Mooney*, 54 F.3d at 1213 n.7, 1215-16. Thus, at the second stage, "although the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions" and encompass the defenses to some extent. *Anderson*, 488 F.3d at 953 (citation and quotation marks omitted). For example, the district court must consider whether the defenses that apply to the opt-in plaintiffs' claims are similar to one another or whether they vary significantly. *Id.* at 954 n.8 (noting that all named plaintiffs were unionized but some opt-in plaintiffs were not, making the collective bargaining agreement defense applicable to some but not all plaintiffs). But ultimately, whether a collective action is appropriate depends largely on the factual question of whether the plaintiff employees are similarly situated to one another.

*Morgan*, 551 F.3d at 1260.

**A.   Discussion of Case Law**

"The Eleventh Circuit has stated that 'a unified policy, plan, or scheme of discrimination may not be required to satisfy' the similarly-situated requirement of Section 216(b) of the FLSA. Nevertheless, a plaintiff 'must make some rudimentary showing of commonality between the basis for his claims and

5

that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions.'" *See Brooks v. BellSouth Telecomm., Inc.*, 2009 U.S. Dist. LEXIS 20552 *17 (N.D. Ga. 2009) (citations omitted).

Two months ago, Judge Orinda Evans applied these standards at the more lenient conditional certification stage and denied certification:

> The Court finds that this is not an appropriate case for a collective action.  *Plaintiffs must, at the initial stage of conditional certification, provide some credible evidence of "class-wide" violations of the FLSA, or make some rudimentary showing of the commonality between their claims and those of the putative class.*  Plaintiffs have failed to make even this rudimentary showing.

*Brooks*, 2009 U.S. Dist. LEXIS 20552 at *23 (emphasis added).

Judge Thomas Thrash has also denied certification by applying these same standards:

> *[T]he Plaintiffs have not shown a common policy that violates the FLSA.  A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy or practice.*  It is undisputed that Accredited has paid more than $1.4 million in overtime . . . .  This demonstrates that at least some of the company's loan officers and their managers have been complying with its overtime policy.  Fifty Accredited loan officers have submitted declarations to the Court testifying that they have always been properly paid for the overtime they have worked . . . .  *Therefore, the best that can be said of the Plaintiffs' case is that some loan officers were paid overtime and some were not.  If this case goes forward as a collective action, an individualized inquiry into why some were paid overtime is required.  The Plaintiffs have not met their burden of making a rudimentary showing of commonality among claims.*

6

*Williams v. Accredited Home Lenders, Inc.*, 2006 U.S. Dist. LEXIS 50653 *14-15 (N.D. Ga. 2006) (emphasis added).

Many other courts have reached the same conclusion. *See Ledbetter v. Pruitt Corp.*, 2007 U.S. Dist. LEXIS 10243, * 14-15 (M.D. Ga. 2007) ("the mere fact that [FLSA] violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."); *Saxton v. Title Max of Ala.*, 431 F. Supp. 2d 1185, 1189 (N.D. Ala. 2006) (in "the absence of any evidence . . . that [defendant] routinely breached the FLSA's overtime provisions, such deviations are then, by their very nature, highly case-specific and subject to a variety of variables," which "runs directly counter to the economy of scale envisioned by collective actions"); *Robinson v. Dolgencorp, Inc.*, 2006 U.S. Dist. LEXIS 85471, *24-25 (M.D. Fla. 2006) ("Although, the existence of a common policy or plan is not a mandatory requirement in the Eleventh Circuit for conditional certification, nonetheless, the existence of a common policy or plan is relevant to the Court's exercise of its discretion in granting conditional certification because the underlying rationale for granting a collective action is to preserve judicial economy . . . where a collective action would not serve the interests of judicial economy, plaintiffs should not be permitted to request court-supervised

notice as a tool for drumming-up business."); *Marsh v. Butler County School Sys.*, 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003) ("[A] plaintiff must make some rudimentary showing of commonality between the basis of his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions.").

## B. The Class Should Be Decertified Because There Are Disparate Factual Settings.

Collective action proceedings make judicial management sense if, and only if, the named plaintiff is truly representative of the opt-in plaintiffs she seeks to represent. In other words, collective action proceedings make sense only if the evidence about the claim of the named plaintiff provides the basis for deciding claims of all other plaintiffs. If that inference is not appropriate in a given case (such as this case), then the court and the parties are left with multiple issues of individualized discovery and proof, leading to delay and confusion at trial.

This case no longer makes sense proceeding as a collective action because it involves disparate factual settings. First, the Court need only review Callaway's analysis of the 28 instances to reach this conclusion. *See* SOF (Exhibit 1 (Deborah Erickson Declaration) and Exhibits G and I attached thereto); SOF ¶ 32 (addressing Barbara Sikes). There would be no benefit to addressing all of these

disparate factual settings in a single trial. To the contrary, multiple issues of individualized discovery and proof would lead to confusion and delay at trial.

Second, Plaintiffs cannot cite to any uniform policy, written or otherwise, that resulted in the 28 instances of alleged partial-day deductions, because there was no such policy. On the contrary, Defendants have submitted evidence establishing that Plaintiffs who worked less than an average of eight hours each regularly-scheduled day were still paid their full pro-rata salary for the day. (SOF ¶ 29.) Moreover, Defendants have introduced a *written policy* – the PowerPoint presentation – confirming that Callaway only made permissible deductions from Plaintiffs' weekly salaries. (SOF ¶¶ 18-19.)

Third, Plaintiffs can only identify 28 isolated instances of alleged partial-day deductions out of a possible 7,871 workweeks. (SOF ¶ 27.) Such instances occurred in less than 0.4% of weeks in which Plaintiffs collectively worked. Moreover, the 28 instances only involved 19 of the Plaintiffs, which is less than 1/6 of the current opt-in class of 120 Plaintiffs.

