**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HARRIET BELL, | ) | |
| Individually and on | ) | |
| behalf of all similarly | ) | |
| situated persons, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:06-CV-1993-CC |
| vs. | ) | |
| | ) | |
| CALLAWAY PARTNERS, LLC, | ) | JURY TRIAL DEMANDED |
| and HURON CONSULTING | ) | |
| GROUP, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

Defendants Callaway Partners, LLC ("Callaway") and Huron Consulting Group, Inc. (collectively "Defendants") request that the Court deny Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' MSJ").

## I.    INTRODUCTION

During the nearly three years that this litigation has been pending, Callaway produced payroll and timesheet records for the combined total of 7,871 person-weeks that Plaintiff Bell and the opt-in plaintiffs (collectively, "Plaintiffs") were employed during the relevant period.  After thoroughly reviewing the records for

those 7,871 weeks, Plaintiffs now base their entire case on what they incorrectly claim were improper deductions made in 81[1] of those weeks (approximately 1% of the total weeks they worked).  Plaintiffs do not dispute that they were properly paid pursuant to the Department of Labor's ("DOL") salary-basis test the remaining 99% of the time that they worked for Callaway.

As to 54[2] of those 81 weeks, Plaintiffs claim that Callaway improperly "deducted" from their bonuses (which Plaintiffs now call "overtime" pay), but not from their *salaries*.  That argument is foreclosed by the DOL's regulations and relevant Opinion Letters, which expressly state that the DOL's salary-basis test authorizes an employer to pay salaried exempt employees "additional compensation" over and above their salaries, and to calculate and pay that "additional compensation" "based on hours worked" on a "straight-time hourly" basis – or, indeed, on any "other basis."  29 C.F.R. § 541.604(a).

---

[1] Plaintiffs' counsel have confirmed that the entries in Exhibit B to the Declaration of Pam Rymin for Plaintiffs Banks and Bordeaux (both for August 29, 2004), were included by inadvertent oversight, as well as three entries for Plaintiff Sykes (December 9, 16, and 23, 2006); they have agreed to correct the record, thus decreasing the total number of weeks they challenge from 84 to 79.

[2] In Plaintiffs' MSJ, they state that there are 52 such instances.  (Pl.'s Br. 8.)  In their discovery responses, Plaintiffs' listed 53 such instances.  Exhibit B to the Declaration of Pam Rymin lists 54 such instances.  Accordingly, Defendants will use 54 as the number in this Brief.

As shown below, there also is no merit to Plaintiffs' claims that Callaway is in violation of the DOL's salary-basis test based on alleged improper deductions from the salaries of 20 Plaintiffs for partial-day absences in the other 27 weeks.

Finally, Callaway's reliance on the DOL's regulations provides an absolute defense to liability.  29 U.S.C. § 259.

For these reasons, the Court should deny Plaintiffs' Motion for Summary Judgment.  In addition, the Court should not reopen discovery on the issues of damages and willfulness.  In nearly three years of litigation, Plaintiffs have had more than ample time to conduct discovery.

## II.    STATEMENT OF FACTS[3]

On the HealthSouth project, Plaintiffs' pay consisted of two separate components.  (Docket No. 341-7 ("Defs.' Bonus SOF") ¶ 11.)  First, Plaintiffs received a predetermined weekly salary in excess of $455.  (*Id.* ¶ 12.)  Callaway told Plaintiffs in engagement letters that it would pay them a specified weekly salary.  (*Id.* ¶ 14, 16)  ("Your weekly salary will be $1600 per week . . . .").  Callaway also told Plaintiffs in a PowerPoint presentation that "[e]very employee

---

[3] Defendants incorporate by reference their Statements of Undisputed Material Facts in support of Defendants' Motions for Summary Judgment (Docket Nos. 339-4 and 341-7), and their Response to Plaintiff's Statement of Undisputed Material Facts, filed contemporaneously herewith.

assigned on the HealthSouth engagement is paid a guaranteed **weekly salary.**" (*Id.* ¶ 18, p.4 (emphasis in original).)

Page 5 of the PowerPoint tracked the DOL's regulations that implement the FLSA (29 C.F.R. § 541.602), stating, *inter alia*: "For each week you are employed by Callaway, working on the HealthSouth engagement, you are entitled to your full weekly salary, subject to a few exceptions . . . "Days" not worked for personal reasons, unpaid vacation, or illness (can be offset by PTO days earned) . . . ." (Defs.' Bonus SOF ¶ 19.)

