## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HARRIET BELL, Individually and on
Behalf of All Similarly Situated
Persons,

     PLAINTIFF,

vs.

CALLAWAY PARTNERS, LLC ET AL.,

     DEFENDANTS.

CIVIL ACTION FILE NUMBER:
1:06-cv-01993-CC

### PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON BONUS SYSTEM CLAIMS AND IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT ON PARTIAL DAY DEDUCTIONS

### INTRODUCTION

Callaway has moved for summary judgment, contending all of its pay practices were proper, or at least are excused under the applicable Department of Labor regulations. Consistent with its practice of circumventing substantive rules with linguistic window dressing, Callaway placed its arguments into two separate summary judgment "motions," thereby doubling the page limits applicable to briefs under the local rules without the inconvenience of having to seek Court approval. In substance, however, these two motions are simply one motion for dismissal on summary

judgment.  As shown below, Callaway loses the exemption for all plaintiffs unless it prevails on the issues raised in each "motion."[1]

In the first of its two motions (entitled "Defendants' Motion for Summary Judgment on Plaintiffs' Bonus System Claims"—hereinafter, the "Bonus Motion"), Callaway defends the legality of its so-called "bonus" policy.  In the second motion (entitled "Defendants' Motion for Summary Judgment on Plaintiffs' Partial-Day Deduction Claims"—hereinafter the "Partial Day Motion"), Callaway defends the legality of the many instances revealed in discovery in which Callaway failed to follow even its official "bonus" policy, but instead immediately deducted for partial days from Plaintiffs' "salaries" for the same week in which the partial days occurred.  Callaway sub-divides these instances into two categories:  *first*, what it claims were merely deductions for full days missed (Partial Day Brief at 15-16), and, *second*, what Callaway concedes, at least for now, were improper partial day deductions (Partial Day Brief at 6-22).  Callaway contends that it was entitled under applicable regulations to deduct for full days missed (Partial Day Brief at 15-16).  As to the partial day deductions, Callaway makes no effort to defend their legality, but contends that it has

---

[1] Because Callaway should have filed a single motion and for the sake of clarity, we respond with a single brief, accompanied by a single statement of disputed facts.  The arguments in Callaway's two briefs are addressed in two separate sections of this brief.  To assure formal compliance with the local rules, we also submit separate responses to Callaway's two (largely identical) statements of undisputed facts.

escaped liability under the "window of correction" and "safe harbor" provisions of 29 C.F.R. § 541.603(c) & (d) (Partial Day Brief at 16-22).

Callaway never disputes that, under 29 C.F.R. § 541.603(a) and (b), Callaway loses the exemption for all employees in Plaintiffs' job classification if either (a) its "bonus" policy violated the salary basis test or (b) it made improper partial day deductions from "salary" that were not cured under the "window of correction" or "safe harbor" provisions of 29 C.F.R. § 541.603(c) or (d).

In fact, Callaway loses the exemption for both reasons. First, Callaway's policy of deducting for missed hours from subsequent overtime pay was in substance deducting from "salary." The cases have uniformly held such a practice to violate the salary basis test. The courts and the DOL have authorized employers to deduct for missed hours from true bonuses or fringe benefits—amounts typically paid to executive or professional employees—but the straight time hourly pay that Plaintiffs earned for working overtime hours was not a "bonus" in anything but name. Callaway's so-called "bonus" policy was a subterfuge for paying Plaintiffs by the hour.

Second, even if Callaway's "bonus" policy were legal, Callaway repeatedly ignored this policy and deducted for partial days during the same week in which they occurred (that is, made improper "partial day deductions"). Critically, Callaway's attempts to characterize a group of deductions as taken for "full day absences" is misplaced. The weeks that Callaway claims fit this category (Partial Day Brief at 15-

16) actually contained not only full-day absences during the work week (Monday through Friday), but also partial days worked on weekends (Saturday, Sunday, or both).   Callaway's violation lay in paying only for the actual number of hours worked on these weekend days.  Callaway called these weekend hours "bonus hours," which is normally the term Callaway used for overtime hours. The salary basis test allows an employer to pay by the hour for *overtime*, where the hourly pay *increases* the employee's pay *above* his or her regular salary (29 C.F.R. § 541.604(a)("Minimum guarantee plus extras").  In these weeks, however, the Plaintiffs had been absent (and were docked) for full days during the week; the additional hours happened to have been worked on weekend days, but they were not overtime hours; and the pay they received for those hours still left their compensation for the week short of their regular "salaries."  The salary basis test permits the employer to deduct for full days missed in a week, but not for hours missed in a day; it requires the employer to pay for a full day in any day on which the employee works any hours; failing to do so results in a forbidden "partial day deduction."  The regulations contain no exception to the prohibition on partial day deductions for weekend days, even if, as Callaway claims was the case here, the weekend days were outside the employees' "regular work week."

