**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| HARRIET BELL, individually and on behalf of all similarly situated persons, ) ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 1:06-CV-1993-CC |
| vs. ) ) | |
| CALLAWAY PARTNERS, LLC and HURON CONSULTING GROUP INC., ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. ) _____ ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' PARTIAL-DAY DEDUCTION CLAIMS**

**I.   INTRODUCTION**

Plaintiffs concede that the only issue before this Court is whether Callaway paid them on a salary basis for their work on the HealthSouth project. No issues of material fact are in dispute. Plaintiffs do not dispute that they were paid the dollars Defendants stated they were paid. Plaintiffs also do not dispute the method of calculation Defendants stated was used to determine those dollar amounts paid. Thus, the Court need only determine, as a matter of law, whether at least part of the dollars that Callaway paid Plaintiffs constituted "salary" within the meaning of the

DOL's salary-basis test.

Plaintiffs do not dispute that the salary-basis test is met if the employer pays the employee under the following conditions:

1. The employer must tender payments to the employee on a regular basis. 29 C.F.R. § 541.602.
2. The employer must pay the employee at least a predetermined amount of not less than $455 per week. 29 C.F.R. § 541.602(a). The predetermined amount of compensation paid to the employee can represent some or all of the total pay given in a particular week. 29 C.F.R. § 541.604(a).
3. The predetermined amount cannot be reduced based on variations in the quality of the work done. 29 C.F.R. § 541.602(a).
4. The predetermined amount cannot be reduced based on variations in the quantity of the work done, subject to certain allowed deductions under the regulations. 29 C.F.R. §§ 541.602(a) & (b).

Plaintiffs do not deny that Callaway paid them on a regular basis, and that the amount Callaway paid them was much higher than $455 per week. *See* Pl. Response to Def. Statement of Undisputed Material Facts Submitted in Support of Def. Motion for Summary Judgment on Partial Day Deductions (Doc. No. 354) ("Pl. Resp. to Def. SUMF on Partial Day Claims"), ¶ 14. Plaintiffs concede the salary-basis test authorizes an employer to pay an employee *more* than the predetermined amount. *See* Pl. Brief in Opposition (Doc. No. 351) ("Pl. Response"), at 22. Plaintiffs do not claim that Callaway ever reduced their salary based on *quality*. *See* Pl. Resp. to Def. SUMF on Partial Day Claims, ¶ 12.

Plaintiffs' sole basis for claiming that Defendants' pay practices did not

satisfy the salary-basis test is that Plaintiffs' "pay" was allegedly subject to reduction based on "quantity" worked (*i.e.*, number of hours). For purposes of this motion, Plaintiffs initially claimed that there were 30 instances (out of the 7,871 weeks of payments) in which Callaway made an improper "partial-day deduction" from *one* person's *salary* in *one* week. They now concede that Callaway either lawfully paid the individual Plaintiff in question, or remedied any alleged improper deduction, in *all but 11 instances*. *See* Pl. Response, at 20-21. The undisputed evidence and the law show that in those remaining 11 instances, the salary also was properly calculated under the DOL's salary-basis test.

## II.   ARGUMENT

### A.   Callaway Lawfully Deducted One-Fifth of Plaintiffs' Weekly Salary for Each Full Day Missed During the Normal or Regular Workweek.

In its previous brief, Callaway explained that 12 of the instances identified by Plaintiffs were, in fact, proper under the DOL's salary-basis test because Callaway took full-day deductions for days missed due to personal reasons during the normal workweek. Defendants' Memorandum In Support Of Their Motion For Summary Judgment On Plaintiffs' Partial-Day Deduction Claims ("Def. Memo. on Partial-Day Deduction Claims") (Doc. No. 339-2), at 15-16. Such deductions are explicitly allowed under 29 C.F.R. § 541.602(b)(1), which provides: "Deductions from pay may be made when an exempt employee is absent from work for one or

more full days for personal reasons, other than sickness or disability."

