**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| HARRIET BELL,<br>Individually and on<br>behalf of all similarly<br>situated persons, | ) <br> ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | CIVIL ACTION NO.<br>1:06-CV-1993-CC |
| vs. | ) <br> ) | |
| CALLAWAY PARTNERS, LLC,<br>and HURON CONSULTING<br>GROUP, INC. | ) <br> ) <br> ) <br> ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Harriet Bell, individually and on behalf of all similarly situated persons, filed this case on August 24, 2006, alleging that Defendant Callaway Partners, LLC ("Callaway")[1] violated the Fair Labor Standards Act ("FLSA") by not paying overtime. Thereafter, the Court conditionally certified a class of "all current and former Callaway employees who held the position of consultant and worked on the HealthSouth accounting project at any time during the period from

---

[1] Defendant Huron Consulting Group, Inc. ("Huron") was subsequently added to this case as a successor-in-interest. The Court's references to Callaway should be considered to include Huron where appropriate.

February 1, 2004, through February 1, 2007." Over 120 persons filed consents in writing to become party plaintiffs in this collective action. Some of those persons later dismissed their claims. Plaintiff Bell and remaining Opt-In Plaintiffs are referred to herein as "Plaintiffs."

Before the Court are Defendants' Motion for Summary Judgment on Plaintiffs' Partial-day Deduction Claims [Doc. No. 339], Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 340], and Defendants' Motion for Summary Judgment on Plaintiffs' Bonus System Claims [Doc. No. 341].[2] Plaintiffs claim: (1) that Callaway violated the salary basis test of the FLSA by "deducting" from the Plaintiffs' additional compensation payments; and (2) that the manner in which Callaway calculated pay for weekend work under some circumstances constituted improper "partial day deductions" in violation of the salary basis test.

The parties have fully briefed these motions, and the Court heard oral argument on December 16, 2009.[3] Having carefully considered the parties' arguments, and for the reasons set forth below, the Court grants Defendants' Motions and denies Plaintiffs' Motion.

_____

[2] The Court also addresses Defendants' Motion for Decertification of Class [Doc. No. 343] at the conclusion of this Opinion and Order.

[3] The Court **GRANTS** the Joint Motion for Oral Argument [Doc. No. 368] <u>nunc pro tunc</u>.

## I.   STATEMENT OF FACTS

The parties have filed cross motions for summary judgment on essentially the same set of facts, which are not in dispute.  Rather, the parties dispute only what the legal consequences of those facts are.  Before proceeding to that analysis, however, the Court sets forth the undisputed facts as follows:

### A.   The HealthSouth Project

Callaway was an accounting professional services firm that specialized in project management and staff augmentation for clients ranging from start-ups to Fortune 1000 companies.  Plaintiffs are highly-educated accountants and Certified Public Accountants who, during their employment with Callaway, often made in excess of $100,000 per year.

Starting in September 2003, Callaway was engaged to staff a project for HealthSouth Corporation ("HealthSouth") in Birmingham, Alabama.  HealthSouth had been accused of perpetrating a fraud by misstating its finances.  It took many accountants, including Plaintiffs and others from Callaway, years to reconstruct the company's books and restate its financials.

### B.   Callaway's Compensation Policies

On the HealthSouth project, Plaintiffs' pay consisted of two independent components:  (1) a predetermined weekly salary; and (2) additional compensation

based on a straight-time hourly rate on top of the predetermined salary.  These pay components are discussed in further detail below.

### 1. *Predetermined Salary*

First, Plaintiffs received a predetermined weekly salary in excess of $455. The engagement letters provided to Plaintiffs stated they would be paid a weekly salary.  Callaway also provided a PowerPoint presentation to Plaintiffs and others on the HealthSouth Project.  The PowerPoint clearly stated that "[e]very employee assigned on the HealthSouth engagement is paid a guaranteed **weekly salary.**" (Ex. C to Declaration of Deborah Erickson ("Erickson Decl.") [Doc. No. 339-13] at 5)[4] (emphasis in original).  These salary payments ranged upwards from $1,600 per week for most Plaintiffs to $2,000 per week for some.

The PowerPoint presentation also described the predetermined weekly salary in greater detail.  Tracking the DOL's regulations that implement the FLSA (29 C.F.R. § 541.602), the PowerPoint stated:

> For each week you are employed by Callaway, working on the HealthSouth engagement, you are entitled to your full weekly salary, subject to a few exceptions, listed below:
>
> - "Days" not worked for personal reasons, unpaid vacation, or illness (can be offset by PTO days earned)

---

[4] Insofar as the pages of the PowerPoint presentation were not numbered, the page numbers referenced are those assigned by the Court's CM/ECF system.

- Unpaid disciplinary suspensions imposed for infractions of workplace conduct rules
- In initial or terminal weeks of employment:  Salary may be prorated for time actually worked in the first and last week of employment
- Weeks where the project is shut down completely and no work is performed, salary will not be paid (example may be Christmas week or Thanksgiving).

(Ex. C to Erickson Decl. [Doc. No. 339-13] at 6.)  Plaintiffs were paid a pro-rata share of their weekly salaries during the weeks in which Callaway deducted from their salaries for these reasons.