In sum, the alleged partial-day deductions were the result of disparate factual situations, and not a policy that uniformly applied to the class. Consequently, continued class-wide litigation is improper. *See Sharer v. Tandeberg*, No. 1:06cv626, 2007 U.S. Dist. LEXIS 14246, at *8-9 (E.D. Va. Feb.

27, 2007) (decertifying a class claiming the defendant made improper partial-day deductions because there was no evidence that a partial-day docking system existed at the time the named Plaintiffs were employed); *see also Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278 (N.D. Tex. 2008) (decertifying class where there was "no evidence of a single decision, policy, or plan that [caused] the Plaintiffs to work off the clock"); *O'Brien v. Ed Donnelly Enterprises, Inc.*, No. 2:04-CV-00085, 2006 U.S. Dist. LEXIS 86895, at *3 (S.D. Ohio Nov. 30, 2006) (decertifying a class where the plaintiffs "failed to offer sufficient evidence to establish existence of a common plan or policy violating the FLSA"); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) ("It is the opinion of the Court that a demonstration of [defendant's] payment practice concerning two out of fifty employees (four percent of Defendant's workforce) does not rise to the level of a common policy or plan by [defendant] that violated the FLSA.").

**C.     The Class Should Be Decertified Because Callaway's Defenses Are Individualized As To Each Plaintiff.**

As referenced above, Callaway has individualized defenses to each of the 28 instances in which Plaintiffs allege Callaway made partial-day deductions, and those defenses vary based on the unique circumstances of each alleged deduction.

With regard to opt-in Barbara Sykes, Callaway's defense is that Ms. Sykes was employed on an hourly basis at the time of the alleged partial-day deductions, so there was no salary from which Callaway could deduct.  (SOF ¶ 32.)  For some of the instances alleged by Plaintiffs, Callaway's defense is that Plaintiffs were actually paid their proper pro-rata salary because they missed regularly-scheduled workdays during the weeks in question.  In other instances, Callaway's defense is that it learned during the course of this litigation that there may have been an inadvertent partial-day deduction, but Callaway then paid Plaintiffs the difference between their salary or pro-rata salary and what they were originally paid.  Finally, in other instances, Callaway's defense is that Plaintiffs signed release agreements waiving any claim under the FLSA for the weeks in question.  *See* SOF (Exhibit 1 (Deborah Erickson Declaration) and Exhibits G and I attached thereto).

In sum, Callaway has at least four defenses to the 28 instances of alleged partial-day deductions based on the peculiar circumstances of each of those instances.  Due to the individualized nature of Callaway's defenses, it is improper to allow Plaintiffs to proceed on a class-wide basis.

**D.      The Class Should Be Decertified Based On Fairness And Procedural Considerations.**

Fairness and procedural considerations further weigh in favor of decertifying the class. Trying Plaintiffs' partial-day deduction claims on a class-wide basis will not conserve the parties' or judicial resources. To the contrary, the parties would need to conduct 28 mini-trials on each of the alleged partial-day deductions. Representative testimony could not be used because the reasons for the alleged deductions are specific to each incident. Thus, all 19 Plaintiffs who claim to have suffered a partial-day deduction would need to testify on their own behalf. Proceeding in such a manner would make a trial unnecessarily complicated and would risk confusing the jury.

Finally, Plaintiffs will not be prejudiced in any way if the class is decertified and they are given a set amount of time to file their claims individually. Plaintiffs have already reaped the benefits of collective discovery. They are now aware that there is no evidence of a uniform policy to make partial-day deductions from salary. They have also determined that there are only 28 instances of alleged partial-day deductions affecting only 19 Plaintiffs. They now have an understanding of the basis for their individualized partial-day deduction claims and can proceed with their claims as individuals.

## IV. <u>CONCLUSION</u>

For the above reasons, the Court should enter an order decertifying the class in its entirety and dismissing the opt-in plaintiffs without prejudice.

Respectfully submitted this 15th day of May, 2009.

s/ Suzanne M. Alford
C. Todd Van Dyke
Georgia Bar No. 723420
L. Dale Owens
Georgia Bar No. 557482
Suzanne M. Alford
Georgia Bar No. 005437
alfords@jacksonlewis.com
Attorneys for Defendant

JACKSON LEWIS LLP
1155 Peachtree Street
Suite 1000
Atlanta, Georgia  30309-3630
Telephone:  (404) 525-8200
Facsimile:  (404) 535-1173
Email:  alfords@jacksonlewis.com

## **CERTIFICATION**

Pursuant to LR 7.1(D), NDGa., I, Suzanne M. Alford, do hereby certify that this document has been prepared in Times New Roman 14 point font, approved by this Court in LR 5.1(C), NDGa.

s/ Suzanne M. Alford

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| HARRIET BELL, Individually and on behalf of all similarly situated persons, ) ) ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 1:06-CV-1993-CC |
| vs. ) ) | |
| CALLAWAY PARTNERS, LLC ) ) | JURY TRIAL DEMANDED |
| Defendant. ) _____ ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

>Edward D. Buckley, Esq.
>Daniel Klein, Esq.
>John Beasley, Esq.
>BUCKLEY & KLEIN, LLP
>Atlantic Center Plaza, Suite 1100
>1180 West Peachtree Street
>Atlanta, GA 30309-3521

                                                        s/ Suzanne M. Alford
                                                        Suzanne M. Alford
                                                        Georgia Bar No. 005437
                                                        Attorney for Defendant

JACKSON LEWIS LLP
1155 Peachtree Street
Suite 1000
Atlanta, Georgia  30309-3630
Telephone:   (404) 525-8200
Facsimile:    (404) 535-1173
Email:  alfords@jacksonlewis.com