The second part of Plaintiffs' pay was a bonus, which was additional compensation they could earn in addition to their predetermined weekly salary. (*Id.* ¶ 29.) The PowerPoint also explained the bonus:

> For each week you are employed by Callaway, receiving a weekly salary while working on the HealthSouth engagement, you will earn a bonus for billable hours worked in excess of 40 hours. . . . Any deficit created in a given week (where billable hours are less than 40), will be carried forward and applied against future week's bonus calculation. This calculation has <u>no effect</u> on an employee's guaranteed weekly salary.

(*Id.* ¶ 34 (emphasis in original)[4]; *see also id.* ¶¶ 18, 33, 39.)

---

[4] Beginning in early 2005, Callaway modified the bonus plan to make it more generous; it paid a bonus to Plaintiffs even if they worked fewer than the five regularly-scheduled workdays (Monday – Friday), as long as the total billable hours for the week averaged more than eight hours of work per the regularly-scheduled workday worked. (Defs.' Bonus SOF ¶ 33.)

4

Plaintiffs fail to present any admissible evidence to support their argument that Callaway paid them "overtime" while they were employed in a salaried position, or that Callaway "deducted" from "overtime" in applying its bonus system.  Pam Rymin's Declaration does not provide admissible evidence for that claim.   The paralegal declarant does not purport to testify from her own knowledge, but only purports to summarize documents produced by Callaway in discovery.  However, those documents do not state that Plaintiffs worked "overtime" or received "overtime" pay, or that Callaway "deducted" from "overtime" while they were employed in any salaried exempt position.[5]   (*See* Defs.' Obj. to Rymin Decl. at 4.)  The Declaration cannot "summarize" what is not stated in the underlying documents, or create admissible evidence that is not stated in the documents. (*Id.*)   In addition, none of Plaintiffs' Declarations attached to Plaintiffs' Statement of Undisputed Material Facts states that they worked "overtime," were paid "overtime" pay, or suffered "deductions" from "overtime"

---

[5]In addition, during discovery Defendants asked Plaintiffs for a complete list of instances in which Plaintiffs contend that Callaway made improper deductions from Plaintiffs' salaries.  Plaintiffs' produced a series of tables, the last one of which was produced in March 2009.  (*See* App. B to Defs.' Mot. for Summ. J. on Pl.'s Bonus Claims.)  That table was similar to Exhibit B to the Rymin Declaration, except it stated that "bonus hours reduced," not "debt repaid from overtime."  This illustrates that even Plaintiffs never claimed that the "bonus" was to be "overtime" until they filed their Motion for Summary Judgment.

pay.  Thus, there is no evidence that Callaway paid "overtime" or "deducted" from "overtime" pay for any salaried Plaintiff.

More important, those Declarations do not constitute evidence Callaway deducted from any Plaintiff's *salary*.  To the contrary, the Declarations carefully avoid any such statement, and instead say only vaguely that Callaway deducted from "pay."  Those statements have no legal significance because the DOL's regulations authorized Callaway to calculate on "any basis" (and therefore to deduct from) that part of the "pay" that was *not* salary.  *See infra* pp. 9-15.  Thus, Plaintiffs present no evidence that Callaway deducted from Plaintiffs' *salaries* in any of the 54 weeks on which they base their first argument.

There also is no evidence establishing Plaintiffs' claim that Callaway deducted from any Plaintiff's salary in any of the *other* 27[6] weeks.  Those weeks represent only 0.4% of the weeks collectively worked by Plaintiffs.  Again, the only support Plaintiffs offer for this argument is Exhibit B to the Rymin Declaration, which is inadmissible because it is replete with argument and does not merely summarize the underlying documents.  (*See* Defs.' Obj. to Rymin Decl. at

---

[6] Plaintiffs' counsel have confirmed that the entries in Exhibit B to Pam Rymin's Declaration for Plaintiffs Banks and Bordeaux (both for August 29, 2004), as well as three entries for Plaintiff Sykes (December 9, 16, and 23, 2006), were included by inadvertent oversight; they have agreed to correct the record, thus decreasing the number of weeks in which they contend any Plaintiffs were paid only actual hours from 32 to 27.