Moreover, even if this Court were to ignore the regulations and manufacture an exception for partial days outside a "regular work week," a fact issue would remain as

to whether Saturdays and Sundays were in fact outside of *Plaintiffs*' "regular work week."  Callaway's self-serving contention that it established Monday through Friday as Plaintiffs' "regular work week" is contradicted by both sworn testimony and Callaway's own documents, all of which suggest that Plaintiffs were actually expected to maintain flexible schedules and work weekends.

Because Callaway made more improper partial day deductions than it has acknowledged, it has not reimbursed all its improper partial day deductions. Consequently, Callaway may not invoke the "window of correction" or "safe harbor" provisions of 29 C.F.R. § 541.603(c) or (d), both of which require Callaway to have reimbursed *all* employees who have suffered improper deductions.  Callaway does not dispute (at least for summary judgment purposes) that, under 29 C.F.R. § 541.603(a) and (b), the effect of the improper deductions is that Callaway loses the exemption for all employees in the Plaintiffs' job classification, a population that by definition includes all of the Plaintiffs.

## MATERIAL FACTS

Callaway was initially formed, in part, to assist large accounting firms working on the HealthSouth financial restatement, by providing additional professional manpower for the project.[2]  Callaway began with only a few professionals but soon

---

[2] Bell Dec. at 4.  The originals of the Declarations of Harriet Bell, John Lee, James Cook, Derk Allison and Sandra Morman were filed in support of Plaintiff's Motion for

expanded to include hundreds of employees, most of whom were called consultants,
including Plaintiff and others similarly situated.[3]  A major component of Callaway's
services is staff augmentation for clients needing personnel for leg work associated
with large financial restatements.[4]

The employee consultants were generally required to work a minimum of 40
hours per week and were usually paid $40 for each hour worked.  Callaway told the
Consultants that it was paying them a "salary" of $1,600 per week.[5] The work week
was not defined; rather, consultants were told that they were to work whatever days or
hours necessary to get the jobs done, including weekends.[6]  Consultants were also
required to keep a detailed record of the actual number of hours they worked each
week.  Consultants regularly worked in excess of 40 hours per week and were paid
"straight time"—that is, the same $40 per hour—for hours worked beyond 40 per

---

Judicial Notice. Copies were also filed as attachments to Plaintiff's Motion for Partial
Summary Judgment.
[3] Bell Dec. at 4.
[4] Bell Dec. at 4.
[5] Bell Dec. at ¶ 8; Cook Dec. at ¶ 7; Allison Dec. at ¶ 6; Lee Dec. at ¶ 4; Morman Dec.
at ¶ 4.
[6] See Declarations of Alan Young, Susan Butcher, Robert Iliff, Diane Serra and
Anthony Hauck filed as Exhibits 1 – 5 to this brief.

week.[7]  Callaway required so many overtime hours that the average plaintiff's

workweek consisted of between 53 and 54 hours of work.[8]

When Consultants worked fewer than 40 hours in a week due to a partial work

day, Callaway reduced their pay by an amount equal to the missed hours.[9]  Callaway

did this in one of two ways.  First, Callaway had a written policy that required time

missed as a result of working partial days to be carried forward as a debt and deducted

as soon as possible from pay for overtime hours worked in a subsequent week.[10]

Second, notwithstanding the written policy, Callaway in practice often simply

deducted the missed hours from an employee's pay for the same week in which the

time was missed.[11]  This practice was revealed in Callaway's time and pay records.