Plaintiffs do not dispute that in each of those 12 instances, the individual was absent from one or more full days, from Monday through Friday, within the meaning of that regulation:

- Alfieri (11/27/05):  Did not work on Tuesday or Wednesday, and was paid three-fifths of his weekly salary.
- Anderson-Cox (4/8/05):  Did not work on Monday, Tuesday or Wednesday, and was paid two-fifths of her weekly salary.
- Cook (1/22/06):  Did not work on Wednesday, Thursday or Friday, and was paid two-fifths of his weekly salary.
- Goodwin (11/28/04):  Did not work on any day during normal workweek, and was not paid any of his weekly salary.
- Hord (8/28/05):  Did not work on any day during normal workweek, and was not paid any of his weekly salary.
- McCullough (9/14/05):  Did not work on Wednesday, and was paid four-fifths of her weekly salary.
- Nunez (1/2/05):  Did not work on any day during normal workweek, and was not paid any of her weekly salary.
- Philpotts (1/15/06):  Did not work on Wednesday or Thursday, and was paid three-fifths of her weekly salary.
- Smeraglia (8/14/05):  Did not work on Monday, Tuesday or Wednesday, and was paid two-fifths of his weekly salary.
- Smeraglia (5/14/06):  Did not work on Friday, and was paid four-fifths of his weekly salary.
- Smeraglia (6/11/06):  Did not work on Monday, and was paid four-fifths of his weekly salary.
- Yeager (8/21/05):  Did not work on Monday or Friday, and was paid three-fifths of her weekly salary.

*See* Ex. G to Declaration of Deborah Erickson ("Erickson Dec.") (Doc No. 339-6). Plaintiffs concede these facts in Ex. B to Declaration of Pam Rymin ("Rymin

4

Dec.") (Doc. No. 340-8), at 5-7.

Plaintiffs also concede that in one of those 12 instances (Plaintiff Yeager, week ending August 21, 2005), Callaway properly paid that Plaintiff under the salary-basis test. *See* Pl. Response, at 21-22; *see also* Ex. B to Rymin Dec., at 7.[1] As explained in the Erickson Declaration, Plaintiff Yeager was paid three-fifths of her $1600 weekly salary ($960) in that week because she only worked 3 regularly-scheduled days. *See* Ex. G to Erickson Dec. at 3. By admitting that Yeager was properly paid in that week, Plaintiffs have conceded two important points: (1) that it was lawful for Callaway to reduce the employee's predetermined salary payment when the employee missed a full day of work for personal reasons; and (2) that the proper measure of that deduction is based upon a five-day workweek (*i.e.*, 1/5 reduction for each full day missed).

As to the remaining 11 instances, Plaintiffs do not contend that Callaway had any obligation to pay the individual Plaintiffs for the days in which they performed no work on a Monday, Tuesday, Wednesday, Thursday or Friday, the

---

[1] The statement in Pam Rymin's Exhibit B that Yeager was "actually [paid] 2 hours less than [she] worked" during that week does not correctly "summarize" the record Rymin purports to summarize. Defendants renew here their objections to Rymin's Declaration, *see* Notice of Objections to Declaration of Pam Rymin, and hereby object to Rymin's Supplemental Declaration for the same reasons. (Doc. No. 350). Because Plaintiffs concede that Yeager was, in fact, properly paid under the salary-basis test, it does not appear necessary to submit into evidence the actual payroll record that shows she was paid $960, three-fifths of her weekly salary.

days on which Plaintiffs normally worked. Instead, Plaintiffs now claim that because the person worked *part* of a Saturday or Sunday, Callaway had some obligation to pay him or her a full day's worth of salary for a weekend day. *See* Pl. Response, at 23. (They do not say what the amount of a full-day's pro rata salary for a Saturday or Sunday would be.)

> 1. Plaintiffs' Contention That Callaway Was Obligated to Pay a Full Day's Salary for Any Work Done on a Saturday or Sunday is Unsupported by Any Authority.

Plaintiffs concede by their silence that Callaway did *not* have the obligation to pay them a full day's pay *every* time they worked any part of a Saturday or Sunday -- *unlike* the rule for a weekday (Monday – Friday). In addition to the 11 instances Plaintiffs now identify, there were at least *1,078 other weeks* in which a Plaintiff worked less than 8 hours on a Saturday or Sunday. *See* Ex. 4 to Declaration of Bettina Judd ("Judd Dec.") (attached hereto as Ex. A). Callaway did not pay them a full day's salary for those weekend days. Plaintiffs do not claim that Callaway had any obligation to do so.