The PowerPoint provides an example demonstrating the operation of Callaway's pay practice with regard to a deduction for "days not worked for personal reasons":

A project professional takes 2 personal days and works 3 days, is paid 3/5 of their weekly salary, and reports 35 billable hours. This project professional's normal weekly salary is $1,000, $600 paid for this week after $400 deduction for 2 full day absences for personal reasons.

(Ex. C to Erickson Decl. [Doc. No. 339-13] at 11.)

Thus, according to Callaway's policy, a consultant's salary would be subject to a deduction if he or she took a personal day off from work without substituting Paid Time Off ("PTO").  This deduction policy only applied if Plaintiffs took a full regularly-scheduled day (Monday through Friday) off from work.

The evidence establishes that Callaway did pay Plaintiffs a predetermined weekly salary of $1600 or more, as "all or part" of their compensation.[5]  (*See* Ex. A to Erickson Decl. [Doc. Nos. 339-7 through 339-10] (offer letters setting forth weekly salaries).)  The evidence shows that those weekly salaries did not depend on the quality or quantity of work performed.  The evidence shows that Plaintiffs still received their full weekly salary or pro-rata salary without regard to whether, for example, they worked enough hours during a week to average at least eight hours per regularly-scheduled workday.  Indeed, the record is replete with hundreds of examples where a Plaintiff worked only part of a day during the regular workweek, Monday through Friday, but still received the full pro-rata portion of his or her salary as calculated on a daily basis.  Moreover, there were at least 67 weeks in which a Plaintiff averaged less than 8 hours per day, but still received his or her full pro-rata salary.  (*See* Ex. D to Erickson Decl. [Doc. No. 339-14].)

### 2.   *Additional Compensation*

The second component of Plaintiffs' pay was a bonus, which was additional compensation on top of Plaintiffs' predetermined weekly salary.  Callaway offered

---

[5] Plaintiffs' salaries far exceeded the minimum $455 per week salary requirement. *See* 29 C.F.R. § 541.604(a).

Plaintiffs a bonus because there was a lot of work to complete on the HealthSouth project, and Callaway wanted to provide an incentive for Plaintiffs to work additional hours.

The engagement letters stated that Plaintiffs would be eligible for a bonus. The PowerPoint presentation, which is also discussed above and was first used in September 2004, explained the bonus in detail.  It stated:

> For each week you are employed by Callaway, receiving a weekly salary while working on the HealthSouth engagement, you will earn a bonus for billable hours worked in excess of 40 hours. . . .  Any deficit created in a given week (where billable hours are less than 40), will be carried forward and applied against future week's [sic] bonus calculation.   This calculation has <u>no effect</u> on an employee's guaranteed weekly salary.

(Ex. C to Erickson Decl. [Doc. No. 339-13] at 7) (emphasis in original). Beginning in early 2005, Callaway modified the plan and paid a bonus to Plaintiffs when they worked fewer than five regularly-scheduled days but averaged more than eight hours of work per day during the days worked.[6]

---

[6] Callaway billed HealthSouth for the time worked by Plaintiffs.  This arrangement required Plaintiffs to maintain time sheets identifying the amount of time spent working on the project.  Requiring the use of time sheets or time cards does not affect an individual's status as an exempt employee. *Douglas v. Argo-Tech Corp.*, 113 F.3d 67, 71 (6th Cir. 1997); *Kuchinskas v. Broward County*, 840 F. Supp. 1548, 1556 (S.D. Fla. 1993), *aff'd*, 86 F.3d 1168 (11th Cir. 1996).

<u>Examples of Bonus Eligibility</u>

The following examples, which were used in the PowerPoint, illustrate how the bonus was calculated:

**Bonus Example #1**

A project professional works a full week, is paid their full weekly salary, and reports 55 billable hours.  This project professional's weekly salary is $1,000 and is in good standing with Callaway.  There is no "bonus hour deficit" from the previous week.

| Billable Hours | 55 |
|---|---|
| Weekly Billable Hour Bonus Threshold | (40) |
| Bonus Hours Earned | 15 |
| Deficit from previous week | (0) |
| Weekly Bonus Hours | 15 |
| x effective hourly rate | $25.00 |
| Weekly Bonus Amount | $375.00 |

(Ex. C to Erickson Decl. [Doc. No. 339-13] at 8.)

**Bonus Example #2**

A project professional works a full week, is paid their full weekly salary, and reports 35 billable hours.  This project professional's weekly salary is $1,000 and

is in good standing with Callaway.  There is no "bonus hour deficit" from the previous week.

| Billable Hours | 35 |
| --- | --- |
| Weekly Billable Hour Bonus Threshold | (40) |
| Bonus Hours Earned | (5) |
| Deficit from previous week | (0) |
| Weekly Bonus Hours | (5) To be carried over to next week |
| x effective hourly rate | $25.00 |
| Weekly Bonus Amount | $0 |

(Ex. C to Erickson Decl. [Doc. No. 339-13] at 9.)