3-7.)    Accordingly, because the entirety of Plaintiffs' arguments rely upon inadmissible or irrelevant declarations (and charts), their Motion is unsupported by evidence and should be denied before the Court need even consider its merits. Moreover, the undisputed facts show that in each of those 27 weeks, either (1) Callaway correctly paid Plaintiffs in the first instance, (2) Callaway has otherwise fully paid Plaintiffs for any discrepancy apparent from the face of the payroll records, or (3) Plaintiffs have accepted a payment in settlement and have released their FLSA claims.  *See infra* Section IV.C.

## IV.    ARGUMENT AND AUTHORITIES

### A.    Callaway Complied with the Department of Labor's Salary-Basis Test.

### 1.    The DOL's Regulations and Interpretations of the Salary-Basis Test Are Controlling.

Plaintiffs concede that this entire case turns on whether Callaway paid Plaintiffs in compliance with the DOL's salary-basis test.  (*See* Pls.' Br. 11.)  The FLSA says nothing about the salary-basis test; rather, the Secretary of Labor created the test pursuant to the rulemaking authority delegated by Congress.  As the Supreme Court has explained, "Because the salary-basis test is a creature of the Secretary [of Labor]'s own regulations, his interpretation of it is, under [Supreme Court] jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.'"  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citation omitted).

The DOL's regulations state that "[a]n employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).[7]

## 2.    Callaway Paid Plaintiffs on a Salary Basis.

Consistent with these regulations, Callaway paid Plaintiffs a predetermined weekly salary of $1600 or more, as "all or part" of their compensation.[8]  (*See* Ex. A to Erickson Decl. (offer letters setting forth weekly salaries).)   The evidence shows that those weekly salaries did not depend on the quality or quantity of work performed.   The evidence shows that Plaintiffs still received their full weekly salary or pro-rata salary without regard to whether, for example, they worked enough hours during a week to average at least eight hours per regularly-scheduled workday.   There were at least 69 weeks in which a Plaintiff worked less than a full 8-hour day on one of the five regularly scheduled workdays, but was credited with

_____

[7] As discussed below, the regulation does allow for certain deductions to be made from the salary, such as deductions when an employee misses an entire regularly-scheduled day for personal reasons.  29 C.F.R. § 541.602(b)(1).

[8] Plaintiffs' salaries far exceeded the minimum $455 per week salary requirement. *See* 29 C.F.R. § 541.604(a).

a full workday for purposes of calculating salary. (Erickson Decl. ¶ 29 & Ex. D; Rymin Decl. Ex. B[9], pp. 7-8 ("salary paid" entries).) For example, during the week ending October 30, 2005, Plaintiff Nunez worked on all five regularly-scheduled days for a total of 29.5 hours. (Erickson Decl. ¶ 29 & Ex. D at 10.) Although she worked significantly fewer than 40 hours, she nevertheless received her full weekly salary of $1,600. If Nunez had been paid on an "hourly" basis, she would have received only $1,180 (29.5 hours x $40/hour), instead of $1,600. The undisputed facts thus show that Callaway paid Plaintiffs a salary as defined by the DOL's salary-basis test.

3.     **Callaway's Payment of Additional Compensation in the Form of "Straight Time" Did Not Convert Plaintiffs from Being Paid on a Salary Basis to Being Paid on an Hourly Basis.**

The FLSA does not *require* an employer to pay a salaried exempt employee "overtime pay" for working more than 40 hours in a workweek.[10] However, the DOL "salary-basis" regulations permit – but do not require – employers to provide

_____

[9] Even Plaintiffs identify 7 instances in Exhibit B to Pam Rymin's Declaration where a Plaintiff received his or her full salary or pro-rata salary despite missing either a partial day during the workweek or working less than 40 hours for the week.

[10] Under the DOL's salary-basis regulations, for purposes of the FLSA the exempt employee's salary covers all hours worked. 29 C.F.R. § 541.604(a). The trade-off of being paid on a salary basis is that an employer cannot deduct for partial-day absences, but the employee also is not entitled to overtime payments for working longer hours.

"additional compensation," in addition to the "predetermined amount" of salary to salaried exempt employees, in the form of a straight-time hourly bonus for additional hours worked or on "any basis" the employer chooses:

> An employer may provide an exempt employee with additional compensation *without losing the exemption or violating the salary basis requirement*, if the employment arrangement also includes *a guarantee of at least the minimum weekly-required amount paid on a salary basis*. . . . Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $ 455 each week paid on a salary basis also receives *additional compensation based on hours worked for work beyond the normal workweek*. Such additional compensation may be paid *on any basis* (e.g., flat sum, bonus payment, *straight-time hourly amount*, time and one-half or *any other basis*), and may include paid time off.