In discovery, plaintiffs sought the time and pay records of all plaintiffs

(including opt-ins) for the three-year period from February 2004 through February

2007.  Incredibly, and although it advertises itself as an "accounting and finance

professional services firm," Callaway claimed that it could not produce this

---

[7] Bell Dec. at ¶ 8; Cook Dec. at ¶ 7; Allison Dec. at ¶ 6; Lee Dec. at ¶ 4; Morman Dec. at ¶ 4.
[8] Declaration of Pam Rymin (hereafter "Rymin Declaration" filed in support of Plaintiffs' Motion for Partial Summary Judgment), Ex. A, page 381.
[9] Bell Dec. at ¶ 9; Cook Dec. at ¶ 8; Allison Dec. at ¶ 7; Lee Dec. at ¶ 5; Morman Dec. at ¶ 5.
[10] Bell Dec. at ¶ 9; Cook Dec. at ¶ 8; Allison Dec. at ¶ 7; Lee Dec. at ¶ 5; Morman Dec. at ¶ 5.
[11] Rymin Dec. at ¶¶ 4, 6; See Supplemental Rymin Declaration (hereinafter "Supplemental Rymin Dec."), Ex. B pp. 5-7, attached hereto as Exhibit 6.

information in electronic format.[12]  Callaway produced only paper copies of each

plaintiff's weekly time sheet, as well as the paper copies of corresponding pay records

for the same weeks.

Callaway's records reveal that on 88 occasions over a three-year period, a

plaintiff worked a week that was shorter than 40 hours as result of a partial work day (a

"short week").[13]  The missed hours generated a debt that Callaway recovered in one of

two ways:  in 54 of these weeks, Callaway applied its official policy of "paying" the

employee for 40 hours, but simultaneously imposing a debt for the missed hours and

extracting repayment from the first available overtime hours—more often than not, the

very next week.[14]  In 27 of the 88 short weeks, Callaway made the deduction during

the week in question; that is, it reduced an employee's pay for that same week to cover

only the actual number of hours worked.[15]

---

[12] *See* Callaway's listing at http://company.monster.com/calla/.

[13] The short weeks are shown in Exhibit B to the Supplemental Rymin Declaration.

[14] These weeks comprise the first 52 rows on Exhibit B to the Supplemental Rymin
Declaration.  Supplemental Rymin Dec. at Exhibit B, pages 1-5.

[15] These weeks comprise the next 27 rows on Exhibit B to the Supplemental Rymin
Declaration.  Supplemental Rymin Dec. at Exhibit B, pages 5-7.  In a few instances (a
total of 7), Callaway apparently neglected to make the deduction at all.  In most cases,
however, this involved crediting the employee with just an additional 15 minutes' pay.
Supplemental Rymin Dec. at Exhibit B, pages 7-8.

## ARGUMENT AND AUTHORITY

### A.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

Under Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).  Defendants are not entitled to judgment as a matter of law because Callaway clearly did not pay the Plaintiffs on a salary basis and its defenses are not supported by law or fact.

Contending that Plaintiffs were exempt from the overtime requirements of the Fair Labor Standards Act, Callaway did not pay "time and a half" for overtime hours[16] worked each week.  Plaintiff brought this action on behalf of herself and others similarly situated, contending that Callaway consultants were not exempt under the FLSA and were entitled to time-and-one-half overtime pay.  The central issue in this case is whether Callaway's pay practices satisfied the FLSA's "salary basis test," a necessary element for FLSA exemption.

Relying on nomenclature, Callaway created the appearance that the Plaintiffs were "salaried," while actually paying them on a straight-time, hourly basis.  For each Consultant, Callaway established what it terms a weekly "salary" equal to 40 times his

---

[16] The hourly rate for most Plaintiffs was $40, but was sometimes higher or lower, depending on the individual.

or her hourly pay rate.  If the employee worked more than 40 hours, it would pay for each hour over 40 at the same rate.  Callaway called this straight-time hourly overtime pay a "bonus."[17]  If the employee worked *less* than 40 hours in a given week, Callaway would reclaim the hours missed, but attempted to do so in a manner that preserved the appearance that there was no deduction from "salary":  Callaway established a policy under which it would pay the employee's full "salary" during the week in which the hours were missed, but then wait until an employee worked more than 40 hours in a week and deduct the missed hours from the overtime hours for that week.  Callaway never had to wait long to reclaim the hours: the average Plaintiff's work week was 53.5 hours (Rymin Declaration, Ex A at 381).   In this manner, Callaway never ended up paying for more hours than the consultants actually worked; in substance, Callaway paid by the hour.