In *all* of the weeks that included weekend work, Callaway had no obligation under the DOL's salary-basis test to pay Plaintiffs a full day's pro-rata portion of the salary for working on a Saturday or a Sunday. The fact that Callaway properly deducted a full day's salary because the employee failed to work at all on a

Monday, Tuesday, Wednesday, Thursday or Friday, as Plaintiffs concede is authorized by 29 C.F.R. § 541.602(b)(1), does not create out of thin air some obligation to pay a full day's pro rata salary for work on a weekend – Saturday or Sunday. The FLSA did not require Callaway to pay these salaried exempt employees *any* pay -- much less a full day's pay -- for work on part of a Saturday or Sunday. Callaway's decision to pay "additional compensation" or "bonus" pay to Plaintiffs for their work on Saturday and Sunday, and to calculate that "additional compensation" on a "straight time hourly basis" as authorized by 29 C.F.R. § 541.604(a), does not transform that "additional compensation" into a "full day's pay" minus a "partial-day deduction." No support exists anywhere in the statute, regulations or opinion letters, or elsewhere, for Plaintiffs' theory.

> 2. Plaintiffs Admit That There Is a Distinction Between Work Done on Days in the Normal Workweek and Work Done on Days Outside the Normal Workweek.

Opinion Letters from the DOL discussing the deduction authorized by 29 C.F.R. § 541.602(b)(1) conclusively demonstrate that Callaway legitimately distinguished between work done during the normal workweek (Monday through Friday) and work done outside the normal workweek (Saturday and Sunday). In an Opinion Letter dated July 21, 1997, the DOL responded to an employer's question about its proposed plan for deducting wages from salaried exempt

employees when they missed full workdays for personal reasons. *See* Opinion Letter (July 21, 1997) (attached hereto as Ex. B). The DOL explicitly states in that Opinion Letter that it "is the Department's long standing position that where there is an understanding that a normal workweek consists of five or six workdays, the deduction permissible for a day of absence under [the regulations] must be calculated on the basis of one-fifth of a five-day workweek, or one-sixth of a six-day workweek, whatever the case may be." *Id.* Similarly, in a January 17, 1986 Opinion Letter, the DOL confirmed that "where there is an understanding that the normal workweek consists of five workdays, the deductions permissible under [the regulations] must be calculated on the basis of one-fifth of a five-day workweek." DOL Opinion Letter (Jan. 17, 1986) (attached hereto as Ex. C).

These DOL Opinion Letters make clear that, in applying the allowed deductions under 29 C.F.R. § 541.602(b)(1), there is a distinction between work done during the normal workweek and work done outside the normal workweek. Where an employee misses a full day of work during the normal workweek, then a pro-rata portion of his or her salary may properly be deducted. Because the FLSA does not require an employer to pay *any* extra pay for weekend work, work done on Saturday or Sunday simply has no impact on this calculation. The DOL's stated official position directly refutes Plaintiffs' contention that the DOL's salary-basis

test does not make that distinction.

Plaintiffs' argument is also contrary to their admission that Plaintiff Yeager was properly paid under the salary-basis test for the week ending August 21, 2005. If, as Plaintiffs claim, no distinction was allowed for days constituting the normal workweek and those that did not, then Yeager should have been paid only three-sevenths of her salary ($685.72 instead of the $960 she was paid) since she only worked three days out of the seven-day calendar week.  For that matter, if there is no distinction between work done on the weekdays (Monday through Friday) and weekends (Saturday and Sunday), then Callaway would have been entitled to deduct two-sevenths from *every* Plaintiff's salary for *every* week in which they failed to work on the weekend (and on most Saturdays and Sundays they did not work, as shown below).  Clearly, Plaintiffs are not advocating that position.  Thus, the Court should reject their self-contradictory argument that the regulations do not allow an employer to distinguish between work done during the normal workweek (Monday-Friday) and work done on the weekend (Saturday-Sunday).

      3.    Plaintiffs had an "Understanding" That the Normal Workweek Consisted of Five Days, Monday through Friday.

The overwhelming and undisputed evidence of record conclusively demonstrates that there was an "understanding" between Callaway and its employees that the normal workweek was Monday through Friday.  Plaintiffs

admit that they were made aware, via a PowerPoint presentation at the beginning of their employment, that their salaries would be reduced by *one-fifth* of their salary (not one-seventh) for each full day they missed for personal reasons. *See* Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts Submitted in Support of its Motion for Summary Judgment on Bonus Systems Claims (Doc. No. 353), ¶ 40.  Plaintiffs concede that they *never* had to use PTO time if they did not work on a Saturday or Sunday.  *See* Def. SUMF on Partial-Day Claims, ¶¶ 20-21; Pl. Resp. to Def. SUMF on Partial-Day Claims, ¶ 21 (not disputing fact that Plaintiffs never took PTO time to cover "absences" on Saturday or Sunday).  Plaintiffs do not dispute that if they performed no work on a Saturday or Sunday, and were absent for a "full day" on the weekend, Callaway never deducted from Plaintiffs' salaries for such a weekend absence.