## Bonus Example #2a

The next week, the same project professional works a full week, is paid their full weekly salary, and reports 60 billable hours.  This project professional's weekly salary is $1,000 and is in good standing with Callaway.

| Billable Hours | 60 |
| --- | --- |
| Weekly Billable Hour Bonus Threshold | (40) |
| Bonus Hours Earned | 20 |

| | |
|---|---|
| Deficit from previous week | (5) |
| Weekly Bonus Hours | 15 |
| x effective hourly rate | $25.00 |
| Weekly Bonus Amount | $375.00 |

(Ex. C to Erickson Decl. [Doc. No. 339-13] at 10.)

Calculation of Bonus Hourly Amount

Callaway's bonuses were paid in a straight-time hourly amount, and Callaway used each Plaintiff's weekly salary to determine the straight-time hourly bonus amount that would be paid. Specifically, Callaway divided each Plaintiff's salary by 40 (which was derived from a five-day work week). For example, if a Plaintiff was paid a weekly salary of $1,600, she was paid $40 for each bonus hour ($1,600 ÷ 40 hours = $40 per hour).

Bonus Deductions Had No Effect on Salary

The bonus plan and any related deductions from the bonus had no effect on the payment of the predetermined weekly salary. For example, if a Plaintiff worked seven and not eight hours on each regularly-scheduled workday, thus totaling 35 hours of work, he or she still earned the full predetermined weekly salary. The Plaintiff simply would not earn a bonus in a subsequent week until he

or she made up the bonus-hour deficit of five hours and then worked over 40 hours in a given week.

### C.   DOL Audit

The U.S. Department of Labor ("DOL") audited Callaway in 2005 and conducted employee interviews and a review of Callaway's pay records for a two-year period – from November 28, 2003 through November 27, 2005.  The DOL concluded that some employees on the HealthSouth project inadvertently had not been paid for some holidays in 2004, and that a few employees were entitled to compensation for performing non-exempt work.  Callaway resolved these issues under the supervision of the DOL before the current lawsuit was filed.

## II.   ANALYSIS

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56(c):

[S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In making this determination, the Court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact

> does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quotation marks and citation omitted).

B.   <u>The Salary Basis Test</u>

The FLSA requires that employees be paid overtime when they work more than 40 hours in a week.  29 U.S.C. § 207(a)(1).  However, certain types of employees can be "exempt" from the overtime requirement.  For example, "an exemption from the overtime pay requirements exists for employees in a 'bona fide executive, administrative, or professional capacity' . . . as defined by regulations of the Secretary."  *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004) (quoting 29 U.S.C. § 213(a)(1)).

The Secretary of Labor has issued regulations providing that employees are exempt if (1) they are paid a "predetermined" weekly salary of at least $455 and (2) perform the types of job duties set forth in the regulations for the exemptions. *See* 29 C.F.R. § 541.602 (salary basis) and §§ 541.100 through 541.300 (executive, administrative, and professional exemptions).  These two requirements are commonly referred to as the "salary basis" test and the "duties" test. *Hogan*, 361 F.3d at 625.  Plaintiffs concede they satisfy the "duties" test.  Thus, the only issue

before the Court is whether Callaway's pay practices violated the "salary basis" test.

The text of the FLSA says nothing about the salary basis test; rather, the test was created by the Secretary of Labor.  As the Supreme Court has explained, "Because the salary-basis test is a creature of the Secretary [of Labor]'s own regulations, his interpretation of it is, under [Supreme Court] jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) (citations omitted); *see also Ake v. Tennessee Valley Authority,* No. CV-00-J-3571-S, 2002 U.S. Dist. LEXIS 26590, at *11 n. 4 (N.D. Ala. May 23, 2002) (quoting *Batterton v. Francis*, 432 U.S. 416, 425 n.9, 97 S. Ct. 2399, 53 L. Ed. 2d 448 (1977) ("The FLSA is greatly supplemented by regulations promulgated by the Administrator of the U.S. Dept. of Labor, Wage and Hour Division. These regulations are given 'the force and effect of law.'").

C.    <u>Callaway's Bonus Practice Complied with the DOL's Regulations, and Plaintiff's Claims that Such Practice Violated the Salary Basis Test are Without Merit.</u>

1.    *Plaintiffs' Claims Regarding Bonus Pay.*

During discovery, Callaway provided Plaintiffs with information concerning a total of 7,871 workweeks.  Out of those weeks, Plaintiffs identified 54 weeks in

which they allege that Callaway improperly deducted from their bonuses for partial days worked.  Those weeks involve situations where the employee did not work 40 hours during the workweek.  Thus, according to its bonus pay practice, Callaway factored in a "bonus hour deficit" in calculating the employee's bonus pay in the subsequent week or weeks.  Plaintiffs contend that Callaway's practice of imposing a "debt" on Plaintiff's future bonus payments violates the salary basis test.  As discussed below, however, Callaway's bonus pay practice was in compliance with the DOL's regulations and, accordingly, did not violate the salary basis test.