29 C.F.R. § 541.604(a) (emphasis added).    The Eleventh Circuit has confirmed that under the DOL's salary-basis test, an employer is authorized by law to pay an exempt employee additional compensation without invalidating the exemption "as long as there is a non-deductible minimum" salary.  *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004).

In addition to paying Plaintiffs their weekly salaries, which constituted payment for all hours worked for purposes of the FLSA, Callaway chose to pay Plaintiffs additional bonus compensation.  Callaway elected to pay Plaintiffs this "additional compensation" for hours worked over 40 in a workweek, and under certain circumstances even in short workweeks of fewer than the five regularly-

scheduled workdays (Monday – Friday).   (*See* Erickson Decl. ¶ 21.)   Thus, Callaway paid "additional compensation based on hours worked beyond the normal workweek," as expressly authorized by the DOL's salary-basis test.   29 C.F.R. § 541.604(a).   To derive the *rate* of the bonus, Callaway divided a Plaintiff's weekly salary (*e.g.*, $1600) by 40 hours, thus arriving at a "straight-time hourly amount" (*e.g.*, $40), as expressly authorized by the salary-basis test. (*Id.*)

Whenever an employer pays a salaried employee his or her weekly salary plus "additional compensation" calculated as 1/40 of the weekly salary ("straight-time hourly amount") for any hours over 40 ("hours worked for work beyond the normal workweek"), it is *mathematically* true that the weekly salary plus the "additional compensation" equals the straight-time rate times the total hours worked.   That fact will always be the mathematical result of calculating the "additional compensation" by multiplying the "straight-time hourly amount" by the "hours worked for work beyond the normal workweek," as expressly approved by the DOL's regulations.   An employer does not violate the DOL's salary-basis test by doing exactly what that salary-basis test expressly authorizes.

The DOL's salary basis test, at 29 C.F.R. § 541.604(a), forecloses Plaintiffs' contention that this "additional compensation" is somehow "overtime" pay. Section 541.604(a) permits but does not require an employer to pay "additional

compensation" for hours beyond the regular 40-hour workweek.  Plaintiffs cannot turn the "additional compensation" that is *authorized* by Section 541.604(a) for salaried exempt employees into "overtime" *required* by the FLSA for non-exempt employees, merely by labeling it as such.[11]

Finally, the DOL's salary-basis test does not depend on whether the "additional compensation" authorized by 29 C.F.R. § 541.604(a) is "discretionary."  The DOL's regulations, not Black's Law Dictionary, define the DOL's salary-basis test.  Those regulations do not state that "additional compensation" violates the salary-basis test if it is not "discretionary."  To the contrary, the DOL's list of possible forms of "additional compensation" include a percent commission on sales, a percentage of profits, or additional compensation based on hours worked for work beyond the normal workweek paid at a straight-time hourly rate, with *no* requirement that these be paid only on a discretionary basis.  29 C.F.R. § 541.604(a).  In addition, the DOL has confirmed that "additional compensation" authorized by Section 541.604(a) is "generally something that may be agreed upon between the employer and the employee" – not

---

[11] Moreover, Plaintiffs' theory is further derailed by the fact that Callaway paid the bonus to employees who worked fewer than 40 hours in a given week but more than an average of eight hours per regularly-scheduled day.  (*See* Erickson Decl. Ex. D p.2.)  Such payments could not possibly be "overtime" because, even if Plaintiffs were not exempt from the FLSA's overtime requirements, which they were, they still would not have been entitled to overtime during those weeks.

exclusively a bonus that is in the sole discretion of the employer to give or withhold.  DOL Opinion Letter, FLSA2006-24NA (attached hereto as App. A).[12]

**4.    DOL Opinion Letters Expressly Confirm that an Employer is Authorized to Make Deductions from "Additional Compensation" without Violating the Salary-Basis Test.**

As stated above, 29 C.F.R. § 541.604(a) expressly authorized an employer to calculate "additional compensation" in "any" way it chooses.  That regulation authorized Callaway to base its calculations of the "additional compensation" on the amount of time the employee worked over multiple weeks, not just a single week.  Moreover, while the regulations recognize two forms of compensation for exempt employees (predetermined weekly salary and "additional compensation"), they also state that only when an "employer . . . makes improper deductions from *salary*" may it lose the exemption.  29 C.F.R. § 541.603(a) (emphasis added).