---

[17] Callaway adopted this terminology—calling overtime pay a "bonus"—for the purpose of selling the fiction that it could recover missed hours in partial work days without violating the salary basis test.  As discussed below, the salary basis test has never been interpreted to allow the employer to deduct for missed hours by requiring the employee to work unpaid overtime, because that is functionally no different from reducing salary itself.  Employers may, on the other hand, deduct from fringe benefits, including discretionary bonuses and other amounts typically paid to salaried employees.  A bonus is an amount paid "*in addition to or in excess of the compensation that would ordinarily be given*."  Black's Law Dictionary, 8th ed (2004).  Overtime pay was no "bonus;" it was the regular hourly pay that Callaway consultants earned for working overtime hours.

Callaway's alleged policy failed to satisfy the salary basis test as uniformly applied in the Department of Labor regulations and the cases.  Moreover, Callaway's actual pay *practice* did not even comport with its alleged policy.  Now that Callaway has disgorged a meaningful sample of its time and pay records, it is clear that Callaway repeatedly found ways to deduct immediately, rather than in subsequent weeks, for missed hours.  When employees worked less than 40 hours in a week, Callaway would follow its alleged policy, reclaiming lost hours from subsequent overtime hours, about two-thirds of the time.  Otherwise, Callaway simply paid for the actual number of hours worked that week.[18]

As a consequence, the one consistent, overwhelming and undeniable fact characterizing Callaway's pay practice is that employees were paid for the number of hours they actually worked, and not a cent more.[19]  If an employee was late one day and thus worked 39 instead of 40 hours in a week, Callaway's policies worked to ensure that the employee would not end up with his 40-hour "salary."  Callaway either paid for 39 hours that week, or else it paid for 40 but imposed a debt for the missed hour, and promptly recouped that debt by extracting an unpaid hour's overtime work in a

---

[18] Thus, if an employee worked only 35 hours in a week, the employee's paycheck *for that week* contained only 35 hours of pay.

[19] In a few instances (a total of 7), Callaway apparently neglected to make the deduction at all.  In most cases, however, this involved crediting the employee with just an additional 15 minutes' pay.  Supplemental Rymin Dec. Ex. B, pages 7-8.

subsequent pay period.  This charade "affronts the concept of a salaried executive."

*Thomas v. County of Fairfax,* 758 F. Supp. 353, 366 (E.D.Va.1991)(police lieutenants

docked for hour of work lost due to daylight savings time implementation).

### B.    PLAINTIFFS' EVIDENCE PROVES DEFENDANTS' LIABILITY FOR OVERTIME PAY IN SPITE OF DEFENDANTS' DEFENSES

1.    <u>Analytical Framework:  The Governing Statute and Regulations</u>.

The basic rules for application of the salary basis test are contained in two

Department of Labor regulations, 29 C.F.R. §§ 541.602 and 541.603.  Section 541.602

lays out the salary basis test.  It requires that the employee receive, "each pay period

on a weekly, or less frequent basis, a predetermined amount constituting all or part of

the employee's compensation."  The employee must receive the full salary "for any

week in which the employee performs any work without regard to the number of days

or hours worked." 29 C.F.R. §§ 541.602(a).

Section 541.602(b) sets out the permitted exceptions to this general rule.  These

include an exception for full day absences.  The employer may not, however, make

deductions from salary for absences of less than a day.  This rule applies even if the

employee misses more than a full day:

> (1) Deductions from pay may be made when an exempt employee is absent from
> work for one or more full days for personal reasons, other than sickness or
> disability. Thus, if an employee is absent for two full days to handle personal
> affairs, the employee's salaried status will not be affected if deductions are made
> from the salary for two full-day absences. However, if an exempt employee is

absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.

29 C.F.R. §§ 541.602(b)(1). *Friedman v. South Florida Psychiatric Associates, Inc.*, 139 Fed. Appx. 183, 185 (11th 2005)(citing *Avery v. City of Talladega, Ala.,* 24 F.3d 1337, 1340 (11th Cir.1994)).  The FLSA is a remedial statute and, as such, exemptions from coverage are to be narrowly construed against employers.  *Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 295 (1959); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

Section 541.603 establishes the *effect* of improper deductions from salary—that is, deductions not allowed by section 541.602.   The basic rule is that an actual practice of making improper deductions causes the employer to lose the exemption not only for the affected employees, but for all other employees in the same job classification:

> (a)     An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis.  An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis. . . .
>
> (b)     If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions.