Furthermore, one need only look at the records detailing when Plaintiffs actually worked to show that there was a clear understanding that weekend work was not part of the normal workweek.  Those records show that the majority of the time for the majority of Plaintiffs, they did *not* perform any weekend work at all.  A chart compiling those records and totaling the number of weeks in which a Plaintiff actually worked on a Saturday or Sunday can be found in Exhibit 3 to Bettina Judd's Declaration (attached hereto as Exhibit A).  As demonstrated in

Judd Exhibit 3, it was a rare occasion for most Plaintiffs to perform work on a Saturday or Sunday (*e.g.*, out of the 116 total weeks he worked, Plaintiff Alfieri did not perform any weekend work on 102 of those weeks). Indeed, the proffered Exhibit A to Pam Rymin's Declaration, which purports to set forth the hours worked by each consultant for each day of the week, shows that nearly 100% of the time, Plaintiffs worked on Monday through Friday; by contrast, most of Rymin's entries for Saturday or Sunday have blank or zero entries. This evidence shows that the 120 Plaintiffs clearly understood that weekend work was not part of their normal workweek.

The evasive and equivocal statements from five of the Plaintiffs are insufficient to create any genuine issue of fact about that actual practice and understanding. It is noteworthy that Plaintiffs have not submitted *any* declarations from the nine Plaintiffs involved in the 11 weeks on which Plaintiffs now base their claim. Thus, Plaintiffs have submitted *no evidence* to establish that those nine persons – or, in fact, any of 115 out of the 120 Plaintiffs who did not submit declarations – did not understand that the normal workweek was Monday through Friday. That evidentiary deficiency is fatal to Plaintiffs' bid to create a disputed issue of fact on this matter.

Moreover, the five declarations do not constitute evidence that there was not


a general understanding that in actual practice the normal workweek was Monday through Friday even if such statements could be attributed to the 9 *other* Plaintiffs who actually were involved in the 11 instances (which they cannot).  Testimony that any of these five declarants "was not told" or was "unaware" that the normal workweek was Monday through Friday is not evidence that this policy and understanding did not, in fact, exist between Callaway and the consultants generally.  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("conclusory allegations [in an affidavit or declaration] without specific supporting facts have no probative value.").  Notably, none of the five declarants disputes Callaway's evidence that (1) they never had to use PTO time to take off on a Saturday or Sunday, and (2) Callaway never deducted from his or her salary when he or she did not work on a Saturday or a Sunday.

The declaration testimony that Plaintiffs were regularly encouraged or on occasion required to work on a weekend also does not show that the normal workweek was undefined.  No declarant states that they were *regularly required* to work on the weekends.  Plaintiff Illiff states only that some unidentified Plaintiffs performed some work on unidentified weekends.  Iliff Dec., ¶ 3.  Plaintiffs Butcher, Serra and Hauck only state that they were "encouraged" to work on the weekend.  Butcher Dec., ¶ 5; Serra Dec., ¶ 4; Hauck Dec., ¶ 4.  In fact, of these

five declarants, only Plaintiff Young goes so far as to say that he "often" worked weekends. Young Dec., ¶ 3. If anything, the fact that management had to "encourage" Plaintiffs to "stay and work" over the weekend shows that such work was *not* part of the normal workweek. By contrast, Plaintiffs do not claim that management similarly found it necessary to "encourage" Plaintiffs to work on the days they were normally expected to work, that is, Monday through Friday.