> 2.    *The Payment of "Additional Compensation" on a Straight-Time Hourly Basis Does Not Violate the Salary Basis Test.*

The Secretary of Labor's regulations require that exempt employees "regularly receive[] . . . a predetermined amount constituting all or part of" their compensation.  29 C.F.R. § 541.602(a).  This compensation must not be less than $455 per week.  29 C.F.R. § 541.600.  In contrast, the regulations *permit* – but do not require – employers such as Callaway to provide additional compensation to exempt employees in the form of a straight-time hourly bonus:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a

salary basis. Thus, for example, an exempt employee guaranteed at least $455 each week paid on a salary basis may also receive additional compensation of a one percent commission on sales. An exempt employee also may receive a percentage of the sales or profits of the employer if the employment arrangement also includes a guarantee of at least $455 each week paid on a salary basis. *Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $455 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.*"

29 C.F.R. § 541.604(a) (emphasis added).[7]

Consistent with this regulation, Callaway paid Plaintiffs bonuses in straight-time hourly amounts. Thus, Plaintiffs' argument that they were "de facto" paid on an hourly basis is without merit. Whenever an employer pays a salaried employee his or her weekly salary plus "additional compensation" calculated as 1/40 of the weekly salary ("straight-time hourly amount") for any hours over 40, it is mathematically true that the weekly salary plus the "additional compensation" equals the straight-time rate times the total hours worked. That fact will always be

---

[7] The Eleventh Circuit has held that additional compensation can be paid to an exempt employee "as long as there is a non-deductible minimum" salary. *Hogan*, 361 F.3d at 625. Other courts have further held that additional compensation may be paid on a straight-time hourly basis without destroying an employee's exempt status. *See ACS v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) (holding that payments of "'straight-time' overtime compensation" to exempt employees does not violate the salary basis test); *Boykin v. Boeing Co.*, 128 F.3d 1279 (9th Cir. 1997).

the mathematical result of calculating the "additional compensation" by multiplying the "straight-time hourly amount" by the "hours worked for work beyond the normal workweek," as expressly approved by the DOL's regulations. An employer does not violate the DOL's salary basis test by doing exactly what that salary basis test expressly authorizes.

> 3.    *The Secretary of Labor's Regulations Do Not Prohibit Any Deductions from Exempt Employees' Bonuses.*

While the Secretary of Labor's regulations plainly recognize two forms of compensation for exempt employees (predetermined weekly salary and additional compensation), the Secretary's regulations state that only an "employer who makes improper deductions from *salary*" may lose the exemption. 29 C.F.R. § 541.603(a) (emphasis added).   Thus, nothing in the FLSA or the Secretary's regulations prohibited Callaway from "docking" a Plaintiff's bonus eligibility based on hours billed in a current or prior week.

> 4.    *The Department of Labor's Opinion Letters Establish That Employers Are Permitted to Deduct from Exempt Employees' Bonuses.*

The DOL's Wage and Hour Division issues opinion letters to explain the requirements of the FLSA and the Secretary of Labor's regulations.   The DOL considers these opinion letters to be "rulings."   29 C.F.R. § 790.17(d).   "Given

their provenance and legal effect, these opinion letters are entitled to great weight when they interpret the DOL's own … regulations." *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1184 (10th Cir. 2005); *see also Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1238 (11th Cir. 2002) (stating that opinion letters, although not dispositive, may not be disregarded and must be viewed through the standard set forth in *Skidmore v. Swift*, 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944)). The Eleventh Circuit stated the following in *Arriaga* regarding the *Skidmore* standard for viewing opinion letters:

> The *Skidmore* Court held that when considering the deference to "rulings, interpretations and opinions of the Administrator," the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

305 F.3d at 1238 (quoting *Skidmore*, 323 U.S. at 140).

The DOL has issued two opinion letters holding that employers may deduct from exempt employees' bonuses. In a November 3, 2006, Opinion Letter from the DOL (FLSA2006-24NA), the employer paid exempt managers a salary and a bonus. The employer deducted from the managers' bonus for bad checks or other cash shortages. The DOL held there is no prohibition against deducting from exempt employees' bonuses:

Section 541.600(a) requires only that exempt employees be paid a guaranteed salary of at least $455 per week. Additional compensation above this salary amount is generally something that may be agreed upon between the employer and the employee. *The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees.* Therefore, it is our opinion that bad check and other cash shortage deductions from bonus payments paid to salaried exempt employees are permissible and do not affect the employees' exempt status under section 13(a)(1) of the FLSA so long as the bonus payments are bona fide and are not paid to facilitate otherwise prohibited deductions from the guaranteed salary.

Opinion Letter (Nov. 3, 2006), p. 2 (emphasis added).

In a July 6, 2006, Opinion Letter from the DOL (FLSA2006-24),[8] the employer paid exempt employees a salary plus commissions. The employer deducted from the employees' commissions when there were cash shortages. Again, the DOL held there is no prohibition against deducting from exempt employees' bonuses:

The final rule at 29 C.F.R. § 541.600(a) requires only that exempt employees be paid a guaranteed salary of at least $455 per week, and that any additional compensation above this salary amount is generally something that may be agreed upon between the employer and the employee. The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to any such additional compensation provided to exempt employees. Therefore, it is our opinion that cash shortage deductions may be made from a salaried exempt employee's commission payments

---

[8] This Opinion Letter was issued by the Acting Administrator of the Wage and Hour Division of the DOL.