Applying its own regulations, the DOL has issued two Opinion Lettersholding that employers are authorized to deduct from exempt employees' bonuses without violating the salary-basis test.  In a November 3, 2006, Opinion Letter from the DOL (FLSA2006-24NA) (App. A), the employer paid exempt

_____

[12] The DOL considers its Opinion Letters to be "rulings," 29 C.F.R. § 790.17(d). Given their provenance and legal effect, DOL Opinion Letters are entitled to great weight when they interpret the DOL's own regulations.  *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1232 n.7 (10th Cir. 2008); *see also Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002).

managers a salary and a bonus.  The employer deducted from the managers'
*bonuses* (but not from their salaries) for bad checks or other cash shortages.  The
DOL held there is no prohibition against deducting from exempt employees'
bonuses, and that doing so does not violate the salary-basis test or make the
employees non-exempt:

> Section 541.600(a) requires only that exempt employees be paid a
> guaranteed salary of at least $455 per week.  Additional compensation
> above this salary amount is generally something that may be agreed
> upon between the employer and the employee.  *The prohibition
> against improper deductions from the guaranteed salary under 29
> C.F.R. § 541.602(b) does not extend to such additional compensation
> provided to exempt employees.*  Therefore, it is our opinion that bad
> check and other cash shortage deductions from bonus payments paid
> to salaried exempt employees are permissible and do not affect the
> employees' exempt status under section 13(a)(1) of the FLSA so long
> as the bonus payments are bona fide and are not paid to facilitate
> otherwise prohibited deductions from the guaranteed salary.

Appendix A, p. 2 (emphasis added).

In a July 6, 2006, Opinion Letter from the DOL (FLSA2006-24) (App. B),
the employer paid exempt employees a salary plus commissions.  The employer
deducted from the employees' *commissions* (but not from the salary) for cash
shortages.  Again, the DOL held there is no prohibition against deducting from this
"additional compensation" of the exempt employees:

> *The prohibition against improper deductions from the guaranteed
> salary under 29 C.F.R. § 541.602(b) does not extend to any such
> additional compensation provided to exempt employees.*  Therefore, it

14

> is our opinion that cash shortage deductions may be made *from a salaried exempt employee's commission payments* without affecting the employee's exempt status under section 13(a)(1) of the FLSA so long as the commission payments are bona fide and are not paid to facilitate otherwise prohibited deductions from the guaranteed salary.

Appendix B, p. 2 (emphasis added).  Moreover, the Fifth Circuit recently has relied on these opinion letters to hold that deductions from bonus compensation are permissible under the salary-basis test.  *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed. Appx. 301 (5th Cir. 2008).

Callaway's bonus plan was consistent with these Opinion Letters and the Fifth Circuit's ruling.  In the 54 weeks that Plaintiffs identify for their first argument, there is *no* evidence that Callaway ever deducted from Plaintiffs' *salaries* for partial-day absences.  Thus, even if Plaintiffs' contention that Callaway imposed a "debt" on or "deducted" from Plaintiffs' "pay" is to be credited (rather than the undisputed fact that Callaway simply looked at multiple weeks to determine bonus payments), Plaintiffs still cannot show a violation of the salary-basis test because such a deduction or debt only affected the "additional compensation" component of their total pay – not the guaranteed weekly salary.

**5.    The Cases Cited by Plaintiffs in Support of Their Claim That Callaway's Bonus System Violated the Salary-Basis Test Are No Longer Good Law Because They Are Based on Obsolete DOL Regulations and Are Contrary to Current DOL Regulations.**

The cases Plaintiffs cited in support of their contention that Callaway's bonus system violates the salary-basis test, *Martin v. W.E. Monks & Co.*, No. 92-3729, 1993 U.S. App. LEXIS 20610 (6th Cir. Aug. 3, 1993) and *Klein v. Rush-Presbyterians-St. Luke's Med. Center*, 990 F. 2d 279 (7th Cir. 1993), are no longer good law, if they ever were in this circuit.  Those cases only purport to interpret the DOL's former salary-basis regulation, 29 C.F.R. § 541.118.  That regulation was removed from the Code of Federal Regulations on August 23, 2004.  The DOL's current salary-basis regulation, 29 C.F.R. § 541.604, expressly authorizes the bonus system Callaway used.  Accordingly, *Martin* and *Klein* are no longer good law and cannot overcome the DOL's subsequent regulations and Opinion Letters.