29 U.S.C. § 541.603(a), (b).  For certain improper deductions, an employer can regain the exemption if it complies with the "window of correction" rule in section 541.603(c) or the "safe harbor" provision in section 541.603(d).  In order to use either

of these, however, the employer must, among other things, reimburse all of "any employees" for "any improper deductions." 29 U.S.C. § 541.603(c), (d).

Neither of Callaway's summary judgment briefs mentions 29 U.S.C. § 541.603(a) or (b).  At least for purposes of summary judgment, Callaway thus concedes that it loses the exemption for all plaintiffs if its "bonus" policy violated the salary basis test or if the partial-day deductions it made from salary were improper and were not all cured under sections 541.603(c) or (d).   In the following two sections of this brief, we address the legality of the deductions Callaway made from Plaintiffs' so-called "salaries"; We address, *first*, those made pursuant to Callaway's so called "bonus" policy and, *second*, the partial day deductions.   These discussions correspond to, and refute, the respective arguments in Callaway's two "motions" for summary judgment.

    2.    <u>Callaway's Deductions from Salary pursuant to Its So-Called "Bonus"</u>
                <u>Policy Violated the Salary Basis Test</u>.

The record shows that when Callaway's consultants had partial day absences in a week, Callaway never really paid them their full salary.  At best, Callaway *loaned* it to them for a week or so.  When Callaway issued a paycheck for the full "salary" amount, Callaway simultaneously imposed a debt equal to the hours missed.  The debt was repaid by working the same number of overtime hours without pay.  As a result,

Callaway avoided ever having to pay its consultants for more hours than they worked; in other words, it paid by the hour.

Like anything conveyed subject to an encumbrance, the only meaningful value is the net value that remains after subtracting the debt.  The rest is merely a loan.  The cases consistently acknowledge this logic, holding that the employer has not paid the employee's full salary merely by writing a check, if it then recoups the missed time by requiring the employee to work an equal amount of unpaid overtime.

This scenario has not been presented in the Eleventh Circuit, but it has arisen in two other circuits, the Seventh and Sixth.  In *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 990 F.2d 279 (7th Cir. 1993), the court granted summary judgment where the employer recouped partial workday absences with deductions from pay for overtime hours.  In *Klein*, the employer had a "comp time" policy under which exempt employees could "bank" overtime hours they worked and use the banked hours for additional time off.  If an employee worked less than eight hours in a shift, however, her bank of accumulated overtime hours was charged for the shortfall.  If she had not banked enough overtime hours, shortfall generated a debt that the employer termed "negative comp time," and she was required to repay the debt by working more overtime hours without pay.

In affirming summary judgment for the employee, the Seventh Circuit recognized that docking overtime pay was "similar to docking an employee's pay because of the number of hours worked."  The court reasoned:

> When Klein was forced to go into negative comp time, she may not have been actually paid less, but she was going into a form of debt since any later accumulated comp time had to pay off that debt.

990 F.2d at 284.   The employer's policy in *Klein* was virtually identical to Callaway's policy—an hour-for-hour debt was created by a partial work day, and the debt was repaid from overtime hours that would otherwise have been paid.   As the court recognized there, imposing such a debt and immediately recovering it is no different than simply deducting from salary.

Similarly, in *Martin v. W.E. Monks & Co.*, 1 F.3d 1241, 1993 WL 300332 (6th Cir. 1993), the DOL challenged the employer's claim that it paid on a "salary basis" where the employer required the employees to repay partial day deductions with overtime hours in the following week.  The Sixth circuit agreed that this arrangement violated the salary basis test:

> In fact, in an apparent attempt to compensate employees with a "regular" amount, defendant Edwards instructed employees to declare that they worked forty hours in a week on their time sheets, regardless of their actual hours worked, to receive their allotted amount in pay. However, they were told to "make up" the following week any hours that they had actually worked below forty the previous week, thereby working more than forty hours during that second week.