Furthermore, the undisputed timesheet evidence demonstrates that the actual practice of Plaintiffs' five declarants was to follow a normal workweek of Monday through Friday. Exhibit 1 to Bettina Judd's Declaration summarizes, in chart form, data taken from Exhibit A to Pam Rymin's Declaration and calculates the percentage of Saturdays and Sundays worked by these declarants versus the percentage of days worked by them on Monday through Friday. As can be easily seen from that chart, the declarants almost *always* worked during each day of the normal workweek, Monday through Friday. On the other hand, even these five declarants did not consistently work on a Saturday or Sunday.[2] The same pattern is shown when these calculations are made with regard to the nine Plaintiffs who

---

[2] For example, Plaintiff Illiff worked a total of 104 weeks for Callaway. Over the course of those 104 weeks, he worked on 95 Mondays (91% of the time), 102 Tuesdays (98% of the time), 102 Wednesdays (98% of the time), 98 Thursdays (94% of the time), and 88 Fridays (84% of the time). Conversely, Plaintiff Iliff worked on *only 4 Saturdays* (4% of the time) and *never worked on a Sunday* during his entire tenure at Callaway. Bettina Judd's Declaration, Ex. 2.

actually were involved in the 11 instances on which Plaintiffs now rely. *See* Ex. 2 to Judd Dec.. The five declarants' equivocal statements do not counter the evidence of the *actual* work schedule of the declarants, and that record evidence shows that these declarants as well as the other 115 Plaintiffs understood that the normal workweek was Monday through Friday.

> B. Under the DOL's Salary Basis Test, Callaway Was Authorized to Pay "Additional Compensation" on a Straight-time Basis for Work Done Outside of the Normal Workweek.

The evidence reviewed above shows that any work done by Plaintiffs on Saturday or Sunday was work done outside of the normal workweek that regularly was followed by Plaintiffs. Under the FLSA, Callaway was not required to pay Plaintiffs *anything* for such work. However, Callaway elected to pay Plaintiffs "additional compensation" for each hour worked beyond the normal workweek, just as it was explicitly authorized to do under 29 C.F.R. § 541.604(a). Because DOL's salary basis test did not require Callaway to pay a "full day" salary for any work on a Saturday or Sunday, there is no legal basis for Plaintiffs' contention that Callaway made improper partial-day *deductions* from any such full day salary when it paid an hourly *bonus* for hours worked on part of a Saturday or Sunday.[3]

---

[3] Plaintiffs are also incorrect in claiming that Callaway will lose the exemption "for all employees in Plaintiffs' job classification" even if an improper deduction is found. *See* 29 C.F.R. § 541.603(a) (stating that an improper deduction results in

## III. **CONCLUSION**

Plaintiffs were appropriately paid on a salary-basis consistent with the controlling DOL regulations. Defendants are entitled to summary judgment.

Respectfully submitted this 24th day of July, 2009.

                                           s/ L. Dale Owens
                                           C. Todd Van Dyke
                                           Georgia Bar No. 723420
                                           L. Dale Owens
                                           Georgia Bar No. 557482
                                           Suzanne M. Alford
                                           Georgia Bar No. 005437
                                           Attorneys for Defendant

JACKSON LEWIS LLP
1155 Peachtree Street, Suite 1000
Atlanta, Georgia  30309-3630
Telephone:  (404) 525-8200
Facsimile:  (404) 535-1173
Email:  owensd@jacksonlewis.com

---

the loss of the exemption only "during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions.")  Plaintiffs have presented no evidence that they all worked for the "same managers responsible" for the alleged improper deductions.  Plaintiffs also cite no support for their statement that Defendants could not use the window of correction or safe harbor provisions to remedy any remaining alleged improper deductions.  *See Moore v. Hannon Food Serv.*, 317 F.3d 489, 498 (5th Cir. 2003).

## **CERTIFICATION**

Pursuant to LR 7.1(D), NDGa., I do hereby certify that this document has been prepared in Times New Roman 14 point font, approved by this Court in LR 5.1(C), NDGa.

                                                  s/ L. Dale Owens
                                                  L. Dale Owens
                                                  Georgia Bar No. 557482

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| HARRIET BELL, individually and on behalf of all similarly situated persons, ) ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 1:06-CV-1993-CC |
| vs. ) ) | |
| CALLAWAY PARTNERS, LLC and HURON CONSULTING GROUP INC., ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. ) ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

        Edward D. Buckley
        BUCKLEY & KLEIN, LLP
        Atlantic Center Plaza, Suite 1100
        1180 West Peachtree Street
        Atlanta, GA 30309-3521

                                        s/ L. Dale Owens
                                        L. Dale Owens
                                        Georgia Bar No. 557482

JACKSON LEWIS LLP
1155 Peachtree Street
Suite 1000
Atlanta, Georgia  30309-3630
Telephone:  (404) 525-8200
Facsimile:   (404) 535-1173
Email:  owensd@jacksonlewis.com

18