> without affecting the employee's exempt status under section 13(a)(1) of the FLSA so long as the commission payments are bona fide and are not paid to facilitate otherwise prohibited deductions from the guaranteed salary.

Opinion Letter (July 6, 2006), p. 2.

Callaway's bonus plan was consistent with these opinion letters.

> 5.    *Case Law Establishes that Employers Are Permitted to Deduct from Exempt Employees' Bonuses.*

In *Lovelady v. Allsup's Convenience Stores, Inc.*, 304 Fed. Appx. 301 (5th Cir. 2008), the plaintiffs were managers at defendant's convenience stores. The plaintiffs received a predetermined, weekly salary, regardless of the number of hours they worked. *Id.* at 303. The plaintiffs were eligible for bonuses, and reductions to or deductions from those bonuses were permissible under the company's bonus plan. The plaintiffs argued that the "reduction-of-bonus" provisions within the bonus plan "constitute[d] an impermissible docking of pay and destroy[ed] the exempt status of store managers." *Id.* at 304. The Fifth Circuit rejected this argument.

Relying on the DOL's regulations and an opinion letter, the Fifth Circuit held that deductions from the managers' bonuses are permissible and consistent with the salary basis test:

Deductions or reductions from bonus payments do not affect an employee's status as an exempt employee so long as the requisite minimum $ 455 salary is paid.  "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis."  "The prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to such additional compensation provided to exempt employees."  Therefore, Allsup's' management bonus policy does not result in impermissible deductions that destroy [the plaintiffs'] exempt status.

*Id.* at 304 (footnotes and citations omitted).

Similarly, in *Phillips v. Capital Toyota, Inc.*, No. 1:05-cv-215, 2006 U.S. Dist. LEXIS 33622 (E.D. Tenn. May 22, 2006), the plaintiff was the parts manager at the defendant car dealership.  *Id.* at *4.  The plaintiff was paid a fixed salary plus bonus compensation.  *Id.* at *5.  The plaintiff's bonus was based on his department's profits.  However, when the dealership began tracking the plaintiff's hours, it reduced his bonus, even though the department's profits did not decline. *Id.*  Like Plaintiffs in this case, the *Phillips* plaintiff claimed he was not paid on a salary basis because his total compensation could be reduced based on the number of hours he worked.  The district court rejected the plaintiff's argument.

Relying on the DOL regulations, the court concluded: "As these regulations make clear, the key is not whether an employee's overall compensation is subject

to reduction, but rather if the *predetermined* amount is subject to reduction." *Id.* at *13 (emphasis in original). "Plaintiff's bonus and trip to Hawaii were not part of his predetermined amount of compensation. Therefore, they could be reduced based on the amount of hours Plaintiff worked without changing Plaintiff's status as an exempt employee under the FLSA." *Id.*

In a recent opinion from this Court, Judge Thomas W. Thrash, Jr., reached the same conclusion. *See Coppage v. Bradshaw*, No, 1:08-CV-811-TWT, 2009 U.S. Dist. LEXIS 96787 (N.D. Ga. Oct. 19, 2009). In *Coppage*, the plaintiff was paid a salary of $1,153.85 per pay period; however, the company expected him to earn $2,307.70 per pay period in salary plus commissions. *Id.* at *9. Under the company's pay practice, if the plaintiff earned less than that amount, the difference was carried forward to the following pay period as a negative commission balance. *Id.* Thus, any additional compensation earned in the following pay period was offset by this negative commission balance. Judge Thrash succinctly held: "[W]here an exempt employee receives additional compensation above his guaranteed minimum salary, an employer may make deductions without destroying the salary basis." *Id.* at *10.

6.   *Callaway's Bonus Pay Practice Did Not Violate the Salary Basis Test.*

Plaintiffs respond to these authorities with several arguments. Plaintiffs argue that none of the above-noted authority is applicable to this case because Callaway's method of paying additional compensation was not a "true bonus" since Plaintiffs "earned" those additional payments by working additional hours. Plaintiffs argue that employers can only lawfully deduct from "discretionary" bonuses and fringe benefits, but not from bonuses based on hours actually worked. Plaintiffs, however, offer no support for this theory.

Nothing in § 541.604(a), the opinion letters, or the case law recognizes such a distinction. As discussed above, the DOL does not prohibit any deductions from additional compensation, regardless of whether that compensation is based on hours worked or something else. In short, the DOL's only concern is with deductions taken from an employee's salary – its restrictions on such deductions do not extend to additional compensation provided to exempt employees, regardless of the form of the additional compensation.

Next, Plaintiffs argue that "when Callaway's consultants had partial day absences in a week, Callaway never really paid them their full salary. At best, Callaway *loaned* it to them for a week or so. When Callaway issued a paycheck

for the full 'salary' amount, Callaway simultaneously imposed a debt equal to the hours missed.  The debt was repaid by working the same number of overtime hours without pay." (Plaintiffs' MSJ Opposition Brief at 14 (emphasis in original)).  As an initial matter, the phrases "overtime hours," "loaned" pay, and "debt" are Plaintiffs' creation.  Those labels are not found anywhere in the offer letters, PowerPoint presentation, applicable DOL Regulations or Opinion Letters.