Prior to August 23, 2004, the DOL's salary-basis test was articulated in 29 C.F.R. § 541.118.  This provision allowed for additional compensation to be paid to salaried exempt employees without destroying their exemption.  Specifically, the provisions stated, "It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation.  In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment."  29 C.F.R. § 541.118(b).  This regulation, however, did not expressly allow for such "additional compensation" to be paid on an "hourly" basis.  Accordingly, some employees argued, and some courts held, that additional

compensation systems that provided salaried exempt employees with hourly compensation for hours over 40 in a given week "were inconsistent with a salaried status." *See Klein*, 990 F.2d at 284 (citing cases).

The DOL changed its regulations in 2004 to clarify that the salary-basis test *does* allow an employer to pay "additional compensation" on a straight-time hourly basis. As shown above, the current regulation provides:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, *if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis*. . . . Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, *straight-time hourly amount*, time and one-half or any other basis), and may include paid time off.

29 C.F.R. § 541.604(a) (emphasis added). As previously noted, Plaintiffs were paid predetermined weekly salaries of at least $1600 per week, far more than the minimum requirement of $455. Therefore, the DOL's regulation expressly permitted Callaway to pay compensation in addition to the weekly salary in any of several ways, including a straight-time hourly amount for hours over 40. That is precisely what Callaway did. Callaway calculated Plaintiffs' bonus compensation entirely separately from their predetermined weekly salaries – that is, a Plaintiff's weekly *salary* was never affected by whether or not the Plaintiff earned a *bonus*.

Further, as noted above, the DOL also removed any doubt that employers are able to deduct from exempt employees' additional compensation by issuing two Opinion Letters based upon the new regulation that explicitly authorize such deductions.  *See* July 6, 2006, Opinion Letter (FLSA2006-24) (App. B), p.2; Nov. 3, 2006, Opinion Letter (FLSA2006-24NA) (App. A), p.2.

The two cases Plaintiffs rely upon, which are from 1993, did not interpret the current "additional compensation" regulation, and did not have the benefit of the two DOL Opinion Letters emphasizing that deductions from additional compensation is expressly permitted under that regulation.  Plaintiffs' case law is thus inapplicable and should be disregarded.

## C.   Plaintiffs' Argument that Callaway Failed to Pay Plaintiffs on Salary Basis "in Practice" Is not Supported by Undisputed Evidence and Is Invalid as a Matter of Law.

Plaintiffs contend that Callaway violated the salary-basis test in practice by allegedly deducting from their predetermined salary during certain weeks in which they worked less than 40 hours.  In support of this argument, Plaintiffs identify 27[13] weeks (involving 20 of 120 Plaintiffs) out of the 7,871 weeks of data provided to them.  However, even these few instances fail to lend any actual support for

_____

[13] *See supra* n.6.

18

Plaintiffs' claim when examined in the context of the undisputed facts and applicable law.

1.     **With Regard to 12 of the 27 Weeks Plaintiffs Identified, the DOL's Salary-Basis Test Authorized Callaway to Make Full-Day Deductions for Full-Day Absences on Regularly-Scheduled Workdays.**

The DOL's "salary basis" regulations authorize employers to make deductions from the "predetermined amount" of salary under certain situations without violating the "salary basis" test.  Specifically, 29 C.F.R. § 541.602(b)(1) provides: "Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability."

Accordingly, if a Plaintiff was absent for an entire day during a regularly scheduled workday (Monday – Friday) for personal reasons (*i.e.*, not attributed to sickness or disability) and did not use PTO time, his predetermined salary would be reduced by 1/5 for each full day missed.  (Def. Partial Day SOF ¶¶ 20-22.)

Defendants' Chart Detailing Deductions for Missing Full Regularly Scheduled Workday, attached as Ex. G to Deborah Erickson's Declaration, conclusively demonstrates that 12 of the 28 payments questioned by Plaintiffs were properly calculated this way.  Callaway properly deducted 1/5 of a Plaintiff's weekly salary when he missed a full regularly-scheduled workday for personal

reasons, just as it was allowed to do under § 541.602(b)(1). Callaway never deducted from a Plaintiff's salary if she did not perform any work on a non-regularly-scheduled day, that is, Saturday or Sunday. (Erickson Decl. ¶ 24.) Accordingly, during those 12 workweeks identified by Plaintiffs, Callaway complied with the salary-basis test, and those weeks are not evidence of any alleged FLSA violation.