*Id.* at \*3.  As in *Martin*, Callaway's claim that it paid a "regular amount" of salary, when in fact that "salary" was accompanied by a debt equal to the missed hours is a ruse.  *Accord*, *Acs v. The Detroit Edison Co*., 2002 WL 33012183, \*5 at n. 6 (E.D. Mich. 2002)("[a]n employer may not use additional compensation to make up a short fall in an employee's regular salary.")

Over the years the Department of Labor has issued opinions and the courts have recognized an employer's right to make certain deductions from what amounts that are characteristic of benefits paid to exempt employees, such as leave banks, earned vacation, discretionary bonuses, or other employment perks.  The DOL and a number of courts have held that deductions from such benefits are allowed without a loss of exemption (See January 7, 2005 Opinion Letter from DOL (FLSA2005-7)). Defendants have cited to authority that permits the employer to deduct missed hours from fringe benefits, trying to fit that square peg into the round hole of unpaid overtime.  The cases explain that the employer may deduct from benefits precisely because they are extras, and modifying their amount is not inconsistent with paying an executive or other exempt employee.  *Castro v. Metropolitan Transit Authority*, 2006 WL 1418585, \*4 (S.D.N.Y. 2006)(employer permitted to dock "an employee's leave balance or other fringe benefits" without losing exempt status).  Like other fringe benefits, a bonus is an amount paid "*in addition to or in excess of the compensation that would ordinarily be given*."  Black's Law Dictionary, 8th ed (2004).   Overtime

pay is no "bonus;" it is what an hourly employee earns for actually working extra hours.  It is not a perk or other fringe benefit, and it has no discretionary component.

Defendants have cited two cases that they contend entitle them to deduct from an exempt employee's "bonuses."  The first case is *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed. Appx. 301 (5th Cir. 2008).  This case is distinguishable because of the "bonus" that was subject to deduction.  In short, the bonus in *Lovelady* was a true bonus.  It was based on something other than hours worked and, therefore, was not paid simply to facilitate prohibited deductions from salary.  *See*  November 3, 2006 Opinion Letter from DOL (FLSA2006-24NA)(deductions from bonuses allowed only to the extent they are "bona fide and are not paid to facilitate otherwise prohibited deductions from the guaranteed salary").

In *Lovelady* the Fifth Circuit did not define the bonus policy at issue and there is no district court opinion that does so; however, the parties briefs to the Court of Appeals make clear that the bonuses paid were far different from the ones at issue here.  In *Lovelady*, the bonus program provided ostensibly exempt employees with extra pay for attainment of certain levels of gross profit.  *See Lovelady v. Allsup's Convenience Stores, Inc.*, Brief of Appellant, 2008 WL 5972532, pp. 10-11 (5th Cir. 2008) attached as Exhibit 7 to this brief.  The bonus received was apparently subject to deduction based upon store performance in the categories of overtime, shortage, spoilage and sales.  *Id.*  In contrast, Defendants' bonus policy is tied directly to the

hours that consultants worked.  Working more than 40 hours gave them a personal minute for minute bonus.  Working less than forty hours took it away.  This is not a true bonus; rather, it was just another method of paying straight time – a way to facilitate otherwise prohibited deductions from the guaranteed salary.

The second case upon which Defendants rely is subject to a similar defect.  In *Phillips v. Capital Toyota, Inc.*, No. 1:05-cv-215, 2006 WL 1408688 (E.D. Tenn. May 22, 2006), the plaintiff was a commissioned salesperson subject to a bonus policy allowing for additional compensation based upon departmental profit.  *Id*. at *2.  In addition, Plaintiff received a trip to Hawaii, apparently also based upon performance. *Id*.  After tracking the plaintiff's hours, the defendant determined that he did not qualify for the bonus or the trip.  *Id*.  The distinction is that the bonus and trip were not so intertwined with the plaintiff's salary that they could be considered part of his compensation.  As a result, deductions from or elimination of the bonuses would not be a violation of the salary basis test.

Quite a different scenario is at issue in the present case.  The Defendants' bonus plan is so tied to hours worked that its elimination leaves consultants in debt for any partial days worked.  As such, the bonuses are so tied to overall compensation that they serve only to facilitate otherwise prohibited deductions from the guaranteed salary. This is a clear violation of the salary basis test and nothing in *Lovelady* or *Phillips* demands a different conclusion.