Regardless of the labels Plaintiffs use, nothing in the FLSA or DOL Regulations prohibited Callaway from deducting from additional compensation for any reason.  As noted above, the DOL has said in its Opinion Letters that the prohibition against improper deductions from the guaranteed salary under 29 C.F.R. § 541.602(b) does not extend to additional compensation provided to exempt employees.

Further, Plaintiffs argue that *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 990 F.2d 279 (7th Cir. 1993) and *Martin v. W.E. Monks & Co.*, 1 F.3d 1241 (6th Cir. 1993) support their position.  Those cases interpret 29 C.F.R. § 541.118, which was removed from the Code of Federal Regulations on August 23, 2004 (when the new regulations were introduced).  That old regulation, as opposed to the new regulation, § 541.604(a), did not expressly state that it was consistent with the salary basis test for additional compensation to be paid on an hourly basis.

Subsequent to *Klein* and *Martin*, as noted above, the DOL issued two opinion letters interpreting the new regulation and making it clear that employers can deduct from additional compensation for any reason.  Thus, Plaintiffs' cited case law, which did not address the DOL's new regulation or the new opinion letters, is not persuasive authority.

Lastly, Plaintiffs admit the "deductions" from their bonuses occurred only 54 times out of a possible 7,871 weeks they collectively worked at Callaway.  Put another way, such "deductions" occurred 0.7% of the time.  These "deductions" from the bonuses only resulted in a total of approximately $10,421.50 not being paid in additional compensation for those 7,871 weeks.  The small percentage of times that Plaintiffs complain of how their additional compensation was calculated, and the small dollar-value attached to those 54 instances, serves as additional evidence that Callaway's bonus plan was bona fide and was not paid to facilitate otherwise prohibited deductions from the guaranteed salary.

In summary, the controlling regulations, opinion letters and case law conclusively demonstrate that Callaway's bonus pay practice did not violate the salary basis test.  Thus, Plaintiffs' claims in this regard fail as a matter of law.

D.  <u>Callaway Complied with DOL Regulations Regarding Deductions from Salaries for Workdays Missed, and Plaintiffs' Claim that the Manner in Which Callaway Calculated Pay for Weekend Work</u>

<u>Constituted Improper "Partial Day Deductions" In Violation of the
Salary Basis Test Is Without Merit.</u>

In addition to their claim that Callaway's method of paying additional
compensation violated the salary basis test, Plaintiffs also allege that Callaway
violated the salary basis test when it deducted a full day's pay for personal days
missed during the workweek (Monday through Friday) but did not pay Plaintiffs
for a "full day" for partial days worked on Saturday or Sunday.

An employee is paid on a salary basis if the individual receives "a
predetermined amount" each pay period of at least $ 455 per week that is "not
subject to reduction because of variations in the quality or quantity of the work
performed." 29 C.F.R. § 541.602(a); *Hogan*, 361 F.3d at 625. There is no dispute
that Plaintiffs were regularly paid in an amount above the $ 455 minimum to meet
the salary basis test. In fact, as stated previously, Callaway paid each Plaintiff a
weekly salary ranging from $1,600 to over $2,000.

Further, with the exception of allowed deductions for full-day absences
during the normal workweek, it is also clear that Callaway did not reduce
Plaintiffs' salaries due to "variations in the quality or quantity of the work
performed." In fact, Callaway routinely paid the plaintiff his or her full pro-rata
salary even when a consultant missed partial days of work. For instance, for the

pay period ending 5/22/2005, Plaintiff Julie McMillian worked for 1.5 hours on one regularly-scheduled day during the week.  If McMillian's pay had been calculated on an hourly basis as Plaintiffs contend (instead of on a salary basis), she would have received only $60 in base compensation for the week ($1600 weekly pay / 40 hours = $40/hour times 1.5 hours = $60).  McMillian, however, received $320, or 1/5 of her weekly salary.[9]  Further, Deborah Erickson testified in her declaration that Plaintiffs "commonly left work in the early afternoon on Fridays to drive back to Atlanta from Birmingham but received their full pro-rata salary for that day of work."  (Erickson Decl. [Doc. No. 339-6] ¶ 26.)  Such evidence is directly contrary to Plaintiffs' contention that consultants were not provided a regular predetermined salary.

Out of 7,871 workweeks of payments, Plaintiffs identified a total of only eleven (11) instances involving nine (9) plaintiffs in support of their claims that they were not properly paid their weekly salaries in accordance with the DOL's

---

[9] As discussed below, it is entirely proper for Callaway to make deductions on a full-day basis where the employee misses an entire regularly-scheduled day or more for personal reasons.  McMillian received only 1/5 of her weekly salary because she only performed work on one regularly-scheduled workday.

salary basis test.[10]   Specifically, these instances involve occasions where the Plaintiff missed one or more days during the workweek (Monday through Friday), but worked a "partial day" (i.e., less than 8 hours) on Saturday and/or Sunday. Plaintiffs contend that Callaway violated the salary basis test when it deducted a pro-rata portion of the Plaintiff's salary for missing a full day during the workweek and by paying Plaintiffs only the bonus payment for hours worked on the weekend. As discussed below, none of the workweeks identified by Plaintiffs support their claims in this action.