2.    **As to 13 of the 27 Weeks Plaintiffs Identified, Defendants Have Remedied Any Alleged Improper Deductions as Authorized under the DOL's Regulations, and Those Weeks Cannot Now Support any Claim.**

As to the remaining 13 instances of alleged improper deductions identified by Plaintiffs (which involved only 10 of the 120 Plaintiffs), it is not evident from the face of the documents how the compensation payment was calculated. (Def. Partial Day SOF ¶ 34.) In view of the small monetary amounts in question (*e.g.*, $40), Callaway elected not to try to reconstruct the specific circumstances of each questioned payment years later. (*Id.*) It was far more cost efficient for Callaway to pay the difference between the amounts paid in the weeks in question and the pro-rata salary amounts for the regularly-scheduled workdays apparently worked. (*Id.*)

The DOL's "salary basis" regulations establish a "window of correction" by which an employer can insulate itself against losing the exemption based on improper deductions that are either "isolated" or "inadvertent":

(c) Improper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions. . . .

(e) This section shall not be construed in an unduly technical manner so as to defeat the exemption.

29 C.F.R. § 541.603(c) & (e).

The regulations also provide a "safe harbor" that allows an employer to avoid liability even in cases where the improper deductions were not isolated or inadvertent. *See* 69 C.F.R. § 22,182 (stating that the safe harbor provision applies to preserve the exemption "regardless of the reason for the improper deduction"). Specifically, the safe harbor provision states:

(d) If an employer has a clearly communicated policy that prohibits the improper pay deductions specified in Sec. 541.602(a) and includes a complaint mechanism, reimburses employees for any improper deductions and makes a good faith commitment to comply in the future, such employer will not lose the exemption for any employees unless the employer willfully violates the policy by continuing to make improper deductions after receiving employee complaints. . . . The best evidence of a clearly communicated policy is a written policy that was distributed to employees prior to the improper pay deductions by, for example, providing a copy of the policy to employees at the time of hire, publishing the policy in an employee handbook or publishing the policy on the employer's Intranet.

29 C.F.R. § 541.603(d).

As shown above, Callaway assured Plaintiffs in the offer letters and PowerPoint that its policy prohibited improper deductions from salary. Since

21

Defendants have reimbursed Plaintiffs for any potential wrongful deduction, both the "safe harbor" and "window of correction" provisions apply and preclude Plaintiffs from basing any claim on those weeks. *See Dougherty v. Blize*, No. 07-674, 2008 U.S. Dist. LEXIS 48646, at *12 (D. Del. June 25, 2008) (holding that reimbursement of improper deduction made on eve of trial is effective); *Moore v. Hannon Food Serv.*, 317 F.3d 489, 498 (5th Cir. 2003) (same). Accordingly, none of the remaining 13 weeks Plaintiffs identified support their claims.

**3.    Two of the 27 Weeks Identified by Plaintiffs Concern Plaintiffs Who Settled their Claims and Withdrew From the Case.**

Plaintiffs identified two weeks in which they claim that two former Plaintiffs (Herak and Welborn) were only paid for their actual hours worked. However, Herak and Welborn accepted settlement payments for and signed releases of their FLSA claims, and have withdrawn from the case. (Supp. Erickson Decl. ¶ 9; Doc. Nos. 323, 328.)

**4.    Plaintiffs Must Show an "Actual Practice" of Making Improper Deductions to Prevail, and the "Significant Likelihood" Argument is Invalid as a Matter of Law.**

Plaintiffs also contend that under *Auer v. Robbins*, 519 U.S. 452 (1997), Callaway failed to pay Plaintiffs on a salary basis because there was a "significant likelihood" that Callaway would make an improper partial-day deduction or Callaway had an actual practice of making improper deductions. (Pls.' MSJ 17.)