The Department of Labor has cautioned against the risk that an employer be permitted to pay on an hourly using "an illusion" that it is paying salary.  When enacting 29 C.F.R. § 541.604(a), which allows the employer to pay overtime compensation at any rate so long as it is reasonably related to the regular weekly salary, the DOL rejected suggestions from employers and their attorneys that the provision allow the employer to pay *any* amount above $455 per week.  The DOL refused, because such a system would "effectively [allow] the employer to dock the employees for partial day absences. Such a pay system would be inconsistent with the salary basis concept and the salary guarantee would be nothing more than an illusion." 69 FR 22122-01 at 22183-44.

Similarly, Callaway's "bonus" system created only an "illusion" of a guaranteed salary.  Neither the DOL nor the cases have ever approved the charade that Callaway has played here.  Where missed hours generate a monetary debt that the employer recoups with an equal number of hours of overtime work without pay, no court has been so naïve as to believe that the employee's salary has not been reduced.

3.   Callaway's Remaining Partial Day Deductions Violated the Salary Basis Test.

Notwithstanding its formal policy, Callaway frequently deducted for partial day absences from the Plaintiff's actual "salary" for the week in question.  Plaintiffs identified the instances when these occurred after analysis of Callaway's time and pay

records.  In its summary judgment motion, Callaway divides these into three categories:  *first*, three deductions which were for Plaintiff Barbara Sykes, who was paid hourly at the time; *second*, twelve deductions which Callaway claims were merely "full day" deductions and thus allowed; and, *third*, the remaining partial day deductions, which Callaway admits were improper but contends were cured under the "window of correction" rule in 29 CFR § 541.603(c) or the "safe harbor" provision in § 541.603(d).  Partial Day Brief at 14-15, 15-16, and 16-22.

Plaintiffs concede for purposes of this motion that the three deductions for Plaintiff Sykes were proper, and they have not been included in the facts recited in this brief.  Plaintiffs further concede that, if all of deductions that Callaway claims to have been proper full-day deductions had been proper, Callaway could excuse the remaining deductions at least under the "window of correction" rule in 29 CFR § 541.603(c).  In fact, however, 11 of those 12 deductions were also improper; they have not been (and could not subsequently be) excused under either the "window of correction" or "safe harbor" provisions, both of which, among other conditions, require the employer to have remedied all improper deductions.  Those provisions are thus unavailable to protect Callaway against the loss of exemption, under 29 CFR § 541.603(b), for all Plaintiffs.

Of the 12 weeks that Callaway claims involved proper full-day deductions, Partial Day Brief at 15-16, 11 also contained partial days worked on Saturdays,

Sundays, or both, for which Callaway paid by the hour.  The weeks are referenced in exhibits submitted by both sides.  In Exhibit G to Callaway's Ericksen Declaration, Callaway lists the weeks in question and describes its methodology of calculating pay. In each instance, Callaway has (a) subtracted for full days missed during the work week *and* (b) treated some hours worked as "bonus hours," as if these were overtime. Conveniently, Callaway's materials do not reveal when the hours were worked. Exhibit B to the Amended Rymin Declaration supplies this additional information, showing that, during the weeks in question, the Plaintiffs worked partial days on Saturdays and Sundays.  The weeks in question have been highlighted in Exhibit B. This makes it clear that Callaway was paying hourly for partial weekend days, and calling the hours worked on partial weekend days "bonus hours," as if they were overtime.  This would have been proper if, but only if, the hours had actually been extra hours, paid *in addition* to the 40-hour salary for hours above 40 worked that week:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. Thus, for example, . . . the exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis <u>also receives additional compensation based on hours worked for work beyond the normal workweek</u>.

29 C.F.R. § 541.604(a).   The expression "hours worked for work beyond the normal workweek" simply refers to "additional pay for overtime work."  *Castro v.*

*Metropolitan Transportation Authority*, 2006 WL 1418585 at *5 n.12.  See also 69 FR 22122-01 at 22183 (DOL commentary that § 541.604(a) allows compensation for "for *extra* hours worked")(emphasis added).  It does not, as Callaway would like, create a new exception to the salary basis requirements, allowing partial day deductions for weekend work.