> 1.   *DOL Regulations Authorize Callaway to Make Full-Day Deductions for Absences Missed During Regularly-Scheduled Workdays.*

The DOL regulations provide that deductions from the "predetermined amount" of salary may be made by the employer under certain situations. Specifically, 29 C.F.R. § 541.602(b)(1) provides:  "Deductions from pay may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability."  As noted above, Callaway had

---

[10] Plaintiffs originally identified 32 occasions on which they claimed the salary basis test was violated through an improper partial-day deduction.   During summary judgment briefing and at oral argument, Plaintiffs conceded that only 11 instances out of those originally identified should be considered as evidence of a violation of the salary basis test.

specifically informed Plaintiffs about this allowed deduction in the PowerPoint presentation.

Plaintiffs admit that Callaway could properly deduct from a Plaintiff's salary if he or she missed a full day of work during the week pursuant to § 541.602(b)(1). Plaintiffs, however, contend that Callaway violated the salary basis test by treating Monday through Friday as the normal workweek for purposes of § 541.602(b)(1).

Opinion Letters from the DOL discussing the deduction authorized by 29 C.F.R. § 541.602(b)(1) conclusively demonstrate that Callaway legitimately distinguished between work done during the normal workweek (Monday through Friday) and work done outside the normal workweek (Saturday and Sunday). In an Opinion Letter dated July 21, 1997, the DOL responded to an employer's question about its proposed plan for deducting wages from salaried exempt employees when they missed full workdays for personal reasons. *See* U.S. Dept. of Labor Op., 1997 DOLWH LEXIS 27 (July 21, 1997). The DOL explicitly states in that Opinion Letter that it "is the Department's long standing position that where there is an understanding that a normal workweek consists of five or six workdays, the deduction permissible for a day of absence under [the regulations] must be calculated on the basis of one-fifth of a five-day workweek, or one-sixth of a six-day workweek, whatever the case may be." *Id.* Similarly, in a January 17,

1986, Opinion Letter, the DOL confirmed that "where there is an understanding that the normal workweek consists of five workdays, the deductions permissible under [the regulations] must be calculated on the basis of one-fifth of a five-day workweek." *White-Collar Employees/Salary Basis*, U.S. Dept. of Labor Op. (Jan. 17, 1986).

These DOL Opinion Letters make clear that, in applying the allowed deductions under 29 C.F.R. § 541.602(b)(1), there is a distinction between work done during the normal workweek and work done outside the normal workweek. Where an employee misses a full day of work during the normal workweek, then a pro-rata portion of his or her salary may properly be deducted. Because the FLSA does not require an employer to pay *any* extra pay for weekend work, work done on Saturday or Sunday simply has no impact on this calculation. The DOL's stated official position directly refutes Plaintiffs' contention that the DOL's salary basis test does not make that distinction.

Moreover, Plaintiffs' own argument is inconsistent with their contention that work conducted on the weekend could not be treated differently from work done during the normal workweek. Despite the fact that Plaintiffs claim that Callaway could not legitimately distinguish between days worked Monday through Friday and weekend work, Plaintiffs do not claim that Callaway violated the salary basis

test *every time* it paid Plaintiffs only bonus payments for "partial days" worked on the weekend.  Indeed, there were hundreds of occasions where a Plaintiff worked less than eight hours on a Saturday or Sunday and Callaway paid only additional compensation for the actual hours worked.  Yet, Plaintiffs only challenge Callaway's practice for weekend pay for those weeks in which the employee missed one or more full days from Monday through Friday.

In each of the 11 weeks challenged by Plaintiffs, Callaway properly deducted one-fifth of a consultant's salary when he or she missed a full, regularly-scheduled workday for personal reasons, just as it was allowed to do under § 541.602(b)(1).   Accordingly, those 11 workweeks identified by Plaintiffs in support of their claims are, in fact, compliant with the salary basis test and are not evidence of any alleged FLSA violation.

    2.   *The Undisputed Record Evidence Demonstrates that There Was an Understanding that the Normal Workweek Was Monday Through Friday.*

Plaintiffs argue that, even if the DOL recognizes a distinction between days worked during the "normal workweek" and days worked outside the normal workweek, then Callaway still violated the salary basis test because there allegedly was no understanding between Plaintiffs and Callaway that Monday through

Friday constituted the normal workweek.  The undisputed evidence of record in this case forecloses that argument.

Callaway has submitted unrebutted declaration testimony from Deborah Erickson, a manager intimately familiar with the company's pay practices, stating that Monday through Friday was the normal workweek.  Further, Plaintiffs admit that they were made aware, via a PowerPoint presentation, that their salaries would be reduced by one-fifth of their salary (not one-seventh) for each full day they missed for personal reasons.  Plaintiffs concede that they never had to use PTO or sick time if they did not work on a Saturday or Sunday.  Plaintiffs do not dispute that if they performed no work on a Saturday or Sunday, and were absent for a "full day" on the weekend, Callaway never deducted from Plaintiffs' salaries for such a weekend absence.