Plaintiffs again misrepresent the law's current state and cite to obsolete authority. In promulgating the current salary-basis test, the DOL pointedly eliminated the premise of the Supreme Court's "significant likelihood" test in *Auer*:

> The final rule represents a departure from the Department's position in *Auer v. Robbins*, 519 U.S. 452 (1997). In *Auer*, the Supreme Court, deferring to arguments made in an amicus brief filed by the Department, found that the existing salary basis test operated to deny exempt status when "there is either an actual practice of making such deductions or an employment policy that creates a significant likelihood of such deductions." *Id.* at 461. In deferring to the Department, the Supreme Court stated:
>
> > Because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless "plainly erroneous or inconsistent with the regulation."
> > . . .
>
> *Id.* at 461-62 (citations omitted). Thus, in *Auer*, the Supreme Court relied on arguments made in the Department's amicus brief interpreting ambiguous regulations existing at the time of the decision. *The "significant likelihood" test is not found in the FLSA itself or anywhere in the existing Part 541 regulations. Moreover, nothing in Auer prohibits the Department from making changes to the salary basis regulations after appropriate notice and comment rulemaking. See Keys v. Barnhart*, 347 F.3d 990, 993 (7th Cir. 2003).

69 Fed. Register 22122, 22180 (emphasis added). Therefore, Plaintiffs must show that Callaway had an "actual practice of making [improper] deductions." As explained above and in Defendants' Partial Day Deduction MSJ (Docket No. 339-1 at 13-17), the undisputed facts show that Callaway did not have such a practice.

**D.    Alternatively, Plaintiffs are Not Entitled to Summary Judgment Because There is Evidence that Callaway Relied in Good Faith on the Department of Labor's Regulations in Devising and Implementing the Pay Policies.**

Pursuant to 29 U.S.C. § 259(a), an employer cannot be found liable for alleged overtime violations under the FLSA where it acted in good faith in conformity with and in reliance on a regulation or interpretation of the DOL.  Such a defense will absolve the employer of liability *even where* the DOL's interpretation is later "determined by judicial authority to be invalid or of no legal effect."  29 U.S.C. § 259(a).

As discussed above, Callaway's practices and "additional compensation" system were directly authorized by the DOL's regulations, and were consistent with the DOL's own interpretations of its regulations.  Further, the PowerPoint demonstrates that Callaway made a good-faith effort to act in conformity with the DOL's regulations and interpretations of them.  On page 3 of the PowerPoint, Callaway noted that it consulted the regulations to ensure that Plaintiffs were properly classified as exempt.  (Erickson Decl. Ex. C.)  Callaway also referred to the regulations when establishing deductions that could be made to Plaintiffs' salary.  *Compare* 29 C.F.R. § 541.602(b) (allowed deductions) *with* PowerPoint at 5 (same).

Thus, even if Plaintiff s could somehow establish that the Court should reject or overturn the DOL's own regulations and Opinion Letters set forth above, the Plaintiffs would not be entitled to summary judgment, because there is evidence from which a jury could find that Callaway relied in good faith upon the DOL's guidance in creating and administering its compensation policies.

## V.    CONCLUSION

For the above reasons, the Court should deny Plaintiffs' Motion for Partial Summary Judgment.

Respectfully submitted this 26th day of June, 2009.

s/ Suzanne M. Alford
C. Todd Van Dyke
Georgia Bar No. 723420
L. Dale Owens
Georgia Bar No. 557482
Suzanne M. Alford
Georgia Bar No. 005437
JACKSON LEWIS LLP
1155 Peachtree Street
Suite 1000
Atlanta, Georgia  30309-3630
Telephone:  (404) 525-8200
Facsimile:   (404) 535-1173
Email:  alfords@jacksonlewis.com

Attorneys for Defendants

## **CERTIFICATION**

Pursuant to LR 7.1(D), NDGa., I, Suzanne M. Alford, do hereby certify that this document has been prepared in Times New Roman 14 point font, approved by this Court in LR 5.1(C), NDGa.

s/ Suzanne M. Alford
Suzanne M. Alford
Georgia Bar No. 005437

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| HARRIET BELL,<br>Individually and on<br>behalf of all similarly<br>situated persons, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.<br>1:06-CV-1993-CC |
| vs. | ) | |
| | ) | |
| CALLAWAY PARTNERS, LLC,<br>and HURON CONSULTING<br>GROUP, INC. | ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Edward D. Buckley, Esq.
Daniel Klein, Esq.
John Beasley, Esq.
BUCKLEY & KLEIN, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, GA 30309-3521

s/  Suzanne M. Alford
Suzanne M. Alford
Georgia Bar No. 005437
Attorney for Defendants

JACKSON LEWIS LLP
1155 Peachtree Street
Suite 1000
Atlanta, Georgia  30309-3630
Telephone:  (404) 525-8200
Facsimile:   (404) 535-1173
Email:  alfords@jacksonlewis.com