Allowing an employer to pay hourly on weekends merely by claiming that these were not part of its regular work week would destroyed the structure of 29 C.F.R. § 541.604(b) which prescribes in detail the exceptions to the minimum weekly salary requirement, including when the employer may make partial day deductions.  Under section 541.604(b), the employer may only deduct for full days missed, not hours missed in a day, even if the employee has already missed one or more full days that week:

> Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability. . . . *[I]f an exempt employee is absent for one and a half days for personal reasons, the employer can deduct only for the one full-day absence.*

29 C.F.R. §§ 541.602(b)(1) (emphasis added).  Callaway seems to believe that it can treat weekend hours as overtime if it identifies five "regular" work days and somehow *accounts* for them, either by paying for them or deducting for them if they are missed.  This convoluted rule can be found exclusively in Callaway's imagination; it exists nowhere in the governing regulations or elsewhere.

Even if this Court were to ignore the regulations and manufacture an exception for partial days outside a "regular work week," a fact issue would remain as to whether *Plaintiffs*' actually had a "regular work week" which consisted of Monday through Friday.  Callaway's convenient revelation that it established Monday through Friday as Plaintiffs' "regular work week" is contradicted by both sworn testimony and Callaway's own documents, all of which suggest that Plaintiffs were actually expected to maintain flexible schedules and work weekends.  None of the documents Callaway submits on summary judgment contains the slightest reference to Mondays through Fridays, or any other days, as a "regular work week."  The expression appears in the record of this case for the first time in the Erikson Declaration.  Callaway's handbook, in fact, contains a section entitled "Assignment Schedule" that not only fails to reference a Monday-Friday "regular" workweek but indeed promises to "keep in mind the flexibility you need."  Erickson Declaration, Ex B, at 13.  Moreover, Plaintiffs have submitted numerous declarations stating that no such "regular work week" policy was ever revealed to them, and that they were commonly expected to work six or seven days per week and otherwise maintain flexible schedules in order to put in the large number of hours Callaway demanded.  *See* Butcher Declaration ¶¶ 3-5; Hauck Declaration ¶¶ 3-5; Iliff Declaration ¶¶ 3-4; Serra Declaration ¶¶ 3-5; Young Declaration ¶¶ 3-4.  Thus, even if the law permitted Callaway to pay for partial weekend days by showing its "regular work week" excluded Saturdays and Sundays

there would be a disputed fact issue as to whether this was the case for Plaintiffs, thus precluding summary judgment.

Because Callaway's deductions for partial weekend days violated the salary basis test, those must be added to the deductions that Callaway concedes were improper.  Callaway has not (and could not) remedy them under the "window of correction" or "safe harbor" rules.  Callaway makes no argument that it can win summary judgment without remedying all improper deductions under the "window of correction" or "safe harbor" rules.  Accordingly, Callaway is not entitled to summary judgment on Plaintiffs' partial day deduction claims.

CONCLUSION

Plaintiffs were paid by the hour.  Callaway's practice of deducting missed hours either immediately or by requiring unpaid overtime hours in a subsequent pay period exposes its "bonus" policy for what it is—a sham designed to circumvent the FLSA.  Callaway also has made a practice of improper partial day deductions.  Callaway's summary judgment motions should be denied.  Plaintiffs are entitled to partial summary judgment on the issue of liability for overtime pay.

Respectfully submitted,


s/ Daniel M. Klein
Georgia Bar No. 425037
dmklein@buckleyklein.com
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleyklein.com
John F. Beasley
Georgia Bar No. 045010
jfbeasley@buckleyklein.com

BUCKLEY & KLEIN, LLP
Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 781-1100
Facsimile:   (404) 781-1101
Attorneys for Plaintiffs

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing has been prepared in the Times New

Roman 14 font, as approved by the Court in LR 5.1B.

s/ Daniel M. Klein
Georgia Bar No. 425037
dmklein@buckleyklein.com

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

HARRIET BELL, Individually and on
Behalf of All Similarly Situated
Persons,

     PLAINTIFF,

VS.

CALLAWAY PARTNERS, LLC ET AL.,

     DEFENDANTS.

CIVIL ACTION FILE NUMBER:
1:06-cv-01993-CC

### CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2009, I electronically filed Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment on Bonus System Claims and In Opposition to Motion for Summary Judgment on Partial Day Deductions with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Suzanne Alford
Lawrence Dale Owens
Christopher Todd Van Dyke

BUCKLEY & KLEIN, LLP


s/ Daniel M. Klein
Georgia Bar No. 425037
dmklein@buckleyklein.com