Furthermore, one need only look at the records detailing when Plaintiffs actually worked to show that there was a clear understanding that weekend work was not part of the normal workweek.  Those records show that the majority of the time for the majority of Plaintiffs, they did not perform any weekend work at all.  As demonstrated in those records, it was a rare occasion for most Plaintiffs to perform work on a Saturday or Sunday (e.g., out of the 116 total weeks he worked, Plaintiff Alfieri did not perform any weekend work on 102 of those weeks).

Indeed, the records show that over 80% of Plaintiffs worked on a Saturday 25% or less of the time.  Similarly, over 80% of Plaintiffs worked on Sunday 29% or less of the time.  In contrast, the records demonstrate that Plaintiffs worked on Monday through Friday a vast majority of the time.  This evidence shows that the Plaintiffs clearly understood that weekend work was not part of their normal workweek.

The five declarations submitted by Plaintiffs are insufficient to create any genuine issue of fact about that actual practice and understanding.  These declarations do not constitute evidence that there was not a general understanding that in actual practice the normal workweek was Monday through Friday.  Testimony that any of these five declarants "was not told" or was "unaware" that the normal workweek was Monday through Friday is not evidence that this policy and understanding did not, in fact, exist between Callaway and the consultants generally.  *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("conclusory allegations [in an affidavit or declaration] without specific supporting facts have no probative value.").  Notably, none of the five declarants disputes Callaway's evidence that (1) they never had to use PTO or sick time to take off on a Saturday or Sunday, and (2) Callaway never deducted from his or her salary when he or she did not work on a Saturday or a Sunday.

The declaration testimony that Plaintiffs were regularly encouraged or on occasion required to work on a weekend also does not show that the normal workweek was undefined.  No declarant states that they were regularly scheduled or required to work on the weekends.  Plaintiff Illiff states only that some unidentified Plaintiffs performed some work on unidentified weekends.  (Iliff Dec. [Doc. No. 351-4] ¶ 3.)  Plaintiffs Butcher, Serra and Hauck only state that they were "encouraged" to work on the weekend.  (Butcher Dec. [Doc. No. 351-3] ¶ 5; Serra Dec. [Doc. No. 351-5] ¶ 4; Hauck Dec. [Doc. No. 351-6] ¶ 4.)  In fact, of these five declarants, only Plaintiff Young goes so far as to say that he "often" worked weekends.  (Young Dec. [Doc. No. 351-2] ¶ 3.)  If anything, the fact that Callaway had to "encourage" Plaintiffs to "stay and work" over the weekend shows that such work was not part of the normal workweek.  By contrast, Plaintiffs do not claim that management similarly found it necessary to "encourage" Plaintiffs to work on the days they were normally expected to work, that is, Monday through Friday.

Accordingly, for the reasons set forth above, the Court holds that Callaway's pay practice of reducing Plaintiff's salary for full days missed during the normal workweek, Monday through Friday, did not violate the salary basis test.  Where, as here, the evidence demonstrates that an employer customarily treats Monday

through Friday as the normal workweek, the FLSA does not require the employer to pay an exempt employee *any* additional compensation for work done on Saturday or Sunday.  Plaintiffs' claims are without merit.[11]

## III.   MOTION FOR DECERTIFICATION

At the conclusion of the hearing held before the Court on December 16, 2009, the Court ruled from the bench, granting Defendants' motions for summary judgment and denying Plaintiff's motion for partial summary judgment.  Pending before it at the same time was Defendants' Motion for Decertification.  Finding Defendants' arguments well taken, the Court also granted that motion.  Upon reconsideration, however, the Court recognizes that decertification of the class would be inappropriate given that it has ruled that Callaway's pay practices, which applied to each of the class members and which served as the basis for each of the Plaintiff's claims in this lawsuit, were lawful.  Accordingly, the Court holds that Defendants' Motion for Decertification is denied as moot.

---

[11] Callaway also asserted a good faith defense, arguing that, even if its pay practices were technically in violation of the salary basis test, no liability could be established because it relied in good faith upon guidance from the DOL in establishing those practices.  Having found that Callaway did not violate the salary basis test in any manner, the Court need not reach the issue of Callaway's good faith defense.

## IV.    CONCLUSION

IT IS HEREBY ORDERED, for good cause shown, that Defendants'
Motion for Summary Judgment on Plaintiffs' Partial-day Deduction Claims
[Docket No. 339] and Defendants' Motion for Summary Judgment on Plaintiffs'
Bonus System Claims [Docket No. 341] are **GRANTED** in their entirety.
Plaintiffs' claims shall be dismissed with prejudice.

IT IS HEREBY FURTHER ORDERED that Plaintiffs' Motion for Partial
Summary Judgment [Docket No. 340] is **DENIED**.

IT IS HEREBY FURTHER ORDERED that Defendants' Motion for
Decertification [Docket No. 343] is **DENIED as moot**.

SO ORDERED this 5th day of February, 2010.


*s/ CLARENCE COOPER*
Clarence Cooper
Senior United States District Court Judge
Northern District of